1  Enu Mainigi (*Pro Hac Vice*)
   Grant A. Geyerman (*Pro Hac Vice*)
2  Sarah O'Connor (*Pro Hac Vice*)
   Benjamin W. Graham (*Pro Hac Vice*)
3  WILLIAMS & CONNOLLY LLP
   725 Twelfth Street, N.W.
4  Washington, DC 20005
   Telephone: (202) 434-5000
5  Facsimile: (202) 434-5029

6  Tami S. Smason (Bar No. 120213)
   Nicholas J. Fox (Bar No. 279577)
7  FOLEY & LARDNER LLP
   555 South Flower Street, Ste. 3500
8  Los Angeles, CA 90071
   Telephone: (213) 972-4500
9  Facsimile: (213) 486-0065

10 *Attorneys for CVS Pharmacy, Inc.; Caremark, L.L.C.; and*
   *Caremark California Specialty Pharmacy, L.L.C.*

11

                    **REDACTED VERSION OF**
                    **DOCUMENT SOUGHT TO BE**
                    **SEALED**

12              **UNITED STATES DISTRICT COURT**

13              **NORTHERN DISTRICT OF CALIFORNIA**

14                 **SAN FRANCISCO DIVISION**

15

16 JOHN DOE ONE, JOHN DOE TWO, JOHN          No. 3:18-cv-1031-EMC
   DOE THREE, JOHN DOE FOUR, and JOHN
17 DOE FIVE on behalf of themselves and all   **NOTICE OF MOTION AND**
   others similarly situated,                 **MOTION TO DISMISS CORRECTED**
18                                            **AMENDED COMPLAINT (DKT. NO.**
                       Plaintiffs,            **75) BY CVS PHARMACY INC.,**
19                                            **CAREMARK, L.L.C., AND**
            v.                                **CAREMARK CALIFORNIA**
20                                            **SPECIALTY PHARMACY, L.L.C.;**
   CVS PHARMACY, INC.; CAREMARK,              **MEMORANDUM OF POINTS AND**
21 L.L.C.; CAREMARK CALIFORNIA                **AUTHORITIES IN SUPPORT**
   SPECIALTY PHARMACY, L.L.C.;                **THEREOF**
22 NATIONAL RAILROAD PASSENGER
   CORPORATION d/b/a AMTRAK; TIME
23 WARNER, INC.; LOWE'S COMPANIES,            Date: September 27, 2018
   INC.; and DOES 1–10, inclusive,            Time: 1:30 p.m. PST
24                                            Courtroom 5, 17th Floor
                       Defendants.            Judge: Hon. Edward M. Chen
25

26

27

28

# NOTICE OF MOTION AND MOTION

**TO:    THE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on Thursday, September 27, 2018, at 1:30 p.m. PST, or as soon thereafter as this matter may be heard, in Courtroom 5, 17th Floor, United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA, Defendants CVS Pharmacy, Inc., Caremark, L.L.C., and Caremark California Specialty Pharmacy, L.L.C. will and hereby do move the Court for an order dismissing Plaintiffs' Corrected Amended Complaint ("Amended Complaint") without leave to amend.  This Motion is made pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6) on the grounds that:

a)    the Amended Complaint's failure to make allegations specifically against CVS Pharmacy, Inc., Caremark, L.L.C., and Caremark California Specialty Pharmacy, L.L.C. and, instead, its making undifferentiated allegations against one collective "CVS Caremark" proxy violates the pleading requirements in federal court;

b)    the Amended Complaint fails plausibly to allege discrimination based on the Plaintiffs' HIV/AIDS status, any deprivation of a benefit to which Plaintiffs are entitled under their prescription plans, or the necessary federal funding requirement to demonstrate a violation of the Affordable Care Act;

c)    the Amended Complaint fails to allege disability-based discrimination in a "place of public accommodation" as needed to violate the Americans with Disabilities Act;

d)    the Amended Complaint fails to allege intentional discrimination, which defeats the claim under California's Unruh Civil Rights Act;

e)    the Amended Complaint fails to demonstrate a predicate violation of law and, thus, no "unlawful" business practice for purposes of California's Business & Professions Code §§ 17200–17210;

f)    the Amended Complaint fails to allege an ERISA denial-of-benefits claim because Plaintiffs are suing for access to certain pharmacies which is not a benefit to which Plaintiffs are entitled under their prescription plans;

CVS DEFENDANTS' MOT. TO DISMISS
3:18-CV-1031-EMC

g)      the Amended Complaint fails to allege an ERISA fiduciary duty claim because designing a prescription plan does not implicate fiduciary duties as a matter of law and, in all events, the CVS Defendants were neither named- nor functional-fiduciaries under Plaintiffs' prescription plans;

h)      the Amended Complaint's full-and-fair-review ERISA claim fails because Plaintiffs' plans do not guarantee Plaintiffs the specific right they are seeking through litigation, the procedural rights that are afforded them under their plans were provided, and the Plaintiffs' cause of action is not seeking the relief normally allowed by such a cause of action; and

i)      the final count in the Amended Complaint, for "Declaratory Relief," is not an independent cause of action and cannot stand when all the other counts fail to state a claim.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, any reply memorandum, the pleadings and files in this action, and such other matters as may be presented at or before the hearing.

Dated:  July 20, 2018                          Respectfully submitted,

By:___*/s/ Grant A. Geyerman*_____
Enu Mainigi (*Pro Hac Vice*)
Grant A. Geyerman (*Pro Hac Vice*)
Sarah O'Connor (*Pro Hac Vice*)
Benjamin Graham (*Pro Hac Vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

Tami S. Smason (Bar No. 120213)
Nicholas J. Fox (Bar No. 279577)
FOLEY & LARDNER LLP
555 South Flower Street, Ste. 3500
Los Angeles, CA 90071
Telephone: (213) 972-4500
Facsimile: (213) 486-0065

*Attorneys for CVS Pharmacy, Inc.; Caremark, L.L.C.; and Caremark California Specialty Pharmacy, L.L.C.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iv

STATEMENT OF ISSUES TO BE DECIDED ................................................................... x

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND .............................................................................................. 2
      A.    The Parties ................................................................................................. 2
      B.    "The Program" for Specialty Medicines ................................................... 3
      C.    The Plaintiffs' Prescription Plans and Plan-Sponsors' Contracts ........... 4
      D.    The Lawsuit ............................................................................................... 5

LEGAL STANDARD .......................................................................................................... 6

ARGUMENT ....................................................................................................................... 6

I.     THE AMENDED COMPLAINT'S UNDIFFERENTIATED ALLEGATIONS
      ABOUT "CVS CAREMARK" FAIL TO SATISFY RULE 8(a). ..................................... 7

II.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER THE
      AFFORDABLE CARE ACT (COUNT 1). ..................................................................... 8
      A.    The Amended Complaint Fails Adequately To Plead a Disparate Impact
           Based on HIV/AIDS Status. ...................................................................... 9
      B.    Plaintiffs Were Not Deprived an Offered Benefit. ................................. 11
      C.    The Amended Complaint Does Not Properly Allege a Health Program or
           Activity that Receives Federal Financial Assistance. ............................. 12

III.   THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER THE
      AMERICANS WITH DISABILITIES ACT (COUNT 2) ............................................. 14
      A.    Plaintiffs' Prescription Plans Are Not a "Place of Public Accommodation." ....... 14
      B.    There Is No Discrimination "on the Basis of" Plaintiffs' HIV/AIDS Status ........ 15

IV.   THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER
      CALIFORNIA'S UNRUH CIVIL RIGHTS ACT (COUNT 3) ...................................... 16

V.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER
      CALIFORNIA'S UNFAIR BUSINESS PRACTICES ACT (COUNT 4). ..................... 17

VI.   THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER ERISA. ........ 18
      A.    Plaintiffs Do Not State a Claim for Denial of Benefits (Count 5). ......................... 18
      B.    Plaintiffs Do Not State a Claim for Breach of Fiduciary Duty (Count 6). ............ 19
           1.    The CVS Defendants are not named fiduciaries. ...................................... 20
           2.    The CVS Defendants are not functional fiduciaries. ............................... 21
      C.    Plaintiffs Do Not State an ERISA "Full and Fair Review" Claim (Count 7) ....... 24
      D.    Plaintiffs Have Not Sued CaremarkPCS Health, L.L.C. (Counts 5–7). ............... 25

VII.  DECLARATORY RELIEF IS NOT A STANDALONE CLAIM (COUNT 8). ............. 25

CONCLUSION .................................................................................................................. 25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Aaron v. Aguirre*,
2007 WL 959083 (S.D. Cal. Mar. 8, 2007) ...........................................................7

*Alexander v. Choate*,
469 U.S. 287 (1985)......................................................................8, 10, 11, 12

*Alves v. Harvard Pilgrim Health Care Inc.*,
204 F. Supp. 2d 198 (D. Mass. 2002) .....................................................22

*Armijo v. ILWU-PMA Welfare Plan*,
2015 WL 13629562 (C.D. Cal. Aug. 21, 2015).........................................19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).......................................................................6

*Ballard v. Chase Bank USA, NA*,
2010 WL 5114952 (S.D. Cal. Dec. 9, 2010).............................................25

*Bd. of Trs. of W. Lake Super. Piping Indus. Pension Fund v. Am. Benefit Plan
Adm'rs, Inc.*,
925 F. Supp. 1424 (D. Minn. 1996)........................................................23

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...........................................6

*Bickley v. Caremark Rx, Inc.*,
361 F. Supp. 2d 1317 (N.D. Ala. 2004)....................................................22

*Briscoe v. Health Care Serv. Corp.*,
281 F. Supp. 3d 725 (N.D. Ill. 2017) .....................................................8

*Cal. Council of Blind v. County of Alameda*,
985 F. Supp. 2d 1229 (N.D. Cal. 2013) ...................................................11

*Castle v. Eurofresh, Inc.*,
731 F.3d 901 (9th Cir. 2013) ...............................................................13

*Chabner v. United of Omaha Life Ins.*,
225 F.3d 1042 (9th Cir. 2000) .........................................................14, 15

*Chappell v. Newbarth*,
2009 WL 1211372 (E.D. Cal. May 1, 2009) ...............................................8

*Chaudhry v. Neighborhood Health P'ship, Inc.*,
2005 WL 6103746 (S.D. Fla. May 4, 2005) .............................................15

*Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*,
   474 F.3d 463 (7th Cir. 2007) ...........................................................................................21, 23

*Chuck v. Hewlett Packard Co.*,
   455 F.3d 1026 (9th Cir. 2006) ...................................................................................................25

*Clair v. Harris Tr. & Sav. Bank*,
   190 F.3d 495 (7th Cir. 1999) .....................................................................................................18

*Corazon v. Aurora Loan Servs., LLC*,
   2011 WL 1740099 (N.D. Cal. May 5, 2011) ...............................................................................8

*Cousins v. Lockyer*,
   568 F.3d 1063 (9th Cir. 2009) .....................................................................................................6

*Cox ex rel. Cox v. Reliance Standard Life Ins.*,
   2013 WL 2156546 (E.D. Cal. May 17, 2013) ...........................................................................19

*Crowder v. Kitagawa*,
   81 F.3d 1480 (9th Cir. 1996) .....................................................................................................11

*Cullen v. Netflix, Inc.*,
   880 F. Supp. 2d 1017 (N.D. Cal. 2012) ....................................................................................17

*Curtiss-Wright Corp. v. Schoonejongen*,
   514 U.S. 73 (1995).....................................................................................................................21

*Dep't of Fair Emp't & Hous. v. Law Sch. Admission Council, Inc.*,
   896 F. Supp. 2d 849 (N.D. Cal. 2012) ..................................................................................5, 16

*Doe v. Centinela Hosp.*,
   1988 WL 81776 (C.D. Cal. June 30, 1988) ...............................................................................13

*Doe v. Mut. of Omaha Ins.*,
   179 F.3d 557 (7th Cir. 1999) .....................................................................................................15

*Downey Surgical Clinic, Inc. v. Ingenix, Inc.*,
   2013 WL 12114069 (C.D. Cal. Mar. 12, 2013).........................................................................19

*Dunlap v. Ass'n of Bay Area Gov't*,
   996 F. Supp. 962 (N.D. Cal. 1998) ...........................................................................................13

*Earll v. eBay, Inc.*,
   2011 WL 3955485 (N.D. Cal. Sept. 7, 2011) ...........................................................................16

*EEOC v. CNA Ins.*,
   96 F.3d 1039 (7th Cir. 1996) .....................................................................................................15

*Fagbohungbe v. Caltrans*,
   2014 WL 644008 (N.D. Cal. Feb. 19, 2014) ...............................................................................7

*Ford v. Schering-Plough Corp.*,
  145 F.3d 601 (3d Cir. 1998)............................................................................................14, 15

*Forest Ambulatory Surgical Assocs., L.P. v. United HealthCare Ins.*,
  2011 WL 248724 (N.D. Cal. July 13, 2011)........................................................................19

*Fortyune v. Am. Multi-Cinema, Inc.*,
  364 F.3d 1075 (9th Cir. 2004) ............................................................................................14

*Gauvin v. Trombatore*,
  682 F. Supp. 1067 (N.D. Cal. 1988) ......................................................................................7

*Greater L.A. Agency on Deafness, Inc. v. CNN*,
  742 F.3d 414 (9th Cir. 2014) ..............................................................................................16

*Griffin v. Gen. Elec., Inc.*,
  2017 WL 3449607 (N.D. Ga., Jan. 6, 2017) ........................................................................12

*Henglein v. Informal Plan for Plant Shutdown Benefits for Salaried Emps.*,
  974 F.2d 391 (3d Cir. 1992)................................................................................................19

*Hughes Aircraft Co. v. Jacobson*,
  525 U.S. 432 (1999)............................................................................................................21

*In re Express Scripts, Inc. PBM Litig.*,
  2008 WL 2952787 (E.D. Mo. July 30, 2008) ......................................................................22

*In re Express Scripts/Anthem ERISA Litig.*,
  285 F. Supp. 3d 655 (S.D.N.Y. 2018)...............................................................................8, 11

*In re UnitedHealth Grp. PBM Litig.*,
  2017 WL 6512222 (D. Minn. Dec. 19, 2017) ......................................................................22

*Indep. Hous. Servs. v. Fillmore Ctr. Assocs.*,
  840 F. Supp. 1328 (N.D. Cal. 1993) ...................................................................................13

*John Doe v. Coventry Health Care, Inc.*,
  No. 15-cv-62685-CMA (S.D. Fla. May 5, 2016)...................................................................16

*Keene Corp. v. Fiorelli*,
  14 F.3d 726 (2d Cir. 1993).................................................................................................25

*Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*,
  555 U.S. 285 (2009)............................................................................................................19

*Kimber v. Thiokol Corp.*,
  196 F.3d 1092 (10th Cir. 1999) ..........................................................................................15

*Krauel v. Iowa Methodist Med. Ctr.*,
  95 F.3d 674 (8th Cir. 1996) ................................................................................................15

*Krauss v. Oxford Health Plans, Inc.*,
   517 F.3d 614 (2d Cir. 2008)...........................................................................................25

*Mass. Mut. Life Ins. v. Russell*,
   473 U.S. 134 (1985).......................................................................................................25

*Mayen v. Bank of Am., N.A.*,
   2015 WL 179541 (N.D. Cal. Jan. 14, 2015)..................................................................25

*McBride v. Fannie Mae*,
   2016 WL 3019308 (E.D. Cal. May 26, 2016) ..................................................................7

*McNeil v. Time Ins.*,
   205 F.3d 179 (5th Cir. 2000) .........................................................................................15

*Mills v. JPMorgan Chase Bank, N.A.*,
   2016 WL 4595222 (E.D. Cal. Sept. 1, 2016).................................................................25

*Modderno v. King*,
   82 F.3d 1059 (D.C. Cir. 1996).......................................................................................10

*Moeckel v. Caremark, Inc.*,
   622 F. Supp. 2d 663 (M.D. Tenn. 2007)..................................................................21, 22

*Moss v. Infinity Ins.*,
   197 F. Supp. 3d 1191 (N.D. Cal. 2016) .........................................................................18

*Mulder v. PCS Health Sys., Inc.*,
   432 F. Supp. 2d 450 (D.N.J. 2006) ................................................................................22

*Parker v. Metro. Life Ins.*,
   121 F.3d 1006 (6th Cir. 1997) ..................................................................................14, 15

*Parrino v. FHP, Inc.*,
   146 F.3d 699 (9th Cir. 1998) ...........................................................................................5

*Peterson v. Am. Life & Health Ins.*,
   48 F.3d 404 (9th Cir. 1995) ...........................................................................................25

*Pharm. Care Mgmt. Ass'n v. Rowe*,
   429 F.3d 294 (1st Cir. 2005)..........................................................................................23

*Prince ex rel. Prince v. Jacoby*,
   303 F.3d 1074 (9th Cir. 2002) .......................................................................................12

*Rogers v. Dep't. of Health & Envtl. Control*,
   174 F.3d 431 (4th Cir. 1999) .........................................................................................15

*Ruskai v. Pistole*,
   775 F.3d 61 (1st Cir. 2014)............................................................................................12

*Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins.*,
   768 F.3d 284 (3d Cir. 2014)...........................................................................22

*Santomenno v. Transamerica Life Ins.*,
   883 F.3d 833 (9th Cir. 2018) .............................................................5, 20, 22

*Se. Pa. Transp. Auth. v. Gilead Scis., Inc.*,
   102 F. Supp. 3d 688 (E.D. Pa. 2015) ..........................................................8, 10

*Shapiro v. United States*,
   335 U.S. 1 (1948).............................................................................................12

*Sharer v. Oregon*,
   581 F.3d 1176 (9th Cir. 2009) .......................................................................13

*Sloan v. Gen. Motors LLC*,
   287 F. Supp. 3d 840 (N.D. Cal. 2018) (Chen, J.) ...........................................6

*Smith v. Tobinworld*,
   2016 WL 3519244 (N.D. Cal. June 28, 2016) ..............................................13

*Steelman v. Prudential Ins.*,
   2007 WL 1080656 (E.D. Cal. Apr. 4, 2007)..................................................18

*Van Hulle v. Pac. Telesis Corp.*,
   124 F. Supp. 2d 642 (N.D. Cal. 2000) .....................................................14, 15

*Vasquez v. Smith's Food & Drug Ctrs., Inc.*,
   2017 WL 1233840 (D. Ariz. Apr. 4, 2017) ..................................................13

*Weinreich v. L.A. Cty. Metro. Transp. Auth.*,
   114 F.3d 976 (9th Cir. 1997) ...........................................................................9

*Weyer v. Twentieth Century Fox Film Corp.*,
   198 F.3d 1104 (9th Cir. 2000) ....................................................................14, 15

*Wilkins-Jones v. County of Alameda*,
   859 F. Supp. 2d 1039 (N.D. Cal. 2012) (Chen, J.) ......................................16

*Yu v. Design Learned, Inc.*,
   2016 WL 1621704 (N.D. Cal. Apr. 22, 2016) ...............................................7

**STATE CASES**

*Farmers Ins. Exch. v. Super. Ct.*,
   6 Cal. Rptr. 2d 487 (1992) (en banc) ...........................................................17

*Munson v. Del Taco, Inc.*,
   208 P.3d 623 (Cal. 2009) ...............................................................................16

**OTHER AUTHORITIES**

29 C.F.R. § 2560.503-1 ........................................................................................24

45 C.F.R. § 156.122 .......................................................................................17, 18

28 U.S.C. § 2201 .................................................................................................25

29 U.S.C. § 794 ..............................................................................8, 11, 10, 12, 13

29 U.S.C. § 1002 .................................................................................................20

29 U.S.C. § 1102 .................................................................................................20

29 U.S.C. § 1132 .............................................................................................*passim*

29 U.S.C. § 1133 .................................................................................................24

42 U.S.C. § 12181 ...............................................................................................14

42 U.S.C. § 12182 ....................................................................................6, 14, 15

42 U.S.C. § 18116 .......................................................................................5, 8, 12

Cal. Unfair Competition Law,
    Cal. Business & Professions Code §§ 17200–17210 .................................6, 17, 18

Cal. Unruh Civil Rights Act,
    Cal. Civ. Code § 51(b) ...............................................................................6, 16, 17

Fed. R. Civ. P. 8(a) .............................................................................................6, 7

Fed. R. Civ. P. 9(b) .............................................................................................18

Fed. R. Civ. P. 12(b)(6) ........................................................................................6

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Have Plaintiffs pled a short and plain statement showing an entitlement to relief against each of Defendants CVS Pharmacy, Inc., Caremark L.L.C., and Caremark California Specialty Pharmacy, L.L.C. (collectively, the "CVS Defendants"), when the Corrected Amended Complaint's ("Amended Complaint's") allegations generally are not made about any of these specific entities but against a combined "CVS Caremark" proxy as a pleading shortcut?

2.      Have Plaintiffs plausibly pled a violation of the Affordable Care Act's anti-discrimination provision given that benefit plan members with HIV/AIDS are treated the same as those without the disease; what Plaintiffs are seeking through this lawsuit is not a benefit they are entitled to under their prescription plans; and the Amended Complaint does not adequately allege facts demonstrating the federal-funding jurisdictional hook for the ACA to apply?

3.      Have Plaintiffs plausibly pled a violation of the Americans with Disabilities Act where the allegedly discriminatory act neither implicates a "place of public accommodation" nor treats individuals with HIV/AIDS differently than it treats individuals without HIV/AIDS?

4.      Have Plaintiffs pled a violation of California's Unruh Civil Rights Act when there is no violation of the federal ADA and no allegation of intentional discrimination?

5.      Have Plaintiffs pled a violation of California's Business and Professions Code when there is no underlying violation of law?

6.      Have Plaintiffs pled a plausible claim for a denial of ERISA benefits where the Amended Complaint does not attach Plaintiffs' prescription plans to identify their prescription benefits, does not otherwise allege what benefits Plaintiffs are owed under those plans, and affirmatively pleads facts demonstrating that what Plaintiffs are seeking through this lawsuit—access to "community pharmacies"—is not a benefit provided under their plans?

7.      Have Plaintiffs pled a plausible claim for a breach of ERISA fiduciary duties given that the case law holds that designing an insurance- or health-plan-benefit, like the mail-order program for specialty medications challenged in this lawsuit, is not an activity that implicates a fiduciary duty; pharmacy benefit managers generally do not owe plan members fiduciary duties; and the contracts with Plaintiffs' employers sponsoring their prescription plans

1    unambiguously show that the CVS Defendants are not fiduciaries concerning any subject matter

2    involved in Plaintiffs' Amended Complaint?

3        8.      Have Plaintiffs pled a plausible "full-and-fair-review" ERISA claim when they

4    were provided the procedural rights owed to them under their plans and the relief they are

5    seeking through such a claim is not the relief typically afforded by that type of claim?

6        9.      Does the Federal Declaratory Judgment Act provide Plaintiffs with an

7    independent cause of action against Defendants if the Amended Complaint otherwise fails to

8    state a claim upon which relief may be granted on the underlying alleged violations of law?

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CVS DEFENDANTS' MOT. TO DISMISS
3:18-CV-1031-EMC

1

**INTRODUCTION**

2        This case is a misguided attempt to rewrite the terms of certain prescription-drug plans.

3   Plaintiffs are individuals who allegedly purchase HIV/AIDS medicines through their employer-

4   sponsored prescription plans.  Plaintiffs' employers selected the nature and scope of coverage

5   offered to employees, and this lawsuit challenges one component of their benefits package: the

6   channel through which "specialty medicines" are available at "in-network" prices.  Under their

7   plans, Plaintiffs—like their fellow plan members—are free to purchase any medicine from any

8   pharmacy they want.  They simply cannot expect to pay in-network prices if they fill specialty-

9   medicine prescriptions at a pharmacy outside of the network.

10       This is not unusual.  In the insurance context, it is well accepted that there are in-network

11  versus out-of-network doctors, hospitals, pharmacies, and other benefits.  Networks are an

12  important mechanism for controlling healthcare costs.  Although networks are ubiquitous,

13  Plaintiffs' theory of the case—that providing preferential pricing on specialty medicines filled at

14  only certain pharmacies violates ERISA and anti-discrimination and unfair-competition

15  statutes—would jeopardize the industry's use of networks and strip from plan sponsors the

16  authority to define the benefits provided to plan members.

17       Contrary to Plaintiffs' assertions, the three CVS Defendants—which are not even

18  Plaintiffs' employers or plan providers—have not discriminated against HIV/AIDS patients by

19  offering a narrow network for specialty medications.  Nor have they violated California's Unfair

20  Competition Law or ERISA: there is nothing "unlawful" or "unfair" about operating such a

21  network; Plaintiffs have no entitlement under any statute (or other authority) to dictate which

22  pharmacies are designated as in-network pharmacies; and the CVS Defendants have not

23  breached any fiduciary duty in offering plan-sponsor clients the ability to use such a network.

24  Because each of Plaintiffs' causes of action fails to state a claim, the Court should dismiss—***with***

25  ***prejudice***—the entire Amended Complaint.  The CVS Defendants raised these very same

26  arguments in their original motion to dismiss, Dkt. No. 65, and the Amended Complaint's

27  allegations do not obviate them, as the defects are incurable.  Allowing Plaintiffs another

28  opportunity to amend is futile.

1

**FACTUAL BACKGROUND**[1]

2     This a putative class action claiming that a certain design of prescription drug plans

3     discriminates against individuals with HIV/AIDS.  Plaintiffs say that their plans, which in recent

4     years have required a particular pharmacy chain to fill prescriptions for "specialty medications"

5     and deliver them through the mail or to a CVS retail pharmacy for pick up, "results in a

6     reduction in or elimination of health plans' drug benefits."  Corrected Amended Complaint

7     ("AC") ¶ 68, Dkt. No. 75.  Under the terms of their plans, plan members receive "in-network"

8     pricing by obtaining specialty medicines in this way; members may still fill their prescriptions at

9     other pharmacies but must pay "out-of-network" prices.  *Id.* ¶¶ 1, 68.  Before their plans adopted

10    this requirement in the last few years, Plaintiffs purchased specialty medications at unidentified

11    "community pharmac[ies]" where they claim to have established personal relationships with the

12    pharmacists and receive better service.  *Id.* ¶¶ 69–70.  By this lawsuit, Plaintiffs seek "continued

13    access to community pharmacies as an 'in-network' benefit."  *Id.* ¶ 201.[2]

14    **A.      The Parties**

15    Plaintiffs are five individuals, proceeding anonymously, who take medicines to treat

16    HIV/AIDS.  *Id.* ¶¶ 20, 31, 43, 50, 58.  The Defendants are six different entities: three are

17    subsidiaries of the healthcare holding company CVS Health Corporation—CVS Pharmacy, Inc.

18    (primarily a retail pharmacy company), Caremark, L.L.C. (a pharmacy benefits manager), and

19    Caremark California Specialty Pharmacy, L.L.C. (a specialty pharmacy) (collectively, the "CVS

20    Defendants")—and three employers providing prescription benefits to one or more Plaintiffs.

21    Regarding the three CVS Defendants, the Amended Complaint merely names each entity,

22    defines them collectively as "CVS Caremark," and conclusorily asserts that they "act as agents

23    of one another and operate as a single entity."  *Id.* at 1 & ¶ 14.  It thereafter makes nearly every

24    allegation against "CVS Caremark" rather than against any specific CVS Defendant.

25    [1]    Except where noted, this Motion recites the facts as pled in the Amended Complaint, which

26    must be taken as true for present purposes.  The CVS Defendants, however, vigorously dispute
      the accuracy of many of the Amended Complaint's allegations.

27    [2]    This Motion uses Plaintiffs' terminology—"community pharmacies"—when referring to

28    those pharmacies to which Plaintiffs are seeking access at in-network prices, although CVS retail
      pharmacies obviously also operate in "communities" throughout the United States.

1    One month before filing the Amended Complaint, with one exception, Plaintiffs received

2    copies of the contracts between their employers and a different CVS affiliate—**non-party**

3    CaremarkPCS Health, L.L.C ("CaremarkPCS")—for its provision of pharmacy benefit

4    management ("PBM") services.  *See* Dkt. Nos. 66-1 to -3.[3]  Despite having seen those contracts,

5    Plaintiffs make no claim or allegation against CaremarkPCS; instead, they allege (wrongly) that

6    the CVS Defendants provided PBM services to their employers.  AC ¶¶ 9–13.

7    A PBM, *inter alia*, contracts with health plans sponsored by employers, insurers, and

8    governmental payors, etc., to perform a variety of services in connection with the prescription

9    benefit offered under the client's health plan.  Among other things, these services typically

10   include access to the PBM's network of retail pharmacies and mail- and specialty-pharmacies

11   where members may fill their prescriptions; "adjudicating" claims (i.e., determining if the

12   member is a plan-enrollee, if the drug is covered, and what cost-sharing applies); and providing

13   other plan administrative services.  A PBM is not a health plan or insurance company and does

14   not itself provide prescription drug coverage to its clients' members.

15   ### B.    "The Program" for Specialty Medicines

16   Employers typically make changes to the terms and conditions of their health plans

17   annually.  Beginning in 2015 or 2016, the health plans offered through Plaintiffs' employers

18   began requiring members to purchase "specialty medications" through a specialty pharmacy

19   operated by Caremark California Specialty Pharmacy, L.L.C. ("CSP") in order to receive in-

20   network pricing.  AC ¶¶ 1, 9–13.  That specialty pharmacy fills the member's specialty

21   prescription and either mails it to the address of his choosing or to a CVS retail pharmacy

22   (hereinafter "CVS/pharmacy") for pick-up.  *Id*. ¶ 1.  The Amended Complaint calls this plan

23   design for specialty medications—using CSP, with delivery by mail or to a CVS/pharmacy—

24   "the Program."  *Id*.  The Program applies to all specialty medications, not just to such

25   medications taken by HIV/AIDS patients.  *See e.g.*, *id*. ¶¶ 70, 120.

26   Plaintiffs criticize the Program in two respects: pricing and service.  As to price, Plaintiffs

27   
28   _____
     [3]   The exception is CaremarkPCS's contract with Lowe's Companies, Inc., which was first
     implicated by the Amended Complaint.

CVS DEFENDANTS' MOT. TO DISMISS
                                                                    3:18-CV-1031-EMC

say the Program "transform[s] drug purchases at community pharmacies from an 'in-network' covered benefit to an 'out-of-network' payment" such that "patients using a non-CVS community pharmacy will be considered going 'out-of-network' and will be subject to increased 'out-of-network' charges or may not have these medications covered at all." *Id.* ¶ 68.  As to service, Plaintiffs contend community pharmacists are "best positioned" to provide "advice and counseling" to patients through "face-to-face interactions"; detect "adverse drug interactions" because those pharmacists know better the Plaintiffs' medical history; and "immediately provide new drug regimens as their disease progresses." *Id.* ¶ 70.[4]  Although no Plaintiff alleges it happened to him, the Amended Complaint claims a prescription sent via mail may get "lost or stolen" or could raise "privacy and personal liberty concerns." *Id.* ¶ 74.[5]

Plaintiffs claim the Program "predominantly impacts . . . persons with HIV-AIDS."  AC ¶ 120; *see id.* ¶ 92 ("HIV/AIDS patients are particularly hard hit").  They do not (and cannot) claim the Program was designed to ***intentionally*** discriminate against people with HIV/AIDS.

The Program applies to specialty medications only; it does not apply to non-specialty medications.  *Id.* ¶ 70 (distinguishing rules for "regular medications" from the "separate program for specialty medications"); ¶ 120.  This fact notwithstanding, the Amended Complaint does not plead facts suggesting that the Program has a greater impact on HIV/AIDS patients as compared with non-HIV/AIDS patients who also must purchase specialty medicines under the Program.  It is undisputed that ***any*** purchaser of a specialty medicine, whether suffering from HIV/AIDS or not, is subject to the Program and all of its alleged advantages and disadvantages.

### C.   The Plaintiffs' Prescription Plans and Plan-Sponsors' Contracts

Like the original Complaint, the Amended Complaint does not attach copies of Plaintiffs' prescription plans or otherwise allege their contents.  It provides no details explaining the scope of Plaintiffs' prescription benefits, except to say that specialty medicines currently are not considered in-network prescriptions unless received through the Program.  *Id.* ¶ 1; *see id.* ¶¶ 20–

---

[4]   Defendants' specialty pharmacists are available for phone consultations.  AC ¶¶ 74, 91.

[5]   The Amended Complaint also alleges a courier could leave the prescription "baking in the afternoon sun."  AC ¶ 24.  This allegedly happened once to one Plaintiff, but the Amended Complaint does not allege that it affected the efficacy of his medicine.  *Id.*

67.  Regarding the Program, all five Plaintiffs allege receiving notice personally or through a spouse about the Program's forthcoming adoption, and four allegedly contacted the CVS Defendants after adoption and were advised that specialty medicines were covered only through the Program.  *Id.* ¶¶ 21–22, 27, 32, 40–41, 43, 45, 50, 58, 67.

Although Plaintiffs have received copies of their employers' contracts for PBM services (save Lowe's), the Amended Complaint does not attach the contracts or allege their terms. Those contracts, referenced in multiple paragraphs in the Amended Complaint, are the CVS Defendants' supposed vehicle for "contractually control[ling]," "induc[ing]," and "incentiviz[ing]" Plaintiffs' employers to adopt the Program, and they give rise to Plaintiffs' claims.  *Id.* ¶¶ 2, 68.  The Amended Complaint thus references and relies on the contracts, which the CVS Defendants attach to this Motion; the Court may consider them in deciding if Plaintiffs fail to state a claim.[6]  <span style="background-color:black; color:white;">REDACTED</span>

**D.    The Lawsuit**

On February 16, 2018, Plaintiffs filed this lawsuit; on May 14, the CVS Defendants moved to dismiss the Complaint; and on June 18, Plaintiffs filed their Corrected Amended Complaint.  The primary changes in the Amended Complaint were the additions of one new Plaintiff, two new employer-defendants, and more than twenty pages of allegations regarding *non*-HIV/AIDS medications on the CVS Defendants' specialty drug list.  Otherwise, Plaintiffs' allegations are generally unchanged.  Plaintiffs allege violations of three federal statutes:  the Affordable Care Act (Count 1), 42 U.S.C. § 18116; the Americans with Disabilities Act (Count

---

[6]    "[A] district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies."  *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998); *see Dep't of Fair Emp't & Hous. v. Law Sch. Admission Council, Inc.*, 896 F. Supp. 2d 849, 853, 867 (N.D. Cal. 2012) (Chen, J.) (noting "necessarily relies" exception); *see also Santomenno v. Transamerica Life Ins.*, 883 F.3d 833, 836 n.2 (9th Cir. 2018) (considering ERISA-relevant documents to which complaint "refers").  Plaintiffs' counsel has identified Plaintiffs' employers and plans for the CVS Defendants, which allowed the applicable contracts to be identified; thus there is no question of authenticity.

[7]    All exhibits are attached to the accompanying Declaration of Grant A. Geyerman.

CVS DEFENDANTS' MOT. TO DISMISS
3:18-CV-1031-EMC

2), 42 U.S.C. § 12182(a); and the Employee Retirement Income Security Act ("ERISA"), 29

U.S.C. § 1132(a)(1)(B), (a)(3) (Counts 5–7).  They also assert violations of two California

statutes—the Unruh Civil Rights Act, Cal. Civ. Code § 51(b) (Count 3) and the Business &

Professions Code §§ 17200–17210 (Count 4)—and a final claim (Count 8) for a "declaration of

rights" on whether (1) Defendants can operate the Program "under its current terms" and (2)

whether Plaintiffs may "opt-out" of the Program.  AC ¶ 232.  Plaintiffs seek to represent a

nationwide class of purchasers of HIV/AIDS drugs subject to the Program.  *Id.* ¶ 131.

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain "a short and plain statement of

the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  When a

defendant moves for dismissal for failure to state a claim pursuant to Rule 12(b)(6), "a court

must take all allegations of fact as true and construe them in the light most favorable to the

nonmoving party."  *Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 852 (N.D. Cal. 2018)

(Chen, J.).  However, "'conclusory allegations of law and unwarranted inferences are insufficient

to avoid a Rule 12(b)(6) dismissal.'"  *Id.* (quoting *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th

Cir. 2009)).  Well-pled factual allegations must enable the court to "'draw the reasonable

inference that the defendant is liable for the misconduct alleged.'"  *Id.* (quoting *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009)).  "A pleading that offers 'labels and conclusions' or 'a formulaic

recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it

tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (2d

alternation in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

## ARGUMENT

Plaintiffs' entire Amended Complaint is defective.  The Court should dismiss all eight

counts against the CVS Defendants because the Amended Complaint does not make allegations

specific to each CVS Defendant but, rather, makes undifferentiated allegations against an

omnibus "CVS Caremark" proxy.  In addition, the Amended Complaint's discrimination counts

are all deficient because there is no plausible allegation that the Program—which treats **anyone**

purchasing a specialty medicine the same, whether the person has HIV/AIDS or not—

discriminates against individuals based on having HIV/AIDS, and because each count fails to satisfy at least one other prima facie element of the relevant statute. Plaintiffs' three ERISA counts—for denial of benefits, breach of fiduciary duty, and denial of review—fail because, *inter alia*: Plaintiffs have not sued the entity contracting with their employers; they are seeking access to community pharmacies (and even particular pharmacists), which is not a "benefit" promised under their prescription plans; designing the Program did not implicate fiduciary duties as a matter of law; the CVS Defendants are not fiduciaries under the employers' contracts as a matter of indisputable fact; and Plaintiffs received all the procedural rights afforded by their plans. Finally, the count for "Declaratory Relief" is not an independent claim for relief.

## I.   THE AMENDED COMPLAINT'S UNDIFFERENTIATED ALLEGATIONS ABOUT "CVS CAREMARK" FAIL TO SATISFY RULE 8(a).

Although the Amended Complaint brings each count against all three CVS Defendants, it does not make allegations about each individually. Instead, it defines them collectively as "CVS Caremark," AC at 2, and, with few exceptions, makes its allegations against that generic "CVS Caremark" proxy.[8] The Court should dismiss the entire Amended Complaint against the CVS Defendants because a "[p]laintiff must allege the basis of his claim against ***each defendant*** to satisfy [Rule] 8(a)(2)." *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988).[9]

"[U]ndifferentiated pleading against multiple defendants is improper." *Aaron v. Aguirre*, 2007 WL 959083, at \*16 n.6 (S.D. Cal. Mar. 8, 2007). To survive a motion to dismiss, "[a] complaint must specify exactly what each separate defendant is alleged to have done to cause plaintiff harm." *Fagbohungbe v. Caltrans*, 2014 WL 644008, at \*5 (N.D. Cal. Feb. 19, 2014); *see, e.g.*, *Yu v. Design Learned, Inc.*, 2016 WL 1621704, at \*5 (N.D. Cal. Apr. 22, 2016) (dismissal where no differentiation among seven defendants).[10] The Amended Complaint does

---

[8]   The Amended Complaint uses the phrase "CVS Caremark" more than 280 times. By contrast, only 19 paragraphs make allegations referencing a specific CVS Defendant, with most alleging merely that Caremark California Specialty Pharmacy, L.L.C. fills mail-order prescriptions. *See* AC ¶¶ 1, 14, 25, 69, 73, 74, 78, 79, 81, 85, 116, 128, 130, 144, 147, 198, 205, 210, 222.

[9]   All emphases in the Brief are added unless otherwise specified.

[10]   *McBride v. Fannie Mae*, 2016 WL 3019308, at \*3 (E.D. Cal. May 26, 2016) (dismissal

not so specify, which is particularly prejudicial here because Plaintiffs claim discrimination and violations of ERISA arising out of, specifically, a **PBM**'s design of a prescription plan, AC ¶ 68, and yet two of the CVS Defendants are **not** PBMs but rather pharmacies. *See, e.g.*, *Corazon v. Aurora Loan Servs., LLC*, 2011 WL 1740099 (N.D. Cal. May 5, 2011) (dismissing complaint and noting the prejudice of undifferentiated allegations against "Defendants" when the subject matter does not apply to a particular defendant).

## II. THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER THE AFFORDABLE CARE ACT (COUNT 1).

Plaintiffs allege a violation of the Affordable Care Act's anti-discrimination provision— "an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance." 42 U.S.C. § 18116. The Rehabilitation Act, which the ACA incorporates, similarly states that no qualified person shall be subject to any such treatment "solely by reason of her or his disability." 29 U.S.C. § 794(a). The ACA follows the substantive requirements for demonstrating a violation of Section 504 of the Rehabilitation Act.[11]

The Amended Complaint does not suggest that the CVS Defendants designed the Program to **intentionally** discriminate against patients with HIV/AIDS, claiming instead it "**predominantly impacts** . . . persons with HIV-AIDS." AC ¶ 120; *id.* ¶ 92. Because it is not alleging intentional discrimination, the Amended Complaint cannot state a claim under the ACA unless its well-pled allegations establish: (1) the Program "disparately impacts" individuals based on having HIV/AIDS; (2) such an impact deprives Plaintiffs of meaningful access to "the [prescription] benefit that [their employer] offers"; and (3) the Program receives "Federal financial assistance," thereby triggering the ACA's prohibitions. *See, e.g.*, *Alexander v. Choate*,

where "fail[ure] to distinguish adequately claims and alleged wrongs among defendants"); *Chappell v. Newbarth*, 2009 WL 1211372, at *3 (E.D. Cal. May 1, 2009) (dismissal where "[g]eneric identifiers . . . insufficient to link a specific defendant to offending actions").

[11]   *See, e.g.*, *In re Express Scripts/Anthem ERISA Litig.*, 285 F. Supp. 3d 655, 686–87 (S.D.N.Y. 2018); *Se. Pa. Transp. Auth. v. Gilead Scis., Inc.*, 102 F. Supp. 3d 688, 697–700 (E.D. Pa. 2015); *accord Briscoe v. Health Care Serv. Corp.*, 281 F. Supp. 3d 725, 738 (N.D. Ill. 2017).

469 U.S. 287, 290, 301, 308 (1985); *Weinreich v. L.A. Cty. Metro. Transp. Auth.*, 114 F.3d 976, 978–79 (9th Cir. 1997).  Because the Amended Complaint lacks sufficient allegations on each of these elements, the Court has three independent bases to dismiss Count 1.

**A.    The Amended Complaint Fails Adequately To Plead a Disparate Impact Based on HIV/AIDS Status.**

Whether a drug is a "specialty" drug determines whether the patient may fill his prescription at a community pharmacy at in-network prices or, instead, must fill it through the Program.  Specialty drugs are separately designated because they "tend to be more expensive and can require special storage like refrigeration or special administration, like an injection."  AC ¶ 94.  For two reasons, the Amended Complaint's allegations foreclose finding any discrimination based upon the requirement that Plaintiffs fill their prescriptions for specialty HIV/AIDS medicines through the Program.

First, "all specialty medicines must be filled through the Program," AC ¶ 43, and those medicines treat many conditions other than HIV/AIDS, *id.* ¶¶ 93–95 (alleging over 50 non-HIV/AIDS conditions).  Under the Program, HIV/AIDS patients purchasing specialty medicines are subject to exactly the same restrictions as non-HIV/AIDS patients purchasing specialty medicines: both must use mail order or a CVS/pharmacy to receive the best price.  This is not disability discrimination, and that is true notwithstanding Plaintiffs' conclusory allegation that "patients with HIV and AIDS are disproportionately impacted by the Program . . . even compared to patients prescribed non-HIV/AIDS specialty medications."  *Id.* ¶ 92.  The Amended Complaint contains no specifically-pled facts showing that a purchaser of non-HIV/AIDS specialty drugs somehow receives better pricing, access, or service than a purchaser of HIV/AIDS medicines.

Second, because an HIV/AIDS patient may use his preferred community pharmacy and pay favorable "in-network" prices for any ***non***-specialty prescriptions, one cannot infer discrimination based on his HIV/AIDS.  This is true even if one accepts the premise that community pharmacies provide clinical care superior to mail-order or retail CVS pharmacies.  There simply is no well-pled disparate impact claim.

In its seminal Rehabilitation Act case addressing disparate impact discrimination, the Supreme Court explained that the statute "does not . . . guarantee the handicapped equal **results**" under their health plans. *Alexander*, 469 U.S. at 304. Rather, the statute seeks to provide "evenhanded treatment" in accessing healthcare subsidized with federal funds. *Id.*; *accord Modderno v. King*, 82 F.3d 1059, 1060 (D.C. Cir. 1996) (upholding dismissal of complaint pleading Section 504 claim based on plan terms with different coverage limits for physical- versus mental-health issues). The Program is evenhanded for HIV/AIDS and non-HIV/AIDS patients alike: both may purchase specialty medicines at preferential prices only through the Program, and both may purchase non-specialty medicines at any in-network pharmacy.

In ACA cases, courts routinely grant motions to dismiss where, as here, the complaint's allegations (or omissions) provide no plausible basis of a disparate impact based on the plaintiff's disability. In *Southeastern Pennsylvania Transportation Authority v. Gilead Sciences, Inc.*, 102 F. Supp. 3d 688 (E.D. Pa. 2015), the court dismissed with prejudice a claim brought by purchasers of Hepatitis C medicines who argued that the manufacturer's high domestic prices were discriminatory since Hepatitis C patients disproportionately bore the costs. The complaint did not allege that Gilead "change[d] the prices of its drugs depending upon whether the potential consumer has Hepatitis C." *Id.* at 700. That missing allegation was "fatal," the court said, because it foreclosed the ACA's "causation" element—"show[ing] how Gilead's actions discriminate **on the basis of disability**." *Id.* at 701. Likewise, Plaintiffs here have not alleged Defendants charged them higher prices or required they use the Program **because** they have HIV/AIDS. Rather, their purchase of a specialty drug determined how their plan applied.[12]

---

[12]   The *Gilead* court noted that "[w]hile obviously only patients with a Hepatitis C diagnosis would try to acquire [Hepatitis] drugs in the first place, that type of obvious barrier is an example of the Supreme Court's concern in [*Alexander*] about interpreting Section 504 so as to reach *all* claims of disparate impact discrimination." 102 F. Supp. 3d at 700. *Alexander* rejected the "boundless notion" that "all disparate impact showings constitute prima facie cases" under the Rehabilitation Act. *Alexander*, 469 U.S. at 299 & n.19 (Marshall, J.). To hold otherwise would have been unworkable as "the handicapped typically are not similarly situated to the nonhandicapped" in the first place, and Congress did not intend to impose the "wholly unwieldly administrative and adjudicative burden" of having to "evaluate the effect on the handicapped of every proposed action that might touch the interests of the handicapped." *Id.* at 298.

The outcome was similar in *In re Express Scripts/Anthem ERISA Litigation*, 285 F. Supp. 3d 655 (S.D.N.Y. 2018), another case involving (as relevant here) two plaintiffs with HIV/AIDS. Those plaintiffs alleged the defendant-PBM violated the ACA, causing them "'disparate economic harm,'" because under their insurance "prescription drugs related to chronic conditions like HIV are often defined as 'specialty medications' subject to a higher percentage based co-insurance charge." *Id.* at 686–87 (quoting complaint).  In granting the PBM's motion to dismiss, the court observed that the plaintiff had failed to plead two facts critical to inferring a disparate impact based on HIV/AIDS:  (1) that coinsurance rates for HIV/AIDS drugs were higher than coinsurance rates for non-HIV/AIDS drugs or (2) that plan members without HIV/AIDS paid lower rates. *Id.* at 688.  The Amended Complaint here lacks analogous allegations: that HIV/AIDS patients are treated any worse than other patients who purchase specialty drugs.

For reasons similar to *Gilead* and *In re Express Scripts*, the Amended Complaint fails to allege discrimination based on Plaintiffs' HIV/AIDS status.

## B.    Plaintiffs Were Not Deprived an Offered Benefit.

Not all disparate impacts give rise to a discrimination claim under the ACA.  *Alexander*, 469 U.S. 287; *Crowder v. Kitagawa*, 81 F.3d 1480, 1484–85 (9th Cir. 1996).  As the Supreme Court has said, only those disparate impacts that deprive one of "meaningful access to ***the benefit that the grantee offers***" can support a cause of action.  *Alexander*, 469 U.S. at 301; *accord, e.g.*, *Cal. Council of Blind v. County of Alameda*, 985 F. Supp. 2d 1229, 1236–38 (N.D. Cal. 2013) (citing *Alexander* and beginning analysis by defining the "parameters of the . . . public service offered by the County").  The benefit must be one "the grantee offers" because it is the plan sponsor, not plan members, with the authority to define what the benefit will be.  *See, e.g.*, *Alexander*, 469 U.S. at 307 (noting the "longstanding discretion" of public insurance providers "to choose the proper mix of amount, scope, and duration limitations on services covered by state Medicaid"); *id*. at 309 (Rehabilitation Act does not require insurance provider to modify "the particular package of Medicaid services [the state] has chosen to provide").

The requirement that the claim concern "the benefit the grantee offers" is an independent reason here to dismiss Plaintiffs' ACA claim.  Plaintiffs are suing for the ability to purchase

specialty medicines *at certain community pharmacies*—something to which they have no entitlement under their plans.  Critically, the Amended Complaint nowhere alleges that Plaintiffs' plans do *entitle* them to purchase specialty HIV/AIDS medicines at these community pharmacies and/or for the same prices available under the Program.  In fact, it establishes the opposite: when Plaintiffs confronted the CVS Defendants about purchasing specialty medications at community pharmacies, they were informed that their plans did not cover such purchases at all, or at least not at in-network prices.  AC ¶¶ 21–22, 27, 32, 40-41, 43, 45, 67. Plaintiffs do not suggest that this misreported their terms of coverage.  Rather, they seek an "exemption" from the terms of their prescription plans and the right to "opt out."  *See*, *e.g.*, *id.* ¶ 67.  Thus, the Amended Complaint's own allegations show Plaintiffs were not denied "the benefit that [their employer] offers," which defeats the ACA claim as a matter of law.  *See*, *e.g.*, *Alexander*, 469 U.S. at 301 (upon finding plaintiffs had no entitlement to the minimum number of covered hospital days being sought by the lawsuit, holding the district court's grant of the defendant's motion to dismiss was appropriate).[13]

### C.   The Amended Complaint Does Not Properly Allege a Health Program or Activity that Receives Federal Financial Assistance.

The ACA's anti-discrimination provision reaches only those health programs or activities "receiving Federal financial assistance."  42 U.S.C. § 18116.  Under principles of "prior construction," the "Federal financial assistance" language in Section 18116 should be interpreted like the identical language in Section 504 of the Rehabilitation Act, from which the ACA's anti-discrimination provision also draws its elements and remedies.[14]  Section 504 reaches only those

---

[13]   The same can be said about the alleged shortcomings of receiving medicines in the mail or from CVS/pharmacies.  The Amended Complaint nowhere alleges that Plaintiffs' plans guarantee a right to purchase specialty medicines free from the hassles Plaintiffs identify.  *See, e.g.*, AC ¶ 24 (shipments left in the sun), ¶ 25 (no prescription renewal reminders), ¶¶ 25, 65 (inadequate counseling), ¶¶ 26, 36 (lesser ability to monitor drug interactions), ¶¶ 25, 55 (lack of coordination with AIDS assistance program), ¶ 33 (ineffective in-store privacy protections).  The ACA does not guarantee freedom from "any unpleasant effects, such as dollar impact, waiting time, or lack of quality, unless those effects are fundamental or necessary to the . . . program." *Ruskai v. Pistole*, 775 F.3d 61, 79 (1st Cir. 2014).

[14]   *See, e.g.*, *Prince ex rel. Prince v. Jacoby*, 303 F.3d 1074, 1080 (9th Cir. 2002) (citing *Shapiro v. United States*, 335 U.S. 1, 16–17 (1948)); *Griffin v. Gen. Elec., Inc.*, 2017 WL 3449607 (N.D.

CVS DEFENDANTS' MOT. TO DISMISS
3:18-CV-1031-EMC

1   defendants who "actually 'receive' federal financial assistance," meaning "those who

2   affirmatively choose to receive federal aid" rather than anyone who simply "benefit[s] from it."

3   *Castle v. Eurofresh, Inc.*, 731 F.3d 901, 908 (9th Cir. 2013) (quotation marks omitted).[15]  In this

4   Circuit, the defendant must be an "intended" recipient of federal funds.  *Smith v. Tobinworld*,

5   2016 WL 3519244, at *5 (N.D. Cal. June 28, 2016) ("Courts should focus . . . on the intention of

6   the government and determine whether [it] intended to provide assistance or merely to

7   compensate the funding recipient." (quotation marks omitted)).  Allegations that an entity-

8   defendant is "inextricably intertwined" with whomever receives funds, without more, also is not

9   sufficient.  *See, e.g.*, *Dunlap v. Ass'n of Bay Area Gov't*, 996 F. Supp. 962, 968 (N.D. Cal. 1998)

10   ("[E]ntities that indirectly 'benefit' from federal aid, or that are 'inextricably intertwined' with

11   actual recipients, are not on that basis covered." (citation omitted)).

12   The Amended Complaint contains only two sentences addressing the funding

13   requirement, and neither pleads that a CVS Defendant was an ***intended*** recipient of federal

14   funds, as *Smith* requires.  AC ¶ 143.  One sentence just parrots the statute: "CVS Caremark's

15   Program is a 'health program or activity . . . receiv[ing] federal financial assistance.'"  *Id.*  The

16   other sentence—"CVS's *specialty and retail pharmacies* participate in and receive

17   reimbursement from Medicare"—lacks any supporting factual allegations.  *Id.*  In any event,

18   Plaintiffs fail to (1) identify the ***specific Medicare statutory grant*** of relevant funding (e.g.,

19   Medicare Part A, Part B, etc.) or (2) link "Medicare" funding to a ***specific CVS Defendant*** or the

20   Program in dispute, which are fatal omissions.[16]  The Court may dismiss the ACA claim on these

21   pleading deficiencies alone.

---

22   Ga., Jan. 6, 2017) (using Rehabilitation Act to interpret "Federal financial assistance").

23   [15]  *Accord Sharer v. Oregon*, 581 F.3d 1176, 1181 (9th Cir. 2009) (inquiring whether funds

24   were "earmarked for [particular] purpose" or were merely indirect economic benefits (quotation marks omitted)).

25   [16]  *See Indep. Hous. Servs. v. Fillmore Ctr. Assocs.*, 840 F. Supp. 1328, 1340 (N.D. Cal. 1993)

26   ("The Supreme Court directs that the court identify the recipient of the federal financial assistance by looking to the terms of the *underlying grant statute*."); *compare, e.g.*, *Vasquez v.*

27   *Smith's Food & Drug Ctrs., Inc.*, 2017 WL 1233840, at *5 (D. Ariz. Apr. 4, 2017) (drug store did not receive "federal financial assistance" merely by allowing customers to redeem Medicare

28   benefits there), *with, e.g.*, *Doe v. Centinela Hosp.*, 1988 WL 81776, at *1–2 (C.D. Cal. June 30,

1   **III.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER THE AMERICANS WITH DISABILITIES ACT (COUNT 2).**

2

3      Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182(a), dictates that "[n]o

4   individual shall be discriminated against on the basis of disability in the full and equal enjoyment

5   of the goods, services, facilities, privileges, advantages, or accommodations of any place of

6   public accommodation by any person who owns, leases (or leases to), or operates a place of

7   public accommodation."  Title III is the basis for Count 2.  AC ¶ 152.  To state a claim under this

8   provision, Plaintiffs must establish that:  (1) they have a "disability" for purposes of the ADA;

9   (2) the CVS Defendants own, lease, or operate "a place of public accommodation"; and (3) their

10  manner of operating the public accommodation discriminated against Plaintiffs "on the basis of"

11  their disability.  *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1080, 1082 (9th Cir. 2004)

12  (quotation marks omitted).  Plaintiffs' ADA claim cannot satisfy this second requirement as a

13  matter of law, and it also fails the third requirement because the Program treats any purchaser of

14  a specialty medication the same, whether the purchaser has HIV/AIDS or not.

15         **A.      Plaintiffs' Prescription Plans Are Not a "Place of Public Accommodation."**

16      In the Ninth Circuit (and elsewhere), an insurance policy or benefits plan is not a "place

17  of public accommodation" subject to the ADA's requirements.  *Weyer v. Twentieth Century Fox*

18  *Film Corp.*, 198 F.3d 1104, 1115 (9th Cir. 2000); *Chabner v. United of Omaha Life Ins.*, 225

19  F.3d 1042, 1046–47 (9th Cir. 2000); *Van Hulle v. Pac. Telesis Corp.*, 124 F. Supp. 2d 642, 644

20  (N.D. Cal. 2000) ("[A]n insurance company in its capacity as [an] administrator of an employer-

21  provided insurance plan is not a 'place of public accommodation.'" (citations omitted)); *Ford v.*

22  *Schering-Plough Corp.*, 145 F.3d 601, 614 (3d Cir. 1998) ("[T]he provision of disability benefits

23  . . . does not qualify as a public accommodation."); *Parker v. Metro. Life Ins.*, 121 F.3d 1006,

24  1010 (6th Cir. 1997) ("A benefit plan offered by an employer is not . . . a place of public

25  accommodation.").  This rule derives from the ADA's text, which lists items constituting "public

26  accommodations."  42 U.S.C. § 12181(7).  "All the items on this list . . . are actual, physical

27  _____

28  1988) (Medicare funding to hospital accused of discrimination was "federal financial assistance"
    given such funding was provided specifically to the dependency program in dispute).

places," which insurance and benefits policies obviously are not. *Weyer*, 198 F.3d at 1114. Courts have applied this rule to dismiss ADA claims regarding all types of insurance and benefit plans. *See*, *e.g.*, *Weyer*, 198 F.3d 1104 (disability insurance); *Chabner*, 225 F.3d 1042 (life insurance); *Van Hulle*, 124 F. Supp. 2d 642 (health insurance).[17]

The terms of Plaintiffs' prescription plans (or, more precisely, what Plaintiffs **want** the terms to be) are what Plaintiffs say violates the ADA. In a straightforward attack on the plan design, the introductory paragraph to Count 2 alleges that the CVS Defendants discriminated against them "**[b]y implementing the Program** . . . and effectively terminat[ing] community pharmacies and pharmacists from Plaintiffs' and Class Members' network of services." AC ¶ 153. Under *Weyer*, *Chabner*, *Van Hulle*, and many other cases, Plaintiffs' theory of discrimination challenging the terms of a prescription drug plan does not involve a "place of public accommodation," and therefore fails to state an ADA claim.

### B. There Is No Discrimination "on the Basis of" Plaintiffs' HIV/AIDS Status.

The ADA prohibits differential treatment "on the basis of disability." 42 U.S.C. § 12182(a). At least seven circuits, including the Ninth Circuit, have held that "insurance distinctions that apply equally to all employees cannot be discriminatory" under the ADA. *Weyer*, 198 F.3d 1116; *Krauel v. Iowa Methodist Med. Ctr.*, 95 F.3d 674, 678 (8th Cir. 1996) ("Insurance distinctions that apply equally to all insured [members], that is, to individuals with disabilities and to those who are not disabled, do not discriminate on the basis of disability.").[18] "Courts have routinely upheld health-related distinctions that apply equally to all insured employees." *Chaudhry v. Neighborhood Health P'ship, Inc.*, 2005 WL 6103746, at *5 (S.D. Fla. May 4, 2005) (granting motion to dismiss), *aff'd per curiam*, 178 F. App'x 900 (11th Cir. 2006).

As explained above, the Program applies if the plan member purchases a specialty drug;

---

[17]   Reaching the same result, some courts reason that the statute regulates *access* to goods and services, not their *content*. *See McNeil v. Time Ins.*, 205 F.3d 179, 186–89 (5th Cir. 2000); *Doe v. Mut. of Omaha Ins.*, 179 F.3d 557 (7th Cir. 1999); *Chabner*, 225 F.3d at 1047 ("Title III of the ADA . . . does not address the terms of the policies the insurance companies sells.").

[18]   *See also Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1101–02 (10th Cir. 1999); *Rogers v. Dep't. of Health & Envtl. Control*, 174 F.3d 431 (4th Cir. 1999); *Ford*, 145 F.3d at 608; *Parker*, 121 F.3d at 1015; *EEOC v. CNA Ins.*, 96 F.3d 1039, 1044 (7th Cir. 1996).

1  it does not matter whether he has HIV/AIDS (or any other "disability").  **All** plan members

2  whose employers have adopted the Program must purchase specialty drugs through the Program

3  or pay out-of-network prices.  Because the Program applies equally to those with and without

4  HIV/AIDS, the Court should dismiss Count 2 because there is no disability-based discrimination.

5      That was the outcome in *Doe v. Coventry Health Care, Inc.*, a putative class action, filed

6  by the same counsel here, in which the plaintiff-HIV/AIDS sufferer alleged his health insurer's

7  adoption of a mail-order requirement for "high cost specialty medications" discriminated against

8  him in violation of the ADA.  Order at 23, *John Doe v. Coventry Health Care, Inc.*, No. 15-cv-

9  62685-CMA (S.D. Fla. May 5, 2016) (attached as Ex. 5) (quotes omitted).[19]  The court noted the

10  complaint wrongly assumed the mail requirement was "disability-based discrimination."  *Id.*

11  Citing allegations like those in the Amended Complaint here, *e.g.*, AC ¶¶ 94, 120, the court

12  noted that the plaintiff had acknowledged "the mail-order program applies to more than just

13  HIV/AIDS medications," meaning the Program affected non-HIV/AIDS patients as well.  *Id.*

14  The *Coventry* court dismissed the ADA claim, and the Court should do so here as well.

15  **IV.  THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER
    CALIFORNIA'S UNRUH CIVIL RIGHTS ACT (COUNT 3)**

16

17      A violation of the ADA constitutes a violation of California's Unruh Civil Rights Act.

18  *See, e.g.*, *Dep't of Fair Emp't and Hous. v. Law Sch. Admission Council, Inc.*, 896 F. Supp. 2d

19  849, 853, 855–56 (N.D. Cal. 2012) (Chen, J.).  Where, as here, there is no viable ADA claim, *see*

20  *supra* Part III, there is no Unruh Act claim without "'intentional discrimination.'"  *Greater L.A.*

21  *Agency on Deafness, Inc. v. CNN*, 742 F.3d 414, 425 (9th Cir. 2014) (quoting *Munson v. Del*

22  *Taco, Inc.*, 208 P.3d 623, 627 (Cal. 2009)); *Wilkins-Jones v. County of Alameda*, 859 F. Supp. 2d

23  1039, 1051 (N.D. Cal. 2012) (Chen, J.) ("To the extent Plaintiff seeks to make an Unruh Act

24  claim separate from an ADA claim, she must allege intentional discrimination."); *Earll v. eBay,*

25  *Inc.*, 2011 WL 3955485, at *3 (N.D. Cal. Sept. 7, 2011).  The Amended Complaint does not

26  allege any animus by Defendants towards HIV/AIDS patients or plead specific facts to create

27  any plausible inference of intentional discrimination.  The clear thrust of Plaintiffs' allegations is

28  _____

[19]   The CVS Defendants have not been able to locate the Order on Westlaw or LEXIS.

CVS DEFENDANTS' MOT. TO DISMISS
                                                     3:18-CV-1031-EMC

1    that the Program discriminates against them in effect.  AC ¶ 92 ("particularly hard hit"), ¶ 120

2    ("predominantly impacts . . . persons with HIV/AIDS").  The Court should dismiss Count 3

3    because there is no ADA violation and Plaintiffs are not alleging intentional discrimination.

4    **V.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER**
      **CALIFORNIA'S UNFAIR BUSINESS PRACTICES ACT (COUNT 4).**

5

6          In Count 4, Plaintiffs claim the CVS Defendants violated the prohibition on "unlawful"

7    business practices under the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. C. §§ 17200–

8    17210, because the Program violated the ACA, ADA, and Unruh Act.  AC ¶ 186.  Because those

9    predicate claims fail for the reasons described above, Plaintiffs' UCL claim also fails to state a

10   claim.  *See, e.g.*, *Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1028 (N.D. Cal. 2012) (dismissing

11   UCL "unlawful" claim where plaintiff failed to state a claim for predicate violations of ADA and

12   Unruh Act); *cf.*, *e.g.*, *Farmers Ins. Exch. v. Super. Ct.*, 6 Cal. Rptr. 2d 487, 491 (1992) (en banc)

13   (UCL "'borrows' violations of other laws and treats these violations, when committed pursuant

14   to business activity, as unlawful practices independently actionable" (quotes omitted)).

15         According to the Amended Complaint, the only other reason the Program is "unlawful" is

16   45 C.F.R. § 156.122(e), which provides that "a health plan providing essential benefits must . . .

17   allow enrollees to access prescription drug benefits at in-network retail pharmacies" unless an

18   exception applies.  AC ¶ 186.  Plaintiffs provide no basis to infer that regulation applies in this

19   case.  This "Essential Health Benefits" ("EHB") regulation does not apply to "self-insured group

20   health plans," "large group market health plans," and plans "grandfathered" from before the

21   ACA's enactment.  *See* Dep't of Health & Human Servs., FAQ on Essential Health Benefits

22   Bulletin (Feb. 17, 2012) at Q&A 10 ("Under the [ACA], self-insured, group health plans, large

23   group market plans, and grandfathered plans are not required to offer EHB [essential health

24   benefits]."), *available at* https://www.cms.gov/CCIIO/Resources/Files/Downloads/ehb-faq-

25   508.pdf.  The regulation thus applies only to non-grandfathered, fully-insured individual or

26   small-group market plans.  Plaintiffs allege no facts explaining the nature of their plans such that

27   the Court could infer that the regulation applies to them (it does not).[20, 21]

28   ―――――――――――――
     [20]    In all events, the Program—which (1) involves specialty medicines that may be temperature-

1   **VI.   THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER ERISA.**

2          Plaintiffs' ERISA claims should be dismissed for multiple reasons.  *First*, the ability to

3   access community pharmacies on an in-network basis is not a "benefit" guaranteed in Plaintiffs'

4   plans, which dooms any denial-of-benefits claim (Count 5).  *Second*, designing a prescription

5   benefit—i.e., crafting the Program—is not an activity that even implicates fiduciary duties, nor

6   are the CVS Defendants named- or functional-fiduciaries for Plaintiffs' plans.  Either reason

7   dooms the fiduciary duty claim (Count 6).  *Third*, Count 7 fails for several reasons.  *Finally*, all

8   three Counts fail because Plaintiffs have not sued the entity who contracted with their employers.

9          **A.     Plaintiffs Do Not State a Claim for Denial of Benefits (Count 5).**

10         In Count 5, Plaintiffs bring a denial-of-benefits claim under Section 502(a)(1)(B) of

11  ERISA, 29 U.S.C. § 1132(a)(1)(B).  AC ¶¶ 194–202.  The thesis underlying a denial-of-benefits

12  claim is that ERISA provides a qualifying individual a statutory right to recover a benefit that he

13  or she was promised by the ERISA plan, but which was not delivered.  *See Steelman v.*

14  *Prudential Ins.*, 2007 WL 1080656, at *7 (E.D. Cal. Apr. 4, 2007) ("A plaintiff who brings a

15  claim for benefits under ERISA must identify a specific plan term that confers the benefit in

16  question." (quotation marks omitted)); *Clair v. Harris Tr. & Sav. Bank*, 190 F.3d 495, 497 (7th

17  Cir. 1999) ("only benefits specified in the plan can be recovered" under Section 502(a)(1)(B)).

18  Accordingly, one element in any denial-of-benefits claim is proof the plaintiff is deprived a

19  benefit owed under his plan.  The Amended Complaint does not, and cannot, plead this element.

20         Tellingly, the Amended Complaint does not attach Plaintiffs' prescription plans or

21  otherwise allege their contents, which would identify Plaintiffs' terms of coverage.  That

22

23  ───────────────────────────────

24  sensitive or complex to administer, as Plaintiffs acknowledge, AC ¶¶ 24, 94, and (2) allows for
    pickup at a CVS/pharmacy—is fully consistent with the regulation.  *See* 45 C.F.R.

25  § 156.122(e)(1)(ii) (exception where "drug requires special handling").

26  [21]   Count 4 only expressly says Defendants acted "unlawful[ly]."  AC ¶ 186.  If Plaintiffs intend
    also to argue a claim under the UCL's "unfair" and/or "fraudulent" prongs, the claim is not well

27  pled.  *Moss v. Infinity Ins.*, 197 F. Supp. 3d 1191, 1199 (N.D. Cal. 2016) ("It is unclear from
    Plaintiff's allegations which prong her UCL claim falls under.  For this reason, the Court

28  dismisses the [UCL] cause of action . . . ." (citation omitted)); Fed. R. Civ. P. 8(a), 9(b).

omission, which alone warrants dismissing Count 5,[22] surely reflects the fact that Plaintiffs'

plans do not, in fact, guarantee them what they claim to be deprived of—"the right to opt-out of

the Program"; the "right to use non-CVS pharmacies on an in-network basis"; and "financial

discounts or rebates" that could have offset their costs.  AC ¶ 196.

In fact, the Amended Complaint *affirmatively alleges* that Plaintiffs' employers selected

"non-opt-out" specialty plans, meaning Plaintiffs have "no right to request exemption from the

Program."  *Id.* ¶ 102.  It likewise alleges Plaintiffs were advised of a "policy change" such that

specialty medicines would no longer be covered at in-network prices at community pharmacies.

*Id.* ¶¶ 21, 120, 196 (alleging "policy change," "revocation of their . . . right to use non-CVS

pharmacies"); *accord id.* ¶¶ 21, 23, 32, 43, 45, 50, 58 (Plaintiffs advised community pharmacies

no longer covered).[23]  Plaintiffs nowhere say this misstated their terms of coverage.  Although

Plaintiffs obviously *prefer* to shop at community pharmacies and, thus, want to opt out of the

Program, Plaintiffs have *no such rights* under their plans, which defeats Count 5.  *See Forest

Ambulatory Surgical Assocs., L.P. v. United HealthCare Ins.*, 2011 WL 248724, at *5 (N.D. Cal.

July 13, 2011) (failure to make "reference to the terms of the controlling plans . . . mandate[s] the

dismissal of the ERISA cause of action" (citation omitted)); *Armijo v. ILWU-PMA Welfare Plan*,

2015 WL 13629562, at *5 (C.D. Cal. Aug. 21, 2015) ("Absent identification of a Plan term

under which the services were covered, Plaintiffs fail to state a claim for denial of benefits[.]").

**B.   Plaintiffs Do Not State a Claim for Breach of Fiduciary Duty (Count 6).**

Count 6 alleges a breach of fiduciary duty under ERISA Section 502(a)(3), 29 U.S.C.

§ 1132(a)(3), which fails to state a claim because the CVS Defendants are not ERISA fiduciaries

---

[22]   *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 300 (2009) (claim "stands or falls by the terms of the plan" (quotes omitted)); *Downey Surgical Clinic, Inc. v. Ingenix, Inc.*, 2013 WL 12114069, at *5 (C.D. Cal. Mar. 12, 2013) ("To state a claim under that section, a plaintiff must allege . . . the provisions of the plan that entitle it to benefits."); *Cox ex rel. Cox v. Reliance Standard Life Ins.*, 2013 WL 2156546, at *8 (E.D. Cal. May 17, 2013) ("a claim for benefits under ERISA must identify specific plan terms that confers the benefit in question." (quotation marks omitted)); *accord Henglein v. Informal Plan for Plant Shutdown Benefits for Salaried Emps.*, 974 F.2d 391, 400 (3d Cir. 1992) (plan documents are "of particular interest to the district court," since "a clear delineation [of benefits] . . . would be dispositive").

[23]   The Amended Complaint is silent on what, if anything, each Plaintiff's plan guarantees its members concerning receiving the benefit of rebates or discounts negotiated by the plan's PBM.

CVS DEFENDANTS' MOT. TO DISMISS
3:18-CV-1031-EMC

1    with respect to the challenged conduct.  *Santomenno*, 883 F.3d at 837; 29 U.S.C. § 1002(21)(A)

2    (defining "fiduciary").  There are two types of ERISA fiduciaries—"named" fiduciaries and

3    "functional" fiduciaries, *id.* at 837—and, regarding the conduct that allegedly violates ERISA,

4    the CVS Defendants are neither type.

### 1.    The CVS Defendants are not named fiduciaries.

6        A "named" fiduciary is designated as such, in writing, in a beneficiary's plan documents.

7    29 U.S.C. § 1102(a)(1).  The Amended Complaint does not attach Plaintiffs' plan documents,

8    allege their contents, or, with one exception, even plead that the CVS Defendants are named

9    fiduciaries in those documents.  The exception is a cryptic allegation—that "certain employers'

10   health benefit plans," including the plan offered by one Plaintiff's employer (Lowe's), identify

11   "CVS Caremark" as a "fiduciary with respect to prescription drug benefits," AC ¶ 100—that is

12   insufficient to establish any relevant named fiduciary here.

13       The CVS Defendants attached to their motion to dismiss the original Complaint the

14   contracts between the employers for the original John Doe Plaintiffs and CaremarkPCS. REDACTED

15   ██████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████

17   ███████████████████████████████████████████████████████████

18   ██████████████████████████████████████████████████████████

19   █████████████████████████████████████████████████████████

20   ███████████████████████████████████████████████████████

21   █████████████████████████████████████████████████████

22   ███████████████████████████████████████████████████████████

23   ███████████████████████████████████████████

24   ██████████████████████████████████████████████

25   ██████████████████████████████████████████████    The Amended

26   Complaint does not name (1) and does not allege (2) or (3), and thus lacks any well-pled basis to

27   say that the CVS Defendants are named fiduciaries.

28       Because the CVS Defendants are not named fiduciaries, Count 6 fails unless they are

1    "functional" fiduciaries.  The CVS Defendants are not, as addressed below.

2              **2.    The CVS Defendants are not functional fiduciaries.**

3         The Amended Complaint strongly implies the CVS Defendants are ***functional***

4    fiduciaries, alleging they "exercise[] significant if not sole discretionary authority with respect to

5    the management of [Plaintiffs'] prescription drug benefit[s]."  AC ¶ 205.  They do so, Plaintiffs

6    say, by "deciding whether a particular specialty medicine is to be subject to the Program";

7    "incentivizing use of the Program"; "requir[ing] . . . mail order shipments" for specialty drugs;

8    and using CVS/pharmacies "as drop shipment locations." *Id.*[24]  In short, Plaintiffs say, "by

9    requiring Plaintiffs and the Class to use the Program," the CVS Defendants are "not acting solely

10   in the interest of the participants and beneficiaries," in breach of their fiduciary duties.  *Id.* ¶ 210.

11        Again, CaremarkPCS, not a CVS Defendant, has contracted with Plaintiffs' employers.

12   But even setting that fact aside, Plaintiffs' theory of breach of fiduciary duty fails as a matter of

13   law because the Amended Complaint is challenging the ***benefit design*** adopted for specialty

14   medicines and ***plan-design activities do not implicate fiduciary duties***.  ***First***, a PBM is not a

15   fiduciary when selecting which drugs are part of a benefit program offered to plan sponsors.

16   *Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 477 (7th Cir.

17   2007); *see also Moeckel v. Caremark, Inc.*, 622 F. Supp. 2d 663, 687 (M.D. Tenn. 2007)

18   ("Caremark's formulary design and management activities with respect to its proprietary

19   formularies are not fiduciary in nature.").  ***Second***, a plan sponsor is not a fiduciary when it

20   selects among options offered by a PBM—i.e., when it "makes a decision regarding the form or

21   structure of the Plan such as who is entitled to receive Plan benefits and in what amounts, or how

22   such benefits are calculated."[25]  *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999); *see*

23   *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995) ("Employers or other plan

24   sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or

25

26   [24]   Paragraph 205 makes two other assertions—that the CVS Defendants (1) "interpret benefits,
     terms, conditions" of the plans and (2) "decide[] whether or not to consistently accept discounts

27   and rebates"—that are not supported by factual allegations in the Amended Complaint.

28   [25]   For this reason, the CVS Defendants cannot be liable as so-called "co-fiduciaries" of
     Plaintiffs' employers for any alleged fiduciary breach by the employers.  AC ¶ 104.

1   terminate welfare plans."). *Third*, "there [is] no breach of fiduciary duty where an ERISA plan

2   is implemented [by a PBM or other claims administrator] according to its written,

3   nondiscretionary terms.'" *In re UnitedHealth Grp. PBM Litig.*, 2017 WL 6512222, at *8 (D.

4   Minn. Dec. 19, 2017) (quoting *Alves v. Harvard Pilgrim Health Care Inc.*, 204 F. Supp. 2d 198,

5   210 (D. Mass. 2002), *aff'd per curiam*, 316 F.3d 290 (1st Cir. 2003)). Thus, the CVS

6   Defendants' acts of offering the Program to clients, and then performing under it once selected

7   by its clients, cannot breach a fiduciary duty.

8           The very premise of Plaintiffs' fiduciary claim—that CVS "exercises significant if not

9   sole discretion[]" over their plans, AC ¶ 205—is not plausibly pled and misunderstands a PBM's

10  role in the delivery of prescription benefits.  A PBM, either alone or in combination with its

11  plan-client, develops various benefit-options from which the ***client*** selects what it will provide to

12  members (e.g., high-deductible plan, low-deductible plan, copay-free generics, etc.); the client

13  alone determines what the benefit will be and on what terms; and, once selected, the PBM

14  delivers the services the client has contracted for in the course of delivering the benefit to

15  members.  Although a PBM certainly may influence what options are available to the plan, it is

16  the plan, by choosing what actually is offered, that "controls" the benefit.  *Santomenno*, 883 F.3d

17  at 838 ("'[N]othing prevented the [employers] from rejecting [Caremark's] product and selecting

18  another service provider; the choice was theirs.'" (quoting *Santomenno ex rel. John Hancock Tr.*

19  *v. John Hancock Life Ins.*, 768 F.3d 284, 295 (3d Cir. 2014))).

20          PBMs are ***not*** ERISA fiduciaries for precisely these reasons.  *See, e.g.*, *In re Express*

21  *Scripts, Inc. PBM Litig.*, 2008 WL 2952787, at *10–14 (E.D. Mo. July 30, 2008) (no fiduciary

22  regarding, *inter alia*, drug pricing and rebate negotiation); *Mulder v. PCS Health Sys., Inc.*, 432

23  F. Supp. 2d 450, 461 (D.N.J. 2006) (same); *Bickley v. Caremark Rx, Inc.*, 361 F. Supp. 2d 1317,

24  1334 (N.D. Ala. 2004) (same), *aff'd*, 461 F.3d 1325 (11th Cir. 2006); *see also Moeckel*, 622 F.

25  Supp. 2d at 693.  The Seventh Circuit expressly rejected the allegation that Caremark Rx, Inc.

26  and Caremark, Inc.—two predecessors of Defendant Caremark, L.L.C. here—"exerted

27  considerable influence" or "complete control" over selecting which drugs to include in the health

28  plan because "[t]he express language of the contracts" shows that the plan retained "final

CVS DEFENDANTS' MOT. TO DISMISS
                                                3:18-CV-1031-EMC

1   authority" in selecting Caremark's preferred drug list. *Chi. Dist. Council*, 474 F.3d at 477.

2   The same is true in this case. **REDACTED**

3   [REDACTED]

4   [REDACTED]

5   [REDACTED]

6   [REDACTED]

7   [REDACTED]

8   [REDACTED]

9   [REDACTED]

10  [REDACTED]

11  [REDACTED]

12  [REDACTED]

13  [REDACTED]

14  [REDACTED]

15  [REDACTED]

16  [REDACTED]

17  [REDACTED]

18  [REDACTED]

19  [REDACTED]

20          Courts credit these types of contract provisions in determining whether an entity is a

21  fiduciary. *See, e.g.*, *Chi. Dist. Council*, 474 F.3d at 467; *Bd. of Trs. of W. Lake Super. Piping*

22  *Indus. Pension Fund v. Am. Benefit Plan Adm'rs, Inc.*, 925 F. Supp. 1424, 1433 (D. Minn. 1996)

23  (relying on "the terms of the operative contract [that] repudiate[d] the propriety of [fiduciary]

24  status" to conclude that servicer of benefit plan was not an ERISA fiduciary).  And after

25  reviewing such provisions, many courts conclude "that [] PBMs do not exercise 'discretionary

26  authority or control in the management and administration of the plan'" and are not fiduciaries.

27  *Pharm. Care Mgmt. Ass'n v. Rowe*, 429 F.3d 294, 301 (1st Cir. 2005) (per curiam).

28          Because the challenged conduct concerns designing a plan benefit and, in all events, the

1    CVS Defendants by contract cannot be fiduciaries on any relevant issue, Count 6 fails.

2          **C.       Plaintiffs Do Not State an ERISA "Full and Fair Review" Claim (Count 7).**

3          An ERISA beneficiary is entitled to "a full and fair review by the appropriate named

4    fiduciary" of a denied claim for benefits.  29 U.S.C. § 1133(2).  Count 7 asserts a separate cause

5    for the supposed "absence of full and fair review" given "CVS Caremark's across-the-board

6    implementation of the Program and its blanket denial of the right to opt-out."  AC ¶ 221.

7          *First*, Section 1133 affords beneficiaries a "full and fair review" of an adverse benefit

8    determination.  But Plaintiffs here do not allege they were denied *review* of a benefit

9    determination; they allege that "Defendants have failed to provide a reasonable procedure for

10   subscribers who wish to opt-out of the Program[.]"  AC ¶ 129.  Plaintiffs accept that their plans

11   do not, in fact, provide an opt-out right to which such a procedure would apply.  *See supra* Part

12   IV.A.  Section 1133 claims allow members to challenge a denial of a right granted under a plan;

13   it does not mandate a process of any kind for a beneficiary's petition to *modify* the plan.  *See* 29

14   C.F.R. § 2560.503-1(e) (defining a "Claim for benefits" as seeking a "plan benefit").

15         *Second*, even if the CVS Defendants were obligated to review Plaintiffs' opt-out request

16   (they are not), Plaintiffs do not allege in what way the review they received was deficient.

17   Section 1133's implementing regulations require, for example, that the review procedure provide

18   "at least 60 days . . . to appeal the determination"; an "opportunity to submit written comments";

19   and, "upon request and free of charge, reasonable access" to relevant documentation and medical

20   records.  29 C.F.R. § 2560.503-1(h)(2).  Plaintiffs do not allege that their plans' procedures

21   failed in these respects.  Indeed, they were afforded "the appeal and grievance requirements

22   provided for in their plan documents[.]"  AC ¶ 220.  Plaintiffs' real beef is that the requests

23   "were denied," *id.*, not that the reviews were procedurally deficient.

24         *Third*, in Count 7, Plaintiffs seek to rewrite the terms of their plans instead of obtaining

25   the procedural relief normally afforded by a denial-of-review claim.  In explaining its requested

26   relief, Count 7 says "Plaintiffs seek the aforementioned benefit of continued access to

27   community pharmacies as an 'in-network' benefit."  AC ¶ 228.  Plaintiffs, of course,

28   acknowledge that their plans have not guaranteed in-network access to community pharmacies

1  (for specialty drugs) for several years.  *See supra* pp.19.  "[T]he usual remedy for a violation of §

2  1133 is to remand to the plan administrator so the claimant gets the benefit of a full and fair

3  review."  *Chuck v. Hewlett Packard Co.*, 455 F.3d 1026, 1035 (9th Cir. 2006) (quotes omitted).[26]

4  The Court should dismiss Count 7, which merely invites the Court to commit reversible error by

5  rewriting the terms of Plaintiffs' plans.  *Peterson v. Am. Life & Health Ins.*, 48 F.3d 404, 411

6  (9th Cir. 1995) ("[A] court has no authority to draft the substantive content of [benefit] plans.").

7  The Court should dismiss Count 7.

8         **D.    Plaintiffs Have Not Sued CaremarkPCS Health, L.L.C. (Counts 5–7).**

9         The Court should also dismiss all three ERISA counts because the CVS Defendants did

10  not contract with Plaintiffs' employers and, thus, have no ERISA obligations in connection with

11  the employers' prescription plans.  The CVS Defendants provided the CaremarkPCS-employer

12  contracts (save Lowe's) to Plaintiffs with their original motion to dismiss, and yet Plaintiffs

13  inexplicably did not name the appropriate party for their ERISA claims when they filed the

14  Amended Complaint.  The claims remain defective because the proper entity has not been sued.

15  **VII.   DECLARATORY RELIEF IS NOT A STANDALONE CLAIM (COUNT 8).**

16         Plaintiffs' final count, which seeks declaratory relief pursuant to 28 U.S.C. § 2201, fails

17  because the "Declaratory Judgment Act does not . . . provide an independent cause of action."

18  *Keene Corp. v. Fiorelli*, 14 F.3d 726, 731 (2d Cir. 1993).  "A claim for declaratory relief rises or

19  falls with the other claims."  *Ballard v. Chase Bank USA, NA*, 2010 WL 5114952, at *8 (S.D.

20  Cal. Dec. 9, 2010) (brackets and quotes omitted).  Because Counts 1–7 fail to state a claim for

21  the reasons above, the Court should dismiss Count 8.  *See Mills v. JPMorgan Chase Bank, N.A.*,

22  2016 WL 4595222, at *4 (E.D. Cal. Sept. 1, 2016); *Mayen v. Bank of Am., N.A.*, 2015 WL

23  179541, at *5 (N.D. Cal. Jan. 14, 2015) ("[D]eclaratory relief is not a standalone claim.").

**CONCLUSION**

24         For these reasons, the Court should dismiss the Amended Complaint with prejudice.

25

26

---

27  [26]  *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 630 (2d Cir. 2008) ("typical remedy is
remand for further administrative review"); *Mass. Mut. Life Ins. v. Russell*, 473 U.S. 134, 144

28  (1985) (not a "right of action for compensatory or punitive relief").

1    Dated:  July 20, 2018                          Respectfully submitted,

2                                                   By:_____*/s/ Grant A. Geyerman*_____
                                                    Enu Mainigi (*Pro Hac Vice*)
3                                                   Grant A. Geyerman (*Pro Hac Vice*)
                                                    Sarah O'Connor (*Pro Hac Vice*)
4                                                   Benjamin W. Graham (*Pro Hac Vice*)
                                                    WILLIAMS & CONNOLLY LLP
5
                                                    Tami S. Smason (Bar No. 120213)
6                                                   Nicholas J. Fox (Bar No. 279577)
                                                    FOLEY & LARDNER LLP
7
                                                    *Attorneys for CVS Pharmacy, Inc.; Caremark,*
8                                                   *L.L.C.; and Caremark California Specialty*
                                                    *Pharmacy, L.L.C.*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                   CVS DEFENDANTS' MOT. TO DISMISS
                                                   3:18-CV-1031-EMC

1

**CERTIFICATE OF SERVICE**

2        I hereby certify that on July 20, 2018, I caused the foregoing to be electronically filed

3   with the Clerk of the Court using CM/ECF, which will send notification of such filing to all

4   registered participants.

5

6                                    ___/s/ Grant A. Geyerman___
                                     Grant A. Geyerman

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CVS DEFENDANTS' MOT. TO DISMISS
                                         3:18-CV-1031-EMC