| | |
|---|---|
| 1 | Enu Mainigi (*Pro Hac Vice*) |
| | Craig D. Singer (*Pro Hac Vice*) |
| 2 | Grant A. Geyerman (*Pro Hac Vice*) |
| | Sarah O'Connor (*Pro Hac Vice*) |
| 3 | Benjamin W. Graham (*Pro Hac Vice*) |
| | WILLIAMS & CONNOLLY LLP |
| 4 | 725 Twelfth Street, N.W. |
| | Washington, DC 20005 |
| 5 | Telephone: (202) 434-5000 |
| | Facsimile: (202) 434-5029 |
| 6 | |
| 7 | John J. Atallah (Bar No. 294116) |
| | FOLEY & LARDNER LLP |
| 8 | 555 South Flower Street, Ste. 3500 |
| | Los Angeles, CA 90071 |
| 9 | Telephone: (213) 972-4500 |
| | Facsimile: (213) 486-0065 |

*Attorneys for CVS Pharmacy, Inc.; Caremark, L.L.C.; Caremark California Specialty Pharmacy, L.L.C.; Garfield Beach CVS, L.L.C.; and CaremarkPCS Health, L.L.C.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| JOHN DOE ONE; RICHARD ROE in his capacity as executor for JOHN DOE TWO; JOHN DOE FOUR, in his personal capacity and as the authorized representative of JOHN DOE THREE; and JOHN DOE FIVE; on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CVS PHARMACY, INC.; CAREMARK, L.L.C.; CAREMARK CALIFORNIA SPECIALTY PHARMACY, L.L.C.; GARFIELD BEACH CVS, L.L.C.; CAREMARKPCS HEALTH, L.L.C.; and DOES 1–10, inclusive,<br><br>Defendants. | No. 3:18-cv-1031-EMC<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED COMPLAINT (DKT. NO. 162) BY CVS PHARMACY INC., CAREMARK, L.L.C., CAREMARK CALIFORNIA SPECIALTY PHARMACY, L.L.C., GARFIELD BEACH CVS, L.L.C., and CAREMARKPCS HEALTH, L.L.C.; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: April 28, 2022<br>Time: 1:30 p.m. PT<br>Courtroom 5, 17th Floor<br>Judge: Hon. Edward M. Chen |

# NOTICE OF MOTION AND MOTION

TO: THE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Thursday, April 28, 2022, at 1:30 p.m. PT, or as soon thereafter as this matter may be heard, in Courtroom 5, 17th Floor, United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA, Defendants CVS Pharmacy, Inc., Caremark, L.L.C., Caremark California Specialty Pharmacy, L.L.C., Garfield Beach CVS, L.L.C., and CaremarkPCS Health, L.L.C. ("Defendants") will and hereby do move the Court for an order dismissing Plaintiffs' Second Amended Class Action Complaint ("Second Amended Complaint") with prejudice and without further leave to amend. This Motion is made pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6) on the grounds that:

    a)     the Second Amended Complaint does not name any entity for which Plaintiffs sufficiently allege both (i) responsibility for the allegedly discriminatory conduct and (ii) the receipt of Federal funding necessary to demonstrate a violation of Section 1557 of the Affordable Care Act ("ACA");

    b)     the Second Amended Complaint does not state a predicate violation of the ACA and thus does not state a claim under the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; and

    c)     further amendment would be futile.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, any reply memorandum, the pleadings and files in this action, and such other matters as may be presented at or before the hearing.

Dated: March 1, 2022

Respectfully submitted,

By: */s/ Craig D. Singer*
Enu Mainigi (*Pro Hac Vice*)
Craig D. Singer (*Pro Hac Vice*)
Grant A. Geyerman (*Pro Hac Vice*)
Sarah O'Connor (*Pro Hac Vice*)
Benjamin Graham (*Pro Hac Vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005

Telephone: (202) 434-5000
Facsimile: (202) 434-5029

John J. Atallah (Bar No. 294116)
FOLEY & LARDNER LLP
555 South Flower Street, Ste. 3500
Los Angeles, CA 90071
Telephone: (213) 972-4500
Facsimile: (213) 486-0065

*Attorneys for CVS Pharmacy, Inc.; Caremark, L.L.C.; Caremark California Specialty Pharmacy, L.L.C.; Garfield Beach CVS, L.L.C.; and CaremarkPCS Health, L.L.C.*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................ ii

STATEMENT OF ISSUES TO BE DECIDED ........................................................................... iv

INTRODUCTION .......................................................................................................................... 1

PROCEDURAL POSTURE .......................................................................................................... 2

FACTUAL BACKGROUND ........................................................................................................ 3

    A.    The Plaintiffs and Their Claims ................................................................................ 3

    B.    The Defendants .......................................................................................................... 4

LEGAL STANDARD .................................................................................................................... 5

ARGUMENT .................................................................................................................................. 6

I.    THE SAC DOES NOT STATE A CLAIM AGAINST THE PBM DEFENDANTS. .................................................................................................................. 6

II.    THE SAC DOES NOT STATE A CLAIM AGAINST THE PHARMACY DEFENDANTS. .................................................................................................................. 9

III.    THE SAC'S UCL CLAIM FAILS BECAUSE THE ACA CLAIM FAILS. ..................... 12

CONCLUSION ............................................................................................................................ 12

# TABLE OF AUTHORITIES

Federal Cases

*Ahlstrom v. DHI Mortg. Co.*,
   21 F.4th 631 (9th Cir. 2021) ................................................................................................ 7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................ 6

*Corcoran v. CVS Health Corp.*,
   169 F. Supp. 3d 970 (N.D. Cal. 2016) ................................................................................ 4

*Cullen v. Netflix, Inc.*,
   880 F. Supp. 2d 1017 (N.D. Cal. 2012) ............................................................................ 12

*Do Sung Uhm v. Humana, Inc.*,
   620 F.3d 1134 (9th Cir. 2010) ............................................................................................ 8

*Doe v. CVS Pharmacy, Inc.*,
   982 F.3d 1204 (9th Cir. 2020) ............................................................................ 10, 11, 12

*Drachman v. Bos. Sci. Corp.*,
   258 F. Supp. 3d 207 (D. Mass. 2017) .............................................................................. 6, 9

*Dunlap v. Ass'n of Bay Area Gov'ts*,
   996 F. Supp. 962 (N.D. Cal. 1998) .................................................................................... 8

*Kilby v. CVS Pharmacy, Inc.*,
   2012 WL 1969284 (S.D. Cal. May 31, 2012) ............................................................... 5, 10

*Sloan v. Gen. Motors LLC*,
   287 F. Supp. 3d 840 (N.D. Cal. 2018) (Chen, J.) ............................................................... 5

*Vang v. State Farm Mut. Auto. Ins. Co.*,
   2021 WL 5761002 (C.D. Ill. Dec. 3, 2021) ........................................................................ 7


Statutes, Regulations, and Rules

42 C.F.R. § 92.3 ........................................................................................................... 2, 6, 7, 9

Affordable Care Act, 42 U.S.C. § 18116 .................................................................. 1, 2, 6, 10

Americans with Disabilities Act, 42 U.S.C. § 12182(a) ................................................... 2

Cal. Bus. & Prof. Code § 4050(b) ........................................................................................ 10

Cal. Health & Safety Code § 1385.001 ............................................................................... 10

Employee Retirement Income Security Act, 29 U.S.C. § 1132(a)(1)(B), (a)(3) ............ 2

Federal Rule of Civil Procedure 8(a)(2) ............................................................................. 5

Federal Rule of Civil Procedure 12(b)(6) ................................................................................5

Unfair Competition Law ("UCL"), Cal. Civ. Code § 17200 ...............................................1, 2, 12

Unruh Civil Rights Act, Cal. Civ. Code § 51(b) ..........................................................................2

**STATEMENT OF ISSUES TO BE DECIDED**

1. Have Plaintiffs plausibly alleged that each Defendant (i) is "principally engaged in the business of providing healthcare" and receives Federal financial assistance or (ii) certain of the Defendant's "operations" receive Federal financial assistance and were engaged in the conduct that allegedly violates the ACA?

2. Have Plaintiffs plausibly alleged that each Defendant violated the ACA's anti-discrimination provision?

**INTRODUCTION**

After the Ninth Circuit directed that the Court address on remand whether the complaint states a claim under the "Federal financial assistance" element of the ACA, Plaintiffs undertook to amend their complaint, adding verbiage about "Federal financial assistance," and naming two new CVS affiliates as defendants. The operative Second Amended Complaint presumably now includes all the factual allegations Plaintiffs could muster in support of their assertions that each of the five named Defendants received Federal financial assistance in connection with the conduct that allegedly violates the ACA's nondiscrimination provision. Yet, the Second Amended Complaint falls woefully short of alleging a claim against any Defendant.

With respect to the two Defendants who are pharmacy benefit managers—Caremark, L.L.C. and CaremarkPCS Health, L.L.C. (the "PBM Defendants")—Plaintiffs do not allege that either of them receives Federal financial assistance of any sort. The Second Amended Complaint does not include even a single allegation addressing that subject for either entity.

With respect to the three Defendants who are pharmacies—CVS Pharmacy, Inc., Caremark California Specialty Pharmacy, L.L.C., and Garfield Beach CVS, L.L.C. (the "Pharmacy Defendants")—Plaintiffs do not plausibly allege that any of them is responsible for the conduct they claim is discriminatory. Plaintiffs complain of certain terms of their employer-sponsored health plans that require Plaintiffs to fill their prescriptions for specialty medicines through mail-order delivery, rather than in-person at a "community pharmacy," to obtain in-network pricing. SAC ¶¶ 1, 69. Plaintiffs cannot plausibly allege that the Pharmacy Defendants have anything to do with designing or administering those benefit plans. Pharmacies just fill prescriptions.

Because Plaintiffs have not alleged a plausible ACA violation by any Defendant, the Court should dismiss Count I. Dismissal of Count I also requires dismissal of Count II, under Section 17200 of the California Business & Professions Code, because the Ninth Circuit held that Count II depends on a predicate violation of the ACA. Because Plaintiffs filed the Second Amended Complaint specifically to make their best case establishing an ACA violation after

1  remand from the Ninth Circuit, the Court's dismissal should be with prejudice. Any further

2  amendment would be futile.

## PROCEDURAL POSTURE

Plaintiffs filed this lawsuit in February 2018, and amended it in June 2018 to add additional defendants.[1] Dkt. Nos. 1, 75. In December 2018, the Court issued a 40-page Order dismissing the Amended Complaint in its entirety. Dkt. No. 143. On appeal, the Ninth Circuit "vacate[d] the district court's dismissal of [the] ACA claim and UCL claim to the extent it is predicated on a violation of the ACA," but "affirm[ed] the district court's dismissal of all other claims." Dkt. No. 152 at 22–23.[2] The Ninth Circuit held that Plaintiffs could state a claim for disparate-impact discrimination under the ACA by alleging that Defendants denied them "meaningful access to '[their] prescription drug benefit as a whole.'" *Id.* at 12.

Defendants argued to the Ninth Circuit that dismissal should be affirmed on the alternative ground that the Amended Complaint did not sufficiently allege that the Defendants receive "Federal financial assistance," which is a prima facie requirement of an ACA nondiscrimination claim. 42 U.S.C. § 18116 (forbidding discrimination under "any health program or activity, any part of which is receiving Federal financial assistance"). Defendants' motion to dismiss had raised that issue, but this Court did not need to reach it because the Court dismissed the ACA claim on other grounds. The Ninth Circuit remanded with instructions that this Court should address in the first instance whether Plaintiffs had adequately alleged that Defendants satisfy the ACA's "Federal financial assistance" requirement. *Id.* at 16 n.2; *see also* 42 U.S.C. § 18116; 42 C.F.R. § 92.3.

---

[1] The original defendants were CVS Health Corporation, CVS Pharmacy, Inc., CaremarkRx, L.L.C., Caremark, L.L.C., Caremark California Specialty Pharmacy, L.L.C., and Amtrak. In May 2018, Plaintiffs voluntarily dismissed CVS Health Corporation and CaremarkRx, L.L.C. *See* Dkt. No. 63. In June 2018, Plaintiffs added two employer defendants, Time Warner, Inc. and Lowes Companies. All claims against the three employer defendants were dismissed and affirmed on appeal. *See* Dkt. No. 159 at 2 n.1.

[2] The claims now dismissed were brought under the Americans with Disabilities Act, 42 U.S.C. § 12182(a) (Count 2); Unruh Civil Rights Act, Cal. Civ. Code § 51(b) (Count 3); the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), (a)(3) (Counts 5–7); and for a "declaration of rights" (Count 8).

                                 3:18-CV-1031-EMC

After remand, Defendants reiterated that they intended to challenge the Amended Complaint because it "does not name any entity for which Plaintiffs sufficiently allege both responsibility for the allegedly discriminatory conduct and receipt of the necessary federal funding." Dkt. No. 159 at 2–3. Plaintiffs wished to amend their complaint to address these issues prior to any motion, so, the Parties agreed that Plaintiffs would file another amended complaint to specify "the identity of the defendants and the federal financial assistance they allegedly receive." *Id.* at 2. Plaintiffs thus filed their Second Amended Complaint on March 31, 2021. *See* Dkt. No. 162. The pleading adds as Defendants Garfield Beach CVS, L.L.C. and CaremarkPCS Health, L.L.C., in addition to the three existing Defendants: Caremark, L.L.C., CVS Pharmacy, Inc., and Caremark California Specialty Pharmacy, L.L.C.

On April 13, 2021, the Court stayed these proceedings pending a petition for certiorari to the Supreme Court from the Ninth Circuit's ruling. Dkt. No. 168; *see also* Dkt. No. 172 (extending stay after grant of certiorari). On November 12, 2021, the Supreme Court dismissed the petition by joint stipulation of the Parties. *See* Dkt. No. 177. On February 7, 2022, following a status conference, the Court adopted the Parties' agreed briefing schedule for this motion to dismiss. *See* Dkt. No. 182.

### FACTUAL BACKGROUND[3]

#### A. The Plaintiffs and Their Claims

According to the Second Amended Complaint, Plaintiffs are five individuals, proceeding anonymously, who take medicines that treat HIV/AIDS. SAC ¶¶ 9–13.[4] Plaintiffs received prescription drug coverage through health plans sponsored by their employers, who once were, but no longer are, defendants in this case.

Through this action, Plaintiffs seek to represent a nationwide class of certain purchasers of HIV/AIDS drugs. SAC ¶ 137. Plaintiffs say that their health plans' requirement that they

---

[3] Except as noted, this Motion recites the facts pled in the Second Amended Complaint, which must be taken as true for present purposes. Defendants dispute the allegations against them.

[4] Two of the Plaintiffs have passed away and the executors of their estates have substituted as plaintiffs. Defendants consented to the substitution as a procedural matter while preserving all defenses to the substituted plaintiffs' claims, including that the claims did not survive the named plaintiffs' deaths. *See* Dkt. No. 178 at 2.

obtain "specialty medicines" by mail through Caremark California Specialty Pharmacy, L.L.C., or by shipment to a CVS retail pharmacy, "results in a reduction in or elimination of health plans' drug benefits." *Id.* ¶ 69. If members fill their prescriptions at other pharmacies, they must pay "out-of-network" prices. *Id.* ¶¶ 1, 69. With a mail-order pharmacy, Plaintiffs claim, they miss out on the "advice and counseling" provided during "face-to-face interactions" with pharmacists at community pharmacies. *Id.* ¶ 71. The plans' requirements apply to all specialty medications, not just to those that treat HIV/AIDS. *See e.g.*, *id.* ¶¶ 44, 82.

### B. The Defendants

The Defendants are five direct or indirect subsidiaries of the non-party healthcare holding company CVS Health Corporation:[5] CVS Pharmacy, Inc.; Garfield Beach CVS, L.L.C., Caremark California Specialty Pharmacy, L.L.C.; Caremark, L.L.C.; and CaremarkPCS Health, L.L.C. SAC ¶¶ 14–17. These companies fall into two distinct groups: pharmacy benefit managers and pharmacies.

Caremark, L.L.C. and CaremarkPCS Health, L.L.C. are pharmacy benefit managers, or "PBMs." SAC ¶ 15.[6] A PBM contracts with health plans sponsored by employers, insurers, and government agencies to administer the prescription benefit offered under the client's health plan. *See* Geyerman Ex. A, CVS Health Corporation 10-K at Ex. 21.1, at 3; *see also* SAC ¶ 118 & n.72 (citing and quoting the 10-K).[7] Among other things, the PBM's services typically include assisting clients with designing their prescription benefit; developing a network of pharmacies available to the clients' members at preferential rates; "adjudicating" claims (i.e., determining if the member is a plan-enrollee, if the drug is covered, and what cost-sharing applies); and other

---

[5] The Court would lack personal jurisdiction over CVS Health Corporation. *See Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 984 (N.D. Cal. 2016).

[6] *See also* Order, Dkt. No. 143, at 25–27 (relying on the contracts with Plaintiffs' employers, by which CaremarkPCS Health, L.L.C. agrees to provide "prescription benefit management" services).

[7] "[A] district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998); *see also Dep't of Fair Emp. & Hous. v. Law Sch. Admission Council, Inc.*, 896 F. Supp. 2d 849, 853, 867 (N.D. Cal. 2012) (Chen, J.).

plan-administrative services.  A PBM is not a health plan or insurance company and does not itself provide prescription drug coverage to its clients' members.

The other three defendants operate pharmacies.  CVS Pharmacy, Inc. operates CVS retail pharmacy locations, directly and through subsidiaries, throughout the country.[8]  Garfield Beach CVS, L.L.C. is a direct subsidiary of CVS Pharmacy, Inc. that operates retail pharmacy locations (i.e., brick-and-mortar stores) in California.  SAC ¶ 17.  The retail pharmacy locations "sell[] prescription drugs and a wide assortment of health and wellness products and general merchandise."  Geyerman Ex. A, CVS Form 10-K (2020) at 5.  By contrast, Caremark California Specialty Pharmacy, L.L.C. is not a retail pharmacy but a specialty pharmacy, which handles "specialty medicines"—typically high-cost or high-touch medications for complex diseases.  It delivers through the mail prescriptions it fills for patients.  SAC ¶ 15.

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  When a defendant moves for dismissal for failure to state a claim pursuant to Rule 12(b)(6), "a court must take all allegations of fact as true and construe them in the light most favorable to the nonmoving party." *Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 852 (N.D. Cal. 2018) (Chen, J.).  "[C]onclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Id.* (quoting *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009)).  Well-pled factual allegations must enable the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked

---

[8] The SAC contains no factual allegations specific to CVS Pharmacy, Inc.'s operations, other than that it "is part of CVS Caremark's Pharmacy Services Segment and/or Retail/LTC Segment." SAC ¶ 135.  Nonetheless, the Court may take judicial notice of the fact that CVS Pharmacy, Inc. operates retail pharmacy stores.  *Kilby v. CVS Pharmacy, Inc.*, 2012 WL 1969284, at *1 (S.D. Cal. May 31, 2012) (finding that it is "not reasonably in dispute" that CVS Pharmacy, Inc., directly or indirectly, "operates approximately 850 retail pharmacy stores in California").  CVS Pharmacy, Inc. is not a PBM, but it is the indirect parent company of the two PBM Defendants discussed above.

assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (2d alternation in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

## ARGUMENT

Plaintiffs' Second Amended Complaint does not state a plausible claim against any of the five Defendants. It does not allege facts showing that the two PBM defendants—Caremark, L.L.C. ("Caremark") and CaremarkPCS Health, L.L.C. ("CaremarkPCS")—receive Federal financial assistance. And it does not plausibly allege that the pharmacy defendants—CVS Pharmacy, Inc. ("CVS Pharmacy"), Garfield Beach CVS, L.L.C. ("CVS Garfield"), and Caremark California Specialty Pharmacy, L.L.C. ("CSP")—are responsible for the allegedly discriminatory conduct.

## I.  THE SAC DOES NOT STATE A CLAIM AGAINST THE PBM DEFENDANTS.

The ACA's anti-discrimination provision reaches only those health programs or activities "receiving Federal financial assistance." 42 U.S.C. § 18116. Federal financial assistance includes "credits, subsidies, or contracts of insurance," and other direct forms of compensation, provided by HHS. 42 C.F.R. § 92.3(a). Unless an entity is "principally engaged in the business of providing healthcare," the ACA's requirements "shall apply to such entity's operations only to the extent *any such operation* receives Federal financial assistance." *Id.* § 92.3(b) (emphasis added).

Applying these rules, the ACA's anti-discrimination provision applies in one of two circumstances: (1) when the entity-defendant is principally engaged in the business of providing health care, if the entity receives Federal financial assistance in any respect, or (2) for a defendant *not* principally engaged in the business of providing healthcare, only when the entity's specific "operation" alleged to be discriminatory receives Federal financial assistance. Although Section 1557 does not define "the business of providing healthcare," "the overarching theme of [the case law] is that health care providers offer some form of treatment or direct assistance to individuals." *Drachman v. Bos. Sci. Corp.*, 258 F. Supp. 3d 207, 212 (D. Mass. 2017).

In the 167 paragraphs of the Second Amended Complaint, Plaintiffs nowhere allege that the PBM Defendants receive Federal financial assistance, whether generally or with respect to

their allegedly discriminatory operations. All that Plaintiffs allege as to Caremark is that it "is a pharmacy benefit manager ('PBM') that owns and exercises control over CSP," that it contracts with "[e]mployer plan sponsors" "as part of the arrangement to use specialty pharmacy services," and that it "is the entity responsible for establishing the Specialty Pharmacy Distribution Drug List (formulary)." SAC ¶¶ 15–16. As for CaremarkPCS, Plaintiffs allege nothing more than it "is a direct subsidiary of Defendant Caremark Rx, L.L.C." *Id.* ¶ 135.[9] There are no other allegations with respect to either PBM entity, much less allegations about their receipt of Federal financial assistance.

Rather than make allegations about Caremark or CaremarkPCS, the Second Amended Complaint alleges that "*CVS Health Corporation*, the parent company of the CVS Caremark defendants, is a health care entity that receives Federal financial assistance" "under the Medicare Part D program and other government programs." SAC ¶¶ 104, 121 (emphasis added). That allegation is irrelevant because CVS Health Corporation is not a defendant. To state a claim under the ACA, a plaintiff must allege that the named defendant—the "entity," in regulatory parlance—receives Federal financial assistance. 42 C.F.R. § 92.3(b). An "entity" is an "organization (such as a business or a governmental unit) that has a legal identity apart from its members or owners." *Entity*, Black's Law Dictionary (11th ed. 2019). Caremark and CaremarkPCS are the "entities" being sued, and Plaintiffs' burden was to allege facts demonstrating that they—and not a corporate affiliate not named as a defendant—receive Federal financial assistance. *See, e.g.*, *Vang v. State Farm Mut. Auto. Ins. Co.*, 2021 WL 5761002, at *12 (C.D. Ill. Dec. 3, 2021) (allegation that "a subsidiary of Defendant receives federal financial assistance" is insufficient to establish "Defendant receives federal assistance"); *see also Ahlstrom v. DHI Mortg. Co.*, 21 F.4th 631, 636 (9th Cir. 2021) ("Courts adhere to the fundamental principle that corporations, including parent companies and their subsidiaries, are treated as distinct entities."). Nor would any naked allegation that the named defendant is "inextricably intertwined" with another company which receives funds, without more, suffice to

---

[9] In point of fact, Caremark Rx, L.L.C. is *not* a defendant. *See* Dkt. No. 63 (dismissing Caremark Rx, L.L.C.).

state a claim. *See, e.g., Dunlap v. Ass'n of Bay Area Gov'ts*, 996 F. Supp. 962, 968 (N.D. Cal. 1998) ("[E]ntities that indirectly 'benefit' from federal aid, or that are 'inextricably intertwined' with actual recipients, are not on that basis covered.").

The Second Amended Complaint does not allege that Caremark and CaremarkPCS, two PBMs, are among the subsidiary entities of CVS Health Corporation that receive Federal financial assistance "under the Medicare Part D program and other government programs." SAC ¶ 121. Medicare Part D is a government-funded "prescription drug benefit program for seniors," through which "health insurance providers contract with [CMS] to offer Part D prescription drug plans ('PDPs') to Medicare beneficiaries." *Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1138 (9th Cir. 2010). Caremark and CaremarkPCS are not health insurance providers; they do not contract with CMS; and they do not sponsor PDPs for Medicare beneficiaries. The Second Amended Complaint does not allege otherwise. Although the Second Amended Complaint quotes extensively from CVS Health Corporation's Form 10-K, *see generally* SAC ¶¶ 118–121, that securities filing states that a CVS Health affiliate named "SilverScript Insurance Company" operates a "standalone Medicare Part D prescription drug plan." Geyerman Ex. A, CVS Form 10-K (2020) at 2, 8; *id.* at Ex. 21.1. SilverScript is not a defendant in this case.

As for the vague allegation about "other government programs," the Second Amended Complaint quotes CVS Health Corporation's securities filing, which explains that "[i]n select geographies, the Health Care Benefits segment [of CVS Health Corporation] offers Medicare Advantage plans, Medicare Supplement plans and prescription drug coverage for Medicare beneficiaries." SAC ¶ 121. But as Plaintiffs acknowledge in the complaint, because the two PBM Defendants provide "PBM services," they fall within CVS Health Corporation's "Pharmacy Services Segment," *id.* ¶ 130, not the "Health Care Benefits segment." The Health Care Benefits segment refers to the holding company's "health insurance products and related services." Geyerman Ex. A, CVS Health Corp. Form 10-K (2020) at 8. In short, there are no well-pled allegations that either PBM Defendant receives Federal financial assistance.[10]

---

[10] To be clear, Defendants do not concede that all entities within the "Health Care Benefits" segment receive Federal financial assistance.

Plaintiffs were required not only to allege that Caremark and CaremarkPCS receive Federal financial assistance, but also to identify which of each entity's specific "operations" receive such funding.  42 C.F.R. § 92.3(b).  That is because, as PBMs, neither entity is "principally engaged in the business of providing healthcare."  *Id.*; *see Drachman*, 258 F. Supp. 3d at 212 ("providing healthcare" means "offer[ing] some form of treatment or direct assistance to individuals").  The Second Amended Complaint does not claim otherwise.  And it does not specify any "operation" of Caremark or CaremarkPCS that receives Federal financial assistance.

Because the Second Amended Complaint does not allege that Caremark and CaremarkPCS receive Federal financial assistance, the Court should dismiss the ACA claims against those entities.

## II.     THE SAC DOES NOT STATE A CLAIM AGAINST THE PHARMACY DEFENDANTS.

The Court should dismiss the claims against CVS Pharmacy, Garfield CVS, and CSP because the Second Amended Complaint does not plausibly allege that they violated the anti-discrimination provisions of the ACA.

Plaintiffs' claim of discrimination hinges on the *design* of their employer-sponsored health plans.  *See* SAC ¶ 106 ("Section 1557 specifically delineates the design of plan benefits as a potentially discriminatory practice").  For this reason, the Second Amended Complaint alleges (vaguely and without differentiation) that "Defendants" designed a benefit-plan structure that requires beneficiaries to use a specialty pharmacy for all specialty medicines, "providing members with no realistic alternative or clear notice of their option not to do so, to the exclusion of their trusted community pharmacy and/or specialty pharmacist."  *Id.* ¶ 20.  Plaintiffs allege that this so-called "Program" is discriminatory because certain HIV/AIDS medications have been designated "as specialty medications" and are thus "subject to the mandatory requirements of the Program."  *Id.* ¶ 95.  In other words, by "requir[ing] all health plan enrollees to obtain specialty medications, including HIV/AIDS drugs, through [a] designated specialty pharmacy for those benefits to be considered 'in-network' . . . this program violates the anti-discrimination

- 9 -                                    DEFENDANTS' MOT. TO DISMISS
                                                    3:18-CV-1031-EMC

provisions of the Affordable Care Act." *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1207 (9th Cir. 2020).

Of course, pharmacies are not in the business of designing health plans, much less imposing restrictions on the benefits Plaintiffs' plan sponsors offer. Pharmacies dispense medicines, and the price they charge to a given customer may be dictated by the terms of a benefit plan, but designing those plan terms is not the pharmacy's function. Pharmacies, for example, do not manage the formularies of drugs available under a health plan or decide what drugs are "specialty medicines." Nor do pharmacies set the conditions for charging the member an in-network or an out-of-network price—those are all determined by the plan.[11] The Second Amended Complaint does not contain any well-pled allegation to the contrary.

Indeed, Plaintiffs' thesis is that "plan design offerings and administration" and "formulary management" are core services offered to health plans *by a PBM*, SAC ¶ 132, but (tellingly) there is no similar allegation claiming that these are functions of a *pharmacy*. Notably, the Second Amended Complaint relies extensively on CVS Health Corporation's Form 10-K, *see, e.g.*, *id*. ¶¶ 118–121; that document elaborates on what "PBM services" entail:

> *Plan Design Offerings and Administration*
> The Company administers pharmacy benefit plans for clients who contract with it to facilitate prescription drug coverage and claims processing for their eligible plan members. The Company assists its PBM clients in designing pharmacy benefit plans that help improve health outcomes while minimizing the costs to the client. The Company also assists PBM clients in monitoring the effectiveness of their plans through frequent, informal communications, the use of proprietary software, as well as through formal annual, quarterly and sometimes monthly performance reviews.
>
> The Company makes recommendations to help PBM clients design benefit plans that promote the use of lower cost, clinically appropriate drugs and helps its PBM clients control costs by

---

[11] *Compare, e.g.*, Cal. Health & Safety Code § 1385.001 (a PBM "means a person, business, or other entity that, pursuant to a contract with a health care service plan, manages the prescription drug coverage provided by the health care service plan"), *with* Cal. Bus. & Prof. Code § 4050(b) ("Pharmacy practice is a dynamic, patient-oriented health service that applies a scientific body of knowledge to improve and promote patient health by means of appropriate drug use, drug-related therapy, and communication for clinical and consultative purposes.").

> recommending plan designs that encourage the use of generic equivalents of brand name drugs when such equivalents are available. Clients also have the option, through plan design, to further lower their pharmacy benefit plan costs by setting different member payment levels for different products on their drug lists or "formularies," which helps guide members to choose lower cost alternatives through appropriate financial incentives.

Geyerman Ex. A, CVS Health Corp. Form 10-K (2020) at 3. Appreciating that assisting health plans with plan design, formulary management, and claim processing are the responsibility of PBMs, not pharmacies, Plaintiffs allege that PBM Defendant *Caremark*—and not any of the Pharmacy Defendants—is "the entity responsible for establishing the Specialty Pharmacy Distribution Drug List (formulary)," which makes "'HIV Medications' . . . subject to the mandatory requirements of the Program." SAC ¶¶ 16, 95.

The Second Amended Complaint alleges that "CSP and CVS Caremark exercise[] discretion in establishing drug formularies" and cites "CVS Caremark's" website as stating "[d]evelopment and management of drug formularies is an integral component in the pharmacy benefit management (PBM) services CVS Caremark provides." SAC ¶ 100 & n.71. To the extent Plaintiffs intend to allege that *CSP* establishes formularies and provides PBM services, the allegation is conclusory. Plaintiffs do not explain what CSP allegedly does in that regard. The allegation is also implausible: As Plaintiffs correctly alleged in the Amended Complaint, "CSP only delivers [] medications by mail order or mails them to a CVS Pharmacy as a drop shipment location purely for pickup." Amend. Compl., Dkt No. 75, ¶ 1. Pharmacies dispense medicines; PBMs manage formularies. *See* SAC ¶¶ 16, 95.

As the Ninth Circuit concluded, Plaintiffs "allege the structure and implementation of the Program discriminates against them on the basis of their disability by preventing HIV/AIDS patients from obtaining the same quality of pharmaceutical care that non-HIV/AIDS patients may obtain in filling non-specialty prescriptions, thereby denying them meaningful access to their prescription drug benefit." *Doe*, 982 F.3d at 1211. The Second Amended Complaint does not plausibly allege that CVS Pharmacy, Garfield CVS, or CSP are responsible for the structure or the implementation of the plan terms that allegedly discriminate against them.

**III. THE SAC'S UCL CLAIM FAILS BECAUSE THE ACA CLAIM FAILS.**

The Ninth Circuit reinstated Plaintiffs' claim for "unlawful" business practices under the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. C. §§ 17200–17210, solely because it reinstated the predicate claim under the ACA. *Doe*, 982 F.3d at 1214. Because Plaintiffs have not alleged a plausible ACA claim for the reasons described above, Plaintiffs' UCL claim fails as well. *See, e.g.*, *Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1028 (N.D. Cal. 2012) (dismissing UCL claim where plaintiff failed to state a claim for predicate violations).

## CONCLUSION

The Court should dismiss the Second Amended Complaint. Because Plaintiffs have already amended twice, including most recently to add additional defendants and assert their basis for claiming each received Federal financial assistance, this dismissal should be with prejudice.

Dated:  March 1, 2022

Respectfully submitted,

By:  */s/ Craig D. Singer*
Enu Mainigi (*Pro Hac Vice*)
Craig D. Singer (*Pro Hac Vice*)
Grant A. Geyerman (*Pro Hac Vice*)
Sarah O'Connor (*Pro Hac Vice*)
Benjamin W. Graham (*Pro Hac Vice*)
WILLIAMS & CONNOLLY LLP

John J. Atallah (Bar No. 294116)
FOLEY & LARDNER LLP

*Attorneys for CVS Pharmacy, Inc.; Caremark, L.L.C.; Caremark California Specialty Pharmacy, L.L.C.; CaremarkPCS Health, L.L.C.; and Garfield Beach CVS, L.L.C.*