**WHATLEY KALLAS, LLP**
Joe R. Whatley, Jr. (admitted *pro hac vice*)
jwhatley@whatleykallas.com
Edith M. Kallas (admitted *pro hac vice*)
ekallas@whatleykallas.com
Henry C. Quillen (admitted *pro hac vice*)
hquillen@whatleykallas.com
152 West 57th Street, 41st Floor
New York, NY 10019
Tel: (212) 447-7060
Fax: (800) 922-4851

Alan M. Mansfield (Of Counsel, SBN: 125998)
amansfield@whatleykallas.com
16870 W. Bernardo Dr., Suite 400
San Diego, CA 92127
Tel: (858) 674-6641
Fax: (855) 274-1888

**CONSUMER WATCHDOG**
Jerry Flanagan (SBN: 271272)
jerry@consumerwatchdog.org
Benjamin Powell (SBN: 311624)
ben@consumerwatchdog.org
Daniel L. Sternberg (SBN: 329799)
danny@consumerwatchdog.org
6330 San Vicente Blvd., Suite 250
Los Angeles, CA 90048
Tel: (310) 392-0522
Fax: (310) 392-8874

**Attorneys for Plaintiffs**
**[additional counsel appear on signature page]**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN DOE ONE; RICHARD ROE, in his capacity as executor for JOHN DOE TWO; JOHN DOE FOUR, in his personal capacity and as the authorized representative of JOHN DOE THREE; and JOHN DOE FIVE, on behalf of themselves and all others similarly situated and for the benefit of the general public,<br><br>        Plaintiffs,<br><br>        v.<br><br>CVS PHARMACY, INC.; CAREMARK, L.L.C.; CAREMARK CALIFORNIA SPECIALTY PHARMACY, L.L.C.; GARFIELD BEACH CVS, L.L.C.; CAREMARKPCS HEALTH, L.L.C.; and DOES 1–10, inclusive,<br><br>        Defendants. | Case No. 3:18-CV-1031-EMC<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Date: April 21, 2022<br>Time: 1:30 p.m. PT<br>Courtroom 5, 17th Floor<br>Judge: Hon. Edward M. Chen |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ii

STATEMENT OF ISSUES TO BE DECIDED .................................................................1

PRELIMINARY STATEMENT .........................................................................................1

FACTUAL BACKGROUND ..............................................................................................5

PROCEDURAL HISTORY .................................................................................................7

STANDARDS APPLICABLE TO THIS MOTION ...........................................................8

ARGUMENT .......................................................................................................................9

I.     Defendants' Newly Asserted Argument Challenging Whether Plaintiffs Sufficiently
       Alleged a "Health Program or Activity" Within the Meaning of the ACA Is
       Foreclosed by Both Fed. R. Civ. Proc. 12(g) and the Ninth Circuit's Earlier
       Decision in This Action. ................................................................................10

II.    Plaintiffs Have Sufficiently Alleged Receipt of Federal Financial Assistance,
       Making CVS Pharmacy, Inc. and the Other CVS Defendants Subject to Section
       1557 for the Discriminatory Conduct Alleged by Plaintiffs. .........................11

       A.     Plaintiffs Have Sufficiently Alleged CVS Pharmacy, Inc. Is Principally
              Engaged in the Business of Providing Healthcare and Is Responsible for
              Administering Plaintiffs' Pharmaceutical Care; in Any Event Defendants
              Cannot Raise This Argument Here. .....................................................12

       B.     Plaintiffs Sufficiently Allege That CVS Pharmacy, Inc.'s Relevant
              Operations Receive Federal Financial Assistance. ..............................13

III.   The SAC Also Sufficiently Alleges That the Plaintiffs' Pharmaceutical Care as
       Provided Through CVS Caremark's Pharmacy Services and Retail/LTC Segments
       Is a "Health Program or Activity" That "Is Receiving Federal Financial
       Assistance." ....................................................................................................15

       A.     The "Health Program or Activity" Allegations Are Sufficient. ...........15

       B.     The "Federal Financial Assistance" Allegations Are Sufficient. ........16

IV.    Defendants' Arguments Rely on an Unreasonably Restrictive Reading of Section
       1557 and Its Promulgated Regulations.  ........................................................16

V.     If the Court Identifies Any Infirmities in the Allegations of Federal Financial
       Assistance, It Should Grant Plaintiffs Leave to Amend. ................................18

CONCLUSION ..................................................................................................................19

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

**TABLE OF AUTHORITIES**

2

**Cases**

*A.B. by C.B. v. Haw. State Dep't of Educ.*,
   386 F. Supp. 3d 1352 (D. Haw. 2019) .................................................................. 15, 16

*Alexander v. Choate*,
   469 U.S. 287 (1985) ......................................................................................... 6, 7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................. 8

*Barden v. City of Sacramento*,
   292 F.3d 1073 (9th Cir. 2002) ................................................................... 3, 16, 17

*Callum v. CVS Health Corp.*,
   137 F. Supp. 3d 817 (D.S.C. 2015) ...................................................... 4, 5, 12, 15

*Campen v. Portland Adventist Med. Ctr.*,
   No. 16-cv-00792-YY, 2016 WL 5853736 (D. Or. Sept. 2, 2016),
   *report and recommendation adopted*, No. 16-cv-00792-YY, 2016 WL 5858670
   (D. Or. Oct. 5, 2016) ...................................................................................... 4, 13

*Crown Energy Servs., Inc. v. Zurich Am. Ins. Co.*,
   No. 19-cv-06334-EMC, 2021 WL 2207348 (N.D. Cal. June 1, 2021) .................. 18

*Doe v. CVS Pharmacy, Inc.*,
   982 F.3d 1204 (9th Cir. 2020) ................................................................... *passim*

*Fain v. Crouch*,
   545 F. Supp. 3d 338 (S.D.W. Va. 2021) .......................................... 2, 5, 9, 15

*Furgess v. Pa. Dep't of Corr.*,
   933 F.3d 285 (3d Cir. 2019) ............................................................................ 13

*In re Apple iPhone Antitrust Litig.*,
   846 F.3d 313 (9th Cir. 2017),
   *aff'd sub nom. Apple Inc. v. Pepper,* 139 S. Ct. 1514 (2019) ............................ 2

*ISE Entm't Corp. v. Longarzo*,
   No. 17-cv-9132-MWF-JCX, 2018 WL 5298692 (C.D. Cal. Apr. 16, 2018) ............. 10

*Kadel v. N.C. State Health Plan for Teachers & State Emps.*,
   12 F.4th 422 (4th Cir. 2021), *as amended* (Dec. 2, 2021),
   *cert. denied*, 142 S. Ct. 861 (2022) .................................................................. 2

*King v. Burwell*,
   576 U.S. 473 (2015) ......................................................................................... 16

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Lee v. City of Los Angeles*,
    250 F.3d 668 (9th Cir. 2001) ................................................................................. 8

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000) ............................................................................. 18

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
    519 F.3d 1025 (9th Cir. 2008) ............................................................................... 8

*Mead v. Holder*,
    766 F. Supp. 2d 16 (D.D.C. 2011) ......................................................................... 9

*Melton by & through Mosier v. Cal. Dep't of Dev. Servs.*,
    No. 20-cv-06613-YGR, 2021 WL 5161929 (N.D. Cal. Nov. 5, 2021) .............................. 4, 13

*Quinones v. UnitedHealth Grp. Inc.*,
    No. 14-cv-00497-LEK-RLP, 2015 WL 6159116 (D. Haw. Oct. 19, 2015) ........................ 17

*Religious Sisters of Mercy v. Azar*,
    513 F. Supp. 3d 1113 (D.N.D. 2021) ..................................................................... 9

*Reyes v. Garland*,
    11 F.4th 985 (9th Cir. 2021) ............................................................................... 10

*Romo v. Wells Fargo Bank, N.A.*,
    No. 15-cv-03708-EMC, 2016 WL 3523779 (N.D. Cal. June 28, 2016) ...................... 2, 9, 10

*Rumble v. Fairview Health Servs.*,
    No. 14-cv-2037 (SRN/FLN), 2015 WL 1197415 (D. Minn. Mar. 16, 2015) .................... 2, 3

*Schmitt v. Kaiser Found. Health Plan of Wash.*,
    965 F.3d 945 (9th Cir. 2020) ............................................................................... 13

*Schroeder v. City of Chicago*,
    927 F.2d 957 (7th Cir. 1991) ............................................................................... 13

*Sharer v. Oregon*,
    581 F.3d 1176 (9th Cir. 2009) ............................................................... 2, 13, 15, 16

*Smith v. Tobinworld*,
    No. 16-cv-01676-RS, 2016 WL 3519244 (N.D. Cal. June 28, 2016) .............................. 13

*Steshenko v. Albee*,
    70 F. Supp. 3d 1002 (N.D. Cal. 2014)

*T.S. by & through T.M.S. v. Heart of CarDon, LLC*,
    No. 20-cv-01699-TWP-TAB, 2021 WL 981337 (S.D. Ind. Mar. 16, 2021),
    *reconsideration denied, motion to certify appeal granted*, No. 20-cv-01699-TWP-MG,
    2021 WL 2946447 (S.D. Ind. July 14, 2021) ..................................................... 11, 13

*T.W. v. N.Y. State Bd. of L. Exam'rs*,
     996 F.3d 87 (2d Cir. 2021) .................................................................................. 17

*Vang v. State Farm Mut. Auto. Ins. Co.*,
     No. 20-cv-1260-JES-TSH, 2021 WL 5761002 (C.D. Ill. Dec. 3, 2021) .............................. 14

*Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Human Servs.*,
     485 F. Supp. 3d 1 (D.D.C. 2020), *appeal dismissed sub nom.*,
     No. 20-5331, 2021 WL 5537747 (D.C. Cir. Nov. 19, 2021) ...................................... 9

**Statutes**

5 U.S.C. § 5371 ...................................................................................................... 5
29 U.S.C. § 794(b) ................................................................................................ 17
42 U.S.C. § 300ff .................................................................................................... 6
42 U.S.C. § 18116(a) ...................................................................................... *passim*
Cal. Bus. & Prof. Code § 405(b) .......................................................................... 12

**Regulations**

45 C.F.R. § 92.3 ............................................................................................. *passim*
45 C.F.R. § 84.4(b)(2) ............................................................................................ 6
45 C.F.R. § 160.103 ............................................................................................. 15
80 Fed. Reg. 54172 (Sept. 8, 2015) .................................................................... 12
81 Fed. Reg. 31375 (May 18, 2016) ............................................................... *passim*
85 Fed. Reg. 37160 (June 19, 2020) .................................................... 9, 12, 14, 15

**Rules**

Fed. R. Civ. Proc. 12(b)(6) ............................................................................. 8, 10
Fed. R. Civ. Proc. 12(d) ......................................................................................... 8
Fed. R. Civ. Proc. 12(g) ....................................................................................... 10

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT
Case No.: 3:18-cv-1031-EMC

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether Plaintiffs have sufficiently alleged that "any part of" the health program or activity Defendants administer "is receiving federal financial assistance" where the Ninth Circuit Court of Appeals has already determined that Plaintiffs sufficiently allege exclusion, denial of benefits, and/or discrimination because of disability under a health program or activity in violation of Section 1557 of the Affordable Care Act ("ACA"). The Ninth Circuit's decision was based on the limitations imposed by CVS Pharmacy, Inc.; Caremark, L.L.C.; Caremark California Specialty Pharmacy, L.L.C.; CaremarkPCS Health, L.L.C.; and Garfield Beach CVS, L.L.C. (collectively, "CVS Caremark" or "Defendants") under their specialty medication program restricting Plaintiffs to mail order-only delivery of their HIV medications with no access to consultations from a pharmacist or other critical services.

2.      Whether Defendants' failure to raise whether Plaintiffs sufficiently alleged a "health program or activity" within the meaning of the ACA in their first Motion to Dismiss despite having the ability to do so forecloses their ability to assert this claim now.

3.      Whether Plaintiffs should be granted leave to amend if the Court finds additional details are needed.

**PRELIMINARY STATEMENT**

In *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1211–12 (9th Cir. 2020), the Ninth Circuit held that Plaintiffs sufficiently alleged that they are excluded from, denied the benefits of, and/or subjected to discrimination under CVS Caremark's health care prescription program, including providing "medically appropriate dispensing of their medications and access to necessary counseling," in violation of Section 1557. Section 1557 makes it illegal to discriminate against individuals based on, *inter alia*, their disability. Section 1557 expressly provides "an individual shall not * * * be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, *any part of which* is receiving Federal financial assistance," 42 U.S.C. § 18116(a) (emphasis added). Because the statute's prohibition extends to "'*any part*' of the health program or activity [that] receives Federal financial assistance," Section 1557 applies "even if *only part of* the health program or activity receives such assistance."

- 1 -

81 Fed. Reg. 31375, 31385–86 (May 18, 2016) (emphasis added); *see also Rumble v. Fairview Health Servs.*, No. 14-cv-2037 (SRN/FLN), 2015 WL 1197415, at *12 (D. Minn. Mar. 16, 2015) ("[A]s long as part of an organization or entity receives federal funding or subsidies of some sort, the entire organization is subject to the anti-discrimination requirements of Section 1557."). At bottom, Section 1557 "conditions a health program or activity's receipt of federal funds upon its consent to be subject to 'the enforcement mechanisms provided for and available under' the statutes listed in § 1557." *Kadel v. N.C. State Health Plan for Teachers & State Emps.*, 12 F.4th 422, 430 (4th Cir. 2021), *as amended* (Dec. 2, 2021), *cert. denied*, 142 S. Ct. 861 (2022).

Defendants assert Plaintiffs do not sufficiently allege that each of the Defendants are engaged in "any health program or activity" and that pharmaceutical care is not a "health program or activity" subjecting CVS Pharmacy, Inc. and its subsidiaries to liability under the ACA. They did not preserve the ability to do so, however, as they never raised this specific issue in their motion to dismiss the previous complaint, despite having the ability to do so. *See Romo v. Wells Fargo Bank, N.A.*, No. 15-cv-03708-EMC, 2016 WL 3523779, at *2 (N.D. Cal. June 28, 2016) (Chen, J.); *see also In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017*), aff'd sub nom. Apple Inc. v. Pepper,* 139 S. Ct. 1514 (2019) ("Rule 12(g)(2) provides that a defendant who fails to assert a failure-to-state-a-claim defense in a pre-answer Rule 12 motion cannot assert that defense in a later pre-answer motion under Rule 12(b)(6).").

While Defendants did not previously challenge whether dispensing prescription medications and providing pharmaceutical services is a "health program or activity" in their first Motion to Dismiss (Dkt. 87), it is undisputed that "[b]y extending" Section 1557's "nondiscrimination protections to individuals under '*any* health program or activity,' Congress intended to prohibit discrimination by *any entity* acting within the '*health' system*." *Fain v. Crouch*, 545 F. Supp. 3d 338, 342 (S.D.W. Va. 2021) (emphasis added). Such provisions are to be broadly construed "[t]o honor Congress' intent." *See Sharer v. Oregon*, 581 F.3d 1176, 1178 (9th Cir. 2009) (interpreting identical language in Section 504 of the Rehabilitation Act); *see also* 81 Fed. Reg. at 31385–86 (construing broadly Section 1557's term "health program or activity"); *Fain*, 545 F. Supp. 3d at 343 (same). Consistent with this Congressional intent, the term "health program or

- 2 -

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT
Case No.: 3:18-cv-1031-EMC

activity" has been interpreted to "encompass all of the operations of entities principally engaged in the business of providing healthcare that receive Federal financial assistance." 45 C.F.R. § 92.3(b).

Plaintiffs alleged that CVS Health Corporation has already admitted that CVS Pharmacy, Inc. is in receipt of federal financial assistance for its activities. *See* Second Amended Complaint ("SAC") ¶ 152; *see also* SAC ¶¶ 118–36. Defendants' Motion to Dismiss, however, attempts to narrowly interpret, if not rewrite, the text of Section 1557 by replacing the term "any health program or activity" with the more limited term "entity" or "named defendant." *See* CVS Mot. to Dismiss at 7–8. Section 1557 does not focus on the term "entity" but rather on "*any* health program or activity, *any part of which* is receiving Federal financial assistance." *Rumble*, 2015 WL 1197415 at *12. Defendants' restrictive interpretation of Section 1557 perverts the purpose of the statute. It also conflicts with Ninth Circuit precedent recognizing that a "program or activity" need not be an entity or a named defendant. *See Barden v. City of Sacramento*, 292 F.3d 1073, 1074 (9th Cir. 2002).

Thus, the only issue before the Court is whether "any part of" the "health program or activity," as alleged by Plaintiffs in paragraphs 104–36 and 152 of the SAC, "is receiving Federal financial assistance." 42 U.S.C. § 18116(a). The SAC includes detailed allegations on this point. Since Plaintiffs' pharmaceutical care is administered by Defendants through CVS Caremark's Pharmacy Services Segment and Retail/LTC (Long-Term Care) Segment and their corresponding subsidiaries, and Defendants receive federal financial assistance in part under at least three separate federal programs, this Court must deny Defendants' Motion to Dismiss for at least two reasons.[1]

*First*, Plaintiffs allege that CVS Pharmacy, Inc. is an entity principally engaged in the business of providing healthcare that receives significant amounts of federal financial assistance. SAC ¶¶ 1, 130–36, 152. All Defendants are thus subject to Section 1557 because all the operations of CVS Pharmacy, Inc., the parent company of the other defendants, constitute "a health program or activity, *any part of which* is receiving Federal financial assistance" under Section 1557. *See*

---

[1] These two Segments, "which are components of CVS Health Corporation's vertically integrated pharmacy-PBM model, include retail and mail-order pharmacies and PBM services. Under CVS Caremark's Pharmacy Services Segment and Retail/LTC Segment various aspects of pharmaceutical care critical to Class Members' health have been eliminated, including medically appropriate dispensing of their medications and access to necessary counseling." SAC ¶ 130.

*Callum v. CVS Health Corp.*, 137 F. Supp. 3d 817, 852 (D.S.C. 2015) (rejecting CVS Pharmacy, Inc.'s argument that it is not a "health program or activity" and denying its motion to dismiss a Section 1557 claim). Such allegations are sufficient to overcome Defendants' Motion. *See Melton by & through Mosier v. Cal. Dep't of Dev. Servs.*, No. 20-cv-06613-YGR, 2021 WL 5161929, at *13–14 (N.D. Cal. Nov. 5, 2021) (analyzing sufficiency of "receipt of federal financial assistance" allegations and denying motion to dismiss); *see also Campen v. Portland Adventist Med. Ctr.*, No. 16-cv-00792-YY, 2016 WL 5853736, at *4 (D. Or. Sept. 2, 2016), *report and recommendation adopted*, No. 16-cv-00792-YY, 2016 WL 5858670 (D. Or. Oct. 5, 2016) (similar result, collecting cases). Thus, when CVS Pharmacy, Inc. accepted funds through Medicare Part D and other federal health programs, such as the Medicaid 340B Program and the Ryan White HIV/AIDS Program, it was bound to comply with Section 1557 in "all of [its] operations," 45 C.F.R. § 92.3(b). SAC ¶¶ 118–36. This includes its subsidiaries—Defendants Caremark, L.L.C.; Caremark California Specialty Pharmacy, L.L.C.; CaremarkPCS Health, L.L.C.; and Garfield Beach CVS, L.L.C.—and the Pharmacy Services Segment and Retail/LTC Segment through which Defendants administer and control Plaintiffs' pharmaceutical care.

*Second*, the SAC at ¶¶ 130–36 alleges that Defendants' pharmaceutical care services as a whole constitute a "health program or activity, any part of which is receiving Federal financial assistance" under Section 1557. The pharmaceutical care services are provided by CVS Caremark's Pharmacy Services Segment and Retail/LTC Segment. CVS Caremark's Pharmacy Services Segment and Retail/LTC Segment—which all of the Defendants participate in the administration of—receive federal financial assistance through Medicare Part D, the Medicaid 340B Program, and the Ryan White HIV/AIDS Program. The Pharmacy Services Segment and Retail/LTC Segment include retail and mail-order pharmacies, as well as pharmacy benefit managers. Plaintiffs allege at ¶¶ 1, 105, 131–34 of the SAC that essential aspects of pharmaceutical care critical to their health provided by these Defendants have been eliminated, including medically appropriate dispensing of their HIV medications and access to necessary counseling. CVS Caremark's argument that the term "health program or activity" must be narrowly interpreted on an entity-by-entity basis finds no support in the text of Section 1557 and conflicts with relevant caselaw. Indeed, Defendants do not

cite to this Court a single decision that supports this novel interpretation of Section 1557. Congress intended to reach these types of "health-related services" when it outlawed discrimination under "any health program or activity." *Callum*, 137 F. Supp. 3d at 852; *see also Fain*, 545 F. Supp. 3d at 342. Thus, "if '*any part*' of the health program or activity receives Federal financial assistance," Section 1557 applies "even if *only part* of the health program or activity receives such assistance." 81 Fed. Reg. at 31386 (emphasis added). As each of the Defendants provide Plaintiffs with pharmaceutical services through this "health program or activity," each Defendant is jointly and severally liable for the discriminatory conduct at issue here.

## FACTUAL BACKGROUND

CVS Caremark administers Plaintiffs' prescription drug benefit through the employer-sponsored health plans in which Plaintiffs are or were enrolled. CVS Caremark has established a national network of pharmacies where consumers obtain their medications under the terms of their healthcare plans that accounts for the vast majority of its revenue. SAC ¶¶ 1–3. CVS Pharmacy, Inc. is the parent company of the other defendants and controls their actions as relevant to administering Plaintiffs' pharmaceutical care. *See id.* ¶ 135; *see also* CVS Mot. to Dismiss at 5 & n.8. Contrary to CVS Caremark's arguments (CVS Mot. to Dismiss at 1, 11), each of the Defendants participate in the running of CVS Caremark's Pharmacy Services Segment and Retail/LTC Segment and are responsible for the discriminatory conduct at issue here. SAC ¶¶ 105, 130. Specifically, Caremark California Specialty Pharmacy, L.L.C. and Caremark, L.L.C. distribute HIV medications solely by mail and fail to provide necessary pharmacy care that other, non-disabled members have access to. *See, e.g.*, *id.* ¶¶ 1, 15, 70, 79–80, 86. Caremark, L.L.C. and its subsidiary CaremarkPCS Health, L.L.C. developed the medication "formulary" list that causes HIV medication to be subject to Defendants' discriminatory pharmacy program. *Id.* ¶¶ 16, 95, 135. Garfield Beach CVS, L.L.C. owns and operates CVS retail pharmacies in California where Plaintiffs are deprived access to medications and pharmacy services available to other, non-disabled members. *Id.* ¶¶ 17, 136.

CVS Health Corporation, rather than make publicly available financial reporting for its subsidiaries, publishes consolidated financial reports broken down by its different "segments,"

stating the revenues and operating income for each. *See id.* ¶¶ 118, 119, 121–30, 134. The combined revenues of the Pharmacy Services and Retail/LTC Segments account for approximately 75% of CVS Health Corporation's total revenues. *See id.* ¶¶ 122, 128–29.

Plaintiffs allege that CVS Pharmacy, Inc.—the parent company of the other Defendants[2]— receives significant amounts of federal financial assistance through Medicare Part D, the Medicaid 340B Program, and the Ryan White HIV/AIDS Program; is an entity principally engaged in the business of providing healthcare; and is responsible for administering Plaintiffs' pharmaceutical care. *See* SAC ¶¶ 118–22, 124–127, 130–36, 152. Plaintiffs also allege that the operations of CVS Pharmacy, Inc. include the Pharmacy Services Segment and Retail/LTC Segment through which Defendants administer Plaintiffs' pharmaceutical care (*id.* ¶¶ 130–34) and that CVS Caremark's Pharmacy Services and Retail/LTC Segments receive federal financial assistance in the form of Medicare Part D, the Medicaid 340B Program, and the Ryan White HIV/AIDS Program. *Id.* ¶¶ 131–36. The Ryan White Comprehensive AIDS Resources Emergency Act, 42 U.S.C. §§ 300ff, *et seq.*, is a federal funding program designed to provide care and treatment to low-income people living with HIV/AIDS through grants to states and other public and private entities.

Plaintiffs allege that before CVS Caremark unilaterally made Plaintiffs' HIV medications subject to mail order through the "specialty medication program" (the "Program"), Plaintiffs could access the full range of pharmaceutical care services offered by CVS Caremark to other enrollees. *CVS Pharmacy, Inc.*, 982 F.3d at 1207–08. Plaintiffs could obtain their HIV medications from any participating in-network pharmacies and pharmacists, including from non-CVS pharmacies that employ pharmacists who are knowledgeable about their medical history, specialize in HIV medications, and "could make adjustments to their medication to avoid dangerous drug interactions or remedy potential side effects." *Id.* "[T]hese services, among others, are critical to HIV patients, who must maintain a consistent medication regimen to manage their chronic disease." *Id.* at 1207. Under the Program, however, Plaintiffs must now obtain HIV medications to treat their disability exclusively by mail order for those benefits to be considered "in-network" and forego essential

---

[2] Defendants concede that CVS Pharmacy, Inc. is the parent company of Caremark, L.L.C.; Caremark California Specialty Pharmacy, L.L.C.; CaremarkPCS Health, L.L.C.; and Garfield Beach CVS, L.L.C. *See* CVS Mot. to Dismiss at 5 & n.8.

services. Other individuals who do not have disabilities may still access the full range of pharmaceutical care services and may obtain their prescriptions from any in-network pharmacy, including non-CVS pharmacies. As a result, due to the way this pharmaceutical care is administered by Defendants, Plaintiffs are denied meaningful access to the benefits provided and that they rely on to sustain their lives. By reason of their disability, they thus have an unequal opportunity to utilize the pharmaceutical care services administered by Defendants for all plan enrollees. SAC ¶¶ 1–3, 69–80; *see also CVS Pharmacy, Inc.*, 982 F.3d 1204.[3]

## PROCEDURAL HISTORY

On February 16, 2018, Plaintiffs filed a complaint against Defendants CVS Health Corporation; CVS Pharmacy, Inc.; CaremarkRx, L.L.C.; Caremark, L.L.C.; Caremark California Specialty Pharmacy, L.L.C.; and Amtrak, alleging that their conduct administering Plaintiffs' pharmaceutical care violated Section 1557 and other federal statutes, as well as California's Unfair Competition Law ("UCL") and Unruh Civil Rights Act. Dkt. 1. At Defendants' request, Plaintiffs voluntarily dismissed CVS Health Corporation and CaremarkRx, L.L.C., *see* Dkt. 63, and subsequently amended their complaint adding Time Warner, Inc. and Lowes Companies as defendants and further allegations of discrimination and other unlawful conduct by Defendants. Dkt. 75.

In December 2018, this Court granted Defendants' motion to dismiss Plaintiffs' First Amended Complaint, concluding, *inter alia*, that Plaintiffs failed to adequately allege a claim under Section 1557 and California's UCL. Though Defendants asserted that Plaintiffs failed to adequately allege receipt of "Federal financial assistance," the Court did not address this issue. Moreover, Defendants' motion raised no issue with whether Plaintiffs sufficiently alleged a "health program or activity" within the meaning of the ACA. *See* Dkt. 87, 143.

On appeal, in December 2020 the Ninth Circuit concluded, consistent with the Supreme

---

[3] Meaningful access requires "any health program or activity, any part of which is receiving Federal financial assistance" to "afford [disabled persons] *equal opportunity* to obtain the same result" or "to gain the same benefit" as the non-disabled. 45 C.F.R. § 84.4(b)(2) (emphasis added). *See also Alexander v. Choate*, 469 U.S. 287, 304 (1985) (construing Section 504 to require "evenhanded treatment and the opportunity for handicapped individuals to participate in and benefit from programs receiving federal financial assistance"); *CVS Pharmacy, Inc.*, 982 F.3d at 1210–12 (same).

Court's opinion in *Alexander v. Choate*, 469 U.S. 287 (1985), that a violation of Section 504 of the Rehabilitation Act, as incorporated into Section 1557, may occur where a disabled person is denied meaningful access to a benefit to which they are entitled. *CVS Pharmacy, Inc.*, 982 F.3d at 1210–12. In doing so, the panel held that Plaintiffs sufficiently stated a disability discrimination claim under Section 1557 on allegations that "the structure and implementation of the Program" discriminates against Plaintiffs by preventing them "from obtaining the same quality of pharmaceutical care that non-HIV/AIDS patients may obtain in filling non-specialty prescriptions, thereby denying them meaningful access to their prescription drug benefit." *Id.* at 1211. The Ninth Circuit also clarified that "the nature of the benefit" Plaintiffs allege they are denied meaningful access to is "the prescription drug benefit as a whole[,]" and that it goes beyond mere plan design to encompass "medically appropriate dispensing of their medications and access to necessary counseling." *Id.* at 1210–11.

Following remand, in March 2021, Plaintiffs filed a Second Amended Complaint. Dkt. 162. Plaintiffs added allegations concerning CVS Caremark's receipt of federal financial assistance—the issue the Ninth Circuit ordered this Court to examine on remand—and named two additional CVS subsidiaries as defendants, describing their roles in the wrongdoing at issue. That same month, Defendants filed a Petition for Writ of Certiorari with the U.S. Supreme Court (Dkt. 168), which was granted on July 2, 2021. CVS Caremark subsequently dismissed their Writ of Certiorari in November 2021. Dkt. 177.

## STANDARDS APPLICABLE TO THIS MOTION

Under Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). To survive a motion to dismiss, a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Thus, a complaint need only "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

CVS Caremark cannot (as they try to do here) rebut Plaintiffs' allegations with their own factual assertions concerning the conduct of certain Defendants, or which CVS entities receive "federal financial assistance" based on CVS Health Corporation's Form 10-K, as such "factual challenges to [the] complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).[4]

In addition, where a party has filed a motion to dismiss on numerous grounds, it cannot file another motion to dismiss on a ground that could have been raised as part of the original motion, but was not. *See Romo*, 2016 WL 3523779, at *2 (Chen, J.) (rejecting defendant's newly asserted argument, and collecting similar cases).

**ARGUMENT**

Through the enactment of Section 1557, Congress sought to prevent healthcare discrimination by any health program, healthcare entity, or activity that receives federal funding. *See, e.g., Mead v. Holder*, 766 F. Supp. 2d 16, 19 (D.D.C. 2011) (explaining that the ACA was designed to remedy disparate access to health care rooted, in part, on discrimination based on wealth and preexisting conditions). Section 1557 prohibits discrimination "on the ground prohibited under" Section 504 of the Rehabilitation Act (disability) by "*any* health program or activity, *any part of which is receiving Federal financial assistance*, including credits, subsidies, or contracts of insurance," 42 U.S.C. § 18116(a) (emphasis added). "These prohibitions sweep broadly." *Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Human Servs.*, 485 F. Supp. 3d 1, 12 (D.D.C. 2020), *appeal dismissed sub nom.*, No. 20-5331, 2021 WL 5537747 (D.C. Cir. Nov. 19, 2021). Consistent with Congressional intent, the term "health program or activity" is to be interpreted broadly, "encompass[ing] *all of the operations of* entities principally engaged in the business of providing healthcare that receive Federal financial assistance." 45 C.F.R. § 92.3(b)

[4] Relatedly, Defendants assert that Plaintiffs must allege on a defendant-by-defendant basis receipt of federal financial assistance. Although this argument is contrary to the plain language of Section 1557, *see infra*, if the Court accepts CVS Caremark's contention that allegations of this nature are necessary at the motion to dismiss stage, discovery must be allowed on this issue, because such specific financial information at the CVS subsidiary level is not publicly available. *See* Declaration of Daniel L. Sternberg ("Sternberg Decl.") at ¶ 1. As Plaintiffs have not been "given a reasonable opportunity to present all the material that is pertinent" in response to the matters Defendants have presented outside the pleadings, Fed. R. Civ. Proc. 12(d), Defendants' factual allegations must be excluded by the Court. It is not proper at this stage of the proceeding for the court to summarily treat Defendants' Motion "as one for summary judgment under Rule 56." *Id.*

- 9 -

1   (emphasis added); *see also* 81 Fed. Reg. at 31385–86 (explaining that a narrow interpretation of

2   Section 1557 to "apply only to specific health program for which the entity receives Federal

3   financial assistance" conflicts with plain meaning of the statute).

4       The Department of Health and Human Services ("HHS") rulemaking implementing

5   Section 1557 adopted in 2016 ("2016 Rule"), 81 Fed. Reg. 31375, is relevant here despite

6   subsequent Section 1557 rulemaking cited by Defendants ("2020 Rule"), 85 Fed. Reg. 37160.[5]

7   **I.    Defendants' Newly Asserted Argument Challenging Whether Plaintiffs**
        **Sufficiently Alleged a "Health Program or Activity" Within the Meaning of**
8       **the ACA Is Foreclosed by Both Fed. R. Civ. Proc. 12(g) and the Ninth**
        **Circuit's Earlier Decision in This Action.**

9

10      As a threshold matter, the only argument that could be raised on remand is that Plaintiffs

11   did not adequately allege Defendants as a whole received "federal financial assistance." The Ninth

12   Circuit acknowledged in a footnote of its ruling that "CVS argues . . . [Plaintiffs] did not adequately

13   allege CVS's receipt of 'federal financial assistance,'" and directed the Court to "address this issue

14   on remand in the first instance." *CVS Pharmacy, Inc.*, 982 F.3d at 1212 n.2. Defendants did not

15   previously raise, however, whether Plaintiffs sufficiently alleged a "health program or activity"

16   within the meaning of the ACA and did not argue that the operative Complaint failed to allege that

17   Defendants were operating "a health program or activity" under the ACA. Thus, Defendants did

18   not preserve for argument before this Court the issue they raise now—whether the operative

19   Complaint sufficiently alleged that Defendants operate "any health program or activity, any part of

20   which is receiving Federal financial assistance." This argument cannot be presented in this Motion

---

[5] The 2020 Rule does not repeal or cast doubt on the provisions of the 2016 Rule interpreting the
federal financial assistance requirement under Section 1557. *See generally Religious Sisters of
Mercy v. Azar*, 513 F. Supp. 3d 1113, 1128–29 (D.N.D. 2021) (explaining that the main differences
between 2016 Rule and 2020 Rule are (i) elimination of blanket coverage of health insurers,
(ii) removing "prohibition on categorical gender-transition exclusions," and (iii) explicitly listing
"religious freedom and conscience provisions that would override application of Section 1557 in
some circumstances"). Thus, none of the issues that were the subject of the 2020 Rule are relevant
for purposes of this Motion. Moreover, the 2020 Rule also cannot be read to narrow unambiguous
statutory language contained within the statute, as Defendants request this Court do, as any such
narrowing would constitute an unlawful exercise of legislative power by an administrative agency.
*See generally Fain*, 545 F. Supp. 3d at 341 (declining to grant *Chevron* deference to the elimination
of blanket coverage of health insurers under the 2020 Rule). Finally, even if the 2020 Rule worked
a wholesale change in the scope of Section 1557, that would still not be dispositive of Plaintiffs'
claims, as there is no indication that the 2020 Rule would or should be retroactively applied, and
this case was filed two years before that Rule was amended. *See generally Reyes v. Garland*, 11
F.4th 985, 991 (9th Cir. 2021) (Agency rules "are construed to apply only prospectively (unless
Congress has expressly authorized it to promulgate a retroactively applicable rule).").

to Dismiss. *See Romo v. Wells Fargo Bank, N.A*., No. 15-cv-03708-EMC, 2016 WL 3523779, at *2 (N.D. Cal. June 28, 2016) (Chen, J.); *see also ISE Entm't Corp. v. Longarzo*, No. 17-cv-9132-MWF-JCX, 2018 WL 5298692, at *4 (C.D. Cal. Apr. 16, 2018) ("Courts commonly invoke Rule 12(g)(2) to reject new arguments raised in a motion to dismiss an amended complaint that could have been raised in a previous motion to dismiss a prior complaint but were not.").

Even if Defendants could make this argument, it has been foreclosed by the Ninth Circuit's decision in this action. Specifically, the Ninth Circuit concluded that Plaintiffs have already satisfied any requirement to plead conduct engaged in by Defendants as a whole that has caused Plaintiffs to "be excluded from participation in, be denied the benefits of, or be subjected to discrimination." *See CVS Pharmacy, Inc.*, 982 F.3d at 1207–08, 1210–12. Thus, the only remaining question before this Court, according to the Ninth Circuit, is the sufficiency of Plaintiffs' allegations relating to "CVS's receipt of 'federal financial assistance,'" as alleged in paragraphs 121, 123, 124, 128–36 of the SAC. Plaintiffs have cleared this final hurdle.

## II.   Plaintiffs Have Sufficiently Alleged Receipt of Federal Financial Assistance, Making CVS Pharmacy, Inc. and the Other CVS Defendants Subject to Section 1557 for the Discriminatory Conduct Alleged by Plaintiffs.

As a recipient of federal financial assistance through Medicare Part D, the Medicaid 340B Program, and the Ryan White HIV/AIDS Program, CVS Pharmacy, Inc. must comply with Section 1557 in "all of [its] operations," 45 C.F.R. § 92.3(b), as an entity "principally engaged in the business of providing healthcare" under the ACA. *Id.* The SAC at ¶¶ 118–36, 152 includes such detailed allegations. "[A]ll of the operations of" CVS Pharmacy, Inc. includes its subsidiaries, which as alleged in the SAC at ¶¶ 118–36 includes the other defendants, as well as the Pharmacy Services Segment and Retail/LTC Segment through which Defendants administer and control Plaintiffs' pharmaceutical care. Such application of HHS's regulations interpreting Section 1557 should be undisputed, as "'[a]ll operations' means 'all operations,' after all." *T.S. by & through T.M.S. v. Heart of CarDon, LLC*, No. 20-cv-01699-TWP-TAB, 2021 WL 981337, at *9 (S.D. Ind. Mar. 16, 2021), *reconsideration denied, motion to certify appeal granted*, No. 20-cv-01699-TWP-MG, 2021 WL 2946447 (S.D. Ind. July 14, 2021).

1

2

**A.   Plaintiffs Have Sufficiently Alleged CVS Pharmacy, Inc. Is Principally Engaged in the Business of Providing Healthcare and Is Responsible for Administering Plaintiffs' Pharmaceutical Care; in Any Event Defendants Cannot Raise This Argument Here.**

3

4

5

6

Defendants do not seriously contest that Plaintiffs have sufficiently alleged CVS Pharmacy, Inc. is an entity "principally engaged in the business of providing healthcare that receives Federal financial assistance" such that "all of its operations" are subject to Section 1557. 45 C.F.R. § 92.3(b); *see also* 42 U.S.C. § 18116(a). Rather, contradicting the allegations of the

7

8

9

10

11

12

SAC and going far beyond the limits of a motion to dismiss, Defendants assert in conclusory fashion that CVS Pharmacy, Inc.; Garfield Beach CVS, L.L.C.; and California Specialty Pharmacy, L.L.C. are not responsible for the discriminatory conduct Plaintiffs challenge and thus are not "entities principally engaged in the business of providing healthcare that receive Federal financial assistance." *See* CVS Mot. to Dismiss at 9–11. Notwithstanding that this argument was foreclosed

13

14

15

16

17

18

19

by the Ninth Circuit decision in this case, it has also already been rejected by other courts. In *Callum*, just as here, defendants CVS Pharmacy, Inc. and its subsidiary South Carolina CVS Pharmacy, L.L.C. moved to dismiss a Section 1557 claim, arguing they were not "a health program or activity" under the ACA. *Callum*, 137 F. Supp. 3d at 852.[6] Rejecting their argument that Section 1557's term "health program or activity" was limited to health insurance or medical care in a hospital or doctor's office, the court held that pharmacy services were a "health program or activity," and that as a result CVS Pharmacy, Inc. and its subsidiaries were subject to liability under the statute. *Id.* at 853.[7]

20

21

22

Thus, CVS Pharmacy, Inc. is subject to the nondiscrimination requirements of Section 1557 and both it and its subsidiaries are proper Defendants in this litigation. *See Callum*, 137 F. Supp. 3d at 848–49; *see also* SAC ¶ 152 (CVS Health Corporation explicitly acknowledges that its

23

24

25

[6] South Carolina CVS Pharmacy, L.L.C. is an entity that operates CVS retail pharmacies in that specific state, as is true for Defendant Garfield Beach CVS, L.L.C. here in California. *See Callum*, 137 F. Supp. 3d at 835–36; *see also* SAC ¶ 136; CVS Mot. to Dismiss at 5.

26

27

28

[7] Defendants' argument that the analysis in *Callum* is not persuasive should be rejected. It is of no consequence that *Callum* relied on language from the 2016 Rule "presuming 'retail pharmacies' qualify as entities covered by Section 1557," *see Callum*, 137 F. Supp. 3d at 853 (citing 80 Fed. Reg. 54172, 54185, 54215–16 (Sept. 8, 2015)), because the 2020 Rule adopted this same "presum[ption]"—that pharmacies are a "health program or activity" subject to Section 1557. *See* 85 Fed. Reg. 37160, 37210 (June 19, 2020) (discussing the administrative burden placed on pharmacies under *both* the 2016 and 2020 Rules).

subsidiary Defendant CVS Pharmacy, Inc. is subject to Section 1557); CVS Mot. to Dismiss at 5 & n.8 (conceding that the other defendants are subsidiaries of CVS Pharmacy, Inc.). The SAC sufficiently alleges that CVS Pharmacy, Inc. is principally engaged in the business of providing healthcare and is responsible for administering Plaintiffs' pharmaceutical care. Indeed, Defendants acknowledge that in general retail and mail-order pharmacies are, objectively, health-related services, and fall within the plain meaning of Section 1557's term "health program or activity." *See* CVS Mot. to Dismiss at 10, n.11 (quoting Cal. Bus. & Prof. Code § 405(b) (Pharmacies provide "patient-oriented health service . . . to improve and promote patient health by means of appropriate drug use, drug-related therapy, and communication for clinical and consultative purposes."); *see also id.* at 5, n.8. Plaintiffs have extensively alleged CVS Pharmacy, Inc.'s role providing health care services, identifying many examples of programs that CVS Pharmacy, Inc. offers that indicate it is principally engaged in providing health care services, and citing to numerous instances where the entity has characterized itself, its programs, and its subsidiary defendants as a health care service. *See* SAC ¶¶ 118–36. Plaintiffs' allegations here are sufficient to conclude for purposes of this Motion that Defendant CVS Pharmacy, Inc. and its subsidiary Defendants conduct a "health program or activity, any part of which is receiving Federal financial assistance." *See* 42 U.S.C. § 18116(a).

**B.    Plaintiffs Sufficiently Allege That CVS Pharmacy, Inc.'s Relevant Operations Receive Federal Financial Assistance.**

Based on the scope of the Ninth Circuit's ruling, to defeat this Motion to Dismiss it is sufficient for Plaintiffs to simply allege receipt of federal financial assistance by "any part of" the "health program or activity" conducted by Defendants. *See e.g.*, *Campen*, 2016 WL 5853736, at *4; *Melton by & through Mosier*, 2021 WL 5161929, at *13–14, *see also Smith v. Tobinworld*, No. 16-cv-01676-RS, 2016 WL 3519244, at * 4 (N.D. Cal. June 28, 2016) (denying motion to dismiss claim where plaintiff alleged "[u]pon information and belief" that defendant "receives substantial direct and indirect federal funding assistance") (alteration in original). The SAC's allegations on this point are much more detailed than in those matters. *See* SAC ¶¶ 121, 123, 124, 130–36 (alleging receipt of federal financial assistance in the form of Medicare Part D, the Medicaid 340B Program, and the Ryan White HIV/AIDS Program).

Plaintiffs sufficiently allege that the primary activities of CVS Pharmacy, Inc. are providing health care services, that they have received millions, if not billions, of dollars in furtherance of these activities, and therefore "all of [its] operations" must adhere to Section 1557. Plaintiffs allege that each of the other Defendants, and Plaintiffs' pharmaceutical care which they administer, are part of the "operations" of CVS Pharmacy, Inc., "any part of which is receiving Federal financial assistance." *See T.S. by & through T.M.S.*, 2021 WL 981337, at *9 (holding that ERISA benefit plan defendant was subject to Section 1557 as part of the "operations" of a separate entity, the ERISA plan sponsor defendant); *see also Sharer*, 581 F.3d at 1178; *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 289 (3d Cir. 2019) (interpreting Section 504's term "all of the operations of" to mean "'all-encompassing'" and characterizing as "'extremely broad in scope'"); *Schroeder v. City of Chicago*, 927 F.2d 957, 962 (7th Cir. 1991) (Posner, J.) (similar). This interpretation is consistent with the ACA's central statutory objective of expanding access to health care by eliminating various barriers to coverage, *see Schmitt v. Kaiser Found. Health Plan of Wash.*, 965 F.3d 945, 954–55 (9th Cir. 2020), and, therefore, Plaintiffs have alleged that CVS Caremark is properly subject to Section 1557.[8]

Had HHS interpreted Section 1557 to require a more limited meaning of the term "operations" it would have said as much. *See cf.* 85 Fed. Reg. at 37207–08 & n.267 (explaining Title IX's religious exemption carves out *specific subsets* of "operation[s] of an entity" otherwise subject to Section 1557). Defendants do not and cannot point to a similar exemption for the "operations" of CVS Pharmacy, Inc. Moreover, Plaintiffs' interpretation of Section 1557 "serves the central purposes of the ACA, and effectuates Congressional intent, by ensuring that entities principally engaged in health services . . . do not discriminate in any of their programs and activities, thereby enhancing access to services and coverage." 81 Fed. Reg. at 31386.

---

[8] Nothing in *Vang v. State Farm Mut. Auto. Ins. Co.*, No. 20-cv-1260-JES-TSH, 2021 WL 5761002 (C.D. Ill. Dec. 3, 2021) compels this Court to conclude otherwise. Defendants mischaracterize the holding in *Vang*, implying that the court established a blanket rule that allegations concerning the receipt of federal financial assistance by a subsidiary are insufficient to support a Section 1557 claim. *See* CVS Mot. to Dismiss at 7. That court, however, decided the limited issue of whether "Section 1557 of the ACA extends to automobile insurance," which it concluded, unsurprisingly, it does not. *Vang*, 2021 WL 5761002, at *13. Because the plaintiffs failed to allege discrimination "*occurred under* a "health program or activity," *id.* at *11 (emphasis added), allegations that State Farm's subsidiary received federal financial assistance for healthcare policies were not sufficient to state a claim. *Id.* at *12.

III.   **The SAC Also Sufficiently Alleges That the Plaintiffs' Pharmaceutical Care as Provided Through CVS Caremark's Pharmacy Services and Retail/LTC Segments Is a "Health Program or Activity" That "Is Receiving Federal Financial Assistance."**

Plaintiffs have also pled facts sufficient to allege CVS Caremark's Pharmacy Services Segment and Retail/LTC Segment are subject to Section 1557's prohibitions. These allegations provide the Court an independent alternative basis to deny Defendants' Motion.

A.   **The "Health Program or Activity" Allegations Are Sufficient.**

The SAC at ¶¶ 124, 128–33 alleges why Defendants' administration of Plaintiffs' pharmaceutical care is a "health program or activity" subject to Section 1557 that is carried out by CVS Caremark's Pharmacy Services Segment and Retail/LTC Segment. Through this "health program or activity," each of the Defendants plays an integral role in carrying out Plaintiffs' pharmaceutical care, making them jointly and severally responsible for the discriminatory conduct at issue here. The Pharmacy Services Segment and Retail/LTC Segment directly provide patient-care services. *See id.* In particular, the Pharmacy Services Segment "provides a full range of pharmacy benefit management solutions, including . . . mail order pharmacy, specialty pharmacy and infusion services, clinical services, [and] disease management services." *Id.* ¶ 132. Over two billion prescriptions are managed or filled, and millions of people are "serve[d] in its retail pharmacy locations." *Id.* ¶ 127. And the Retail/LTC Segment "sells prescription drugs [], provides health care services [], provides medical diagnostic testing, [and] administers vaccinations." *Id.*

These types of health-related services are exactly what Congress intended to reach when it outlawed discrimination under "*any* health program or activity." *Callum*, 137 F. Supp. 3d at 852. Being that tens of millions of Americans visit and interact with a pharmacy every day as part of the coverage they receive under their health insurance, to exclude pharmacies or pharmacy benefits from the definition of "any health program or activity" would eliminate one of the primary connections to the health care system people routinely interact with—and thus where they are most likely to experience discrimination. *See* 85 Fed. Reg. at 37172 (citing to 5 U.S.C. § 5371 and 45 C.F.R. § 160.103, which broadly define healthcare as direct patient-care services; services incident to direct patient-care services; and supplies related to the health of an individual, including the sale or dispensing of a drug, device, equipment, or other item in accordance with a prescription); *see*

*also* 81 Fed. Reg. at 31385–86 (a broad interpretation of "health program or activity" is appropriate in light of Section 1557's remedial purpose). "[A]s the gatekeeper" to Plaintiff's "health services," CVS Caremark's Pharmacy Services Segment and Retail/LTC Segment must necessarily "qualif[y] as a 'health program' that Congress intended to rid of discrimination." *Fain*, 545 F. Supp. 3d at 342.

### B. The "Federal Financial Assistance" Allegations Are Sufficient.

Because "[r]eceipt of 'federal financial assistance can be direct or indirect," *A.B. by C.B. v. Haw. State Dep't of Educ.*, 386 F. Supp. 3d 1352, 1355 (D. Haw. 2019) (quoting *Sharer*, 581 F.3d at 1181), Plaintiffs sufficiently allege the receipt of federal financial assistance by CVS Caremark's Pharmacy Services and Retail/LTC Segments. The SAC ¶¶ 130–36 alleges in detail how CVS Caremark's Pharmacy Services Segment and Retail/LTC Segment receive federal financial assistance in the form of Medicare Part D and other federal health programs. Specifically, "Pharmacy revenues represented approximately three-fourths of" the Retail/LTC Segments' revenues, and that revenue comes, in part, from Medicare Part D, the Medicaid 340B Program, and the Ryan White HIV/AIDS Program. *Id.* ¶ 134–136. Federal financial assistance also flows to the Pharmacy Services Segment in the form of payments under Medicare Part D. *Id.*

This is all that is required to assert a claim under the ACA. *See A.B. by C.B.*, 386 F. Supp. 3d at 1356 (denying motion to dismiss and rejecting argument that plaintiffs were required to allege that federal funds were "earmarked" for specific purposes of the defendant). Thus, "even if only part of the health program or activity receives such assistance," 81 Fed. Reg. at 31385–86, Section 1557's prohibition applies to CVS Caremark's Pharmacy Services and Retail/LTC Segments.

### IV. Defendants' Arguments Rely on an Unreasonably Restrictive Reading of Section 1557 and Its Promulgated Regulations.

In support of their argument that Plaintiffs' allegations concerning the interlocking structure of CVS Health Corporation, its subsidiaries, and the Pharmacy Services and Retail/LTC Segments are "irrelevant," CVS Caremark's attempt to rewrite the statutory term "health program or activity" contained within Section 1557 is improper. They cannot re-craft their own definition to equate these terms with the terms "entities" and "entity" found in 45 C.F.R. § 92.3. *See* CVS Mot. to Dismiss at 7–8.

CVS Caremark's argument that the term "health program or activity" must be narrowly interpreted as applying to a single "entity" finds no support in the text of Section 1557, and conflicts with relevant caselaw. Under CVS Caremark's contrary narrow interpretation, a corporate defendant could avoid liability under Section 1557 simply by dividing applicable health programs and activities across multiple subsidiary defendants, and then requiring plaintiffs to play "whack-a-mole" to figure out which subsidiaries conducted what services and which subsidiaries received what Federal financial assistance—at the pleadings stage. Such a reading would frustrate the broad remedial purpose of the ACA and Section 1557 to increase access to quality, affordable health care and to eradicate arbitrary barriers to such access, including discrimination. *See King v. Burwell*, 576 U.S. 473, 478 (2015). Moreover, it is well accepted under other anti-discrimination statutes that the "program or activity" at issue must be interpreted "broadly," *Sharer*, 581 F.3d at 1178. It also need not be an entity. *See Barden*, 292 F.3d at 1074, 1076 (finding that the program or activity challenged under Section 504 was city sidewalks); *see also Quinones v. UnitedHealth Grp. Inc.*, No. 14-cv-00497-LEK-RLP, 2015 WL 6159116, at *3 (D. Haw. Oct. 19, 2015) ("Section 504 prohibits entities *and* programs that receive federal funding from discriminating against individuals based on their disability status") (emphasis added). And because "program or activity" cannot be equated to "entity," neither must it be equated solely to a specific named defendant. *See Barden*, 292 F.3d at 1074, 1076.

Defendants' related argument that the term "entities" and "entity" found at 45 C.F.R. § 92.3 is similarly limited to mean only a named defendant is equally unavailing. *See T.W. v. N.Y. State Bd. of L. Exam'rs*, 996 F.3d 87, 89 (2d Cir. 2021) (finding that under Section 504, defendant is amendable to suit where non-party entity is the "program or activity" receiving Federal financial assistance). 45 C.F.R. § 92.3 provides, "As used in this part, 'health program or activity' encompasses *all of the operations of* entities principally engaged in the business of providing healthcare that receive Federal financial assistance." (emphasis added). While 45 C.F.R. § 92.3(b) discusses "health program or activity" in terms of how that phrase applies to "entities," it does so in an illustrative manner, not as a definition of "health program or activity." *See id.* (using the term "encompasses" to clarify what operations of an entity are potentially subject to Section 1557); *see*

- 17 -

*also, cf.* 29 U.S.C. § 794(b) (using the terms "defined" and "means" to construe the term "program or activity" under Section 504). In addition, 45 C.F.R. § 92.3(b) does not purport to restrict the terms "entities" or "entity" to apply only to a party that has been subjected to suit under Section 1557. Even if that was what the regulation attempted to do, such an interpretation would be inconsistent with the plain meaning of Section 1557.

CVS Caremark's reading of Section 1557 and relevant associated HHS regulations would also produce anomalous results. Just as CVS Caremark claims that no "entity" is subject to Section 1557 if one entity invents a discriminatory program, another entity implements it, and another entity receives federal financial assistance, any organization that receives federal financial assistance could exempt itself from Section 1557 by creating a subsidiary system where one subsidiary creates discriminatory policies but does not provide healthcare, another subsidiary provides healthcare and carries out the discriminatory policies but does not create them, and another subsidiary receives federal financial assistance. Such a regime (which is precisely how Defendants apparently claim to operate) would be inconsistent with the well-recognized broad scope of Section 1557, as well as Title VI of the Civil Rights Act of 1964, Title IX of the Education Amendments of 1972, the Age Discrimination Act of 1975, and Section 504 of the Rehabilitation Act, which all contain nearly identical language.

## V.      If the Court Identifies Any Infirmities in the Allegations of Federal Financial Assistance, It Should Grant Plaintiffs Leave to Amend.

Under Federal Rule of Civil Procedure 15, courts are to liberally grant leave to amend a Complaint to address any infirmities the Court may identify in the allegations. Thus, leave to amend should be granted "'unless it appears beyond doubt' that the amended pleading 'would also be dismissed for failure to state a claim.'" *Crown Energy Servs., Inc. v. Zurich Am. Ins. Co.*, No. 19-cv-06334-EMC, 2021 WL 2207348, at *5 (N.D. Cal. June 1, 2021) (Chen, J.) (quoting *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 188 (9th Cir. 1987)); *see also Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (same).

To be clear, it is Plaintiffs' position that no additional specificity is needed to plausibly allege receipt of federal financial assistance for all the reasons stated above, including that CVS Health Corporation has already admitted that CVS Pharmacy, Inc. is in receipt of federal financial

1   assistance. *See* SAC ¶ 152. However, if the Court believes more detail is required as to the

2   allegations of Federal financial assistance, Plaintiffs request leave to amend the Complaint after an

3   appropriate opportunity for discovery. For example, discovery would show which entities falling

4   under the CVS Health Corporation umbrella for pharmacy services receive Federal financial

5   assistance, since this information is not publicly reported on a subsidiary-by-subsidiary level. *See*

6   Sternberg Decl. ¶ 1.

7                                    **CONCLUSION**

8           The Court should deny Defendants' Motion to Dismiss the SAC or alternatively grant

9   Plaintiffs leave to amend the Complaint to address any infirmities the Court may identify after an

10  appropriate opportunity for discovery.

11  DATED: March 31, 2022                          **CONSUMER WATCHDOG**

12                                                 */s/ Jerry Flanagan*
                                                   Jerry Flanagan (SBN: 271272)
13                                                 jerry@consumerwatchdog.org
                                                   Benjamin Powell (SBN: 311624)
14                                                 ben@consumerwatchdog.org
                                                   Daniel L. Sternberg (SBN: 329799)
15                                                 danny@consumerwatchdog.org
                                                   6330 San Vicente Blvd., Suite 250
16                                                 Los Angeles, CA 90048
                                                   Tel: (310) 392-0522
17
                                                   **WHATLEY KALLAS, LLP**
18
                                                   */s/ Alan M. Mansfield*
19                                                 Alan M. Mansfield (SBN: 125998)
                                                   (Of Counsel)
20                                                 amansfield@whatleykallas.com
                                                   16970 W. Bernardo Dr., Suite 400
21                                                 San Diego, CA 92127
                                                   Tel.: (858) 674-6641
22                                                 Fax: (855) 274-1888

23                                                 Joe R. Whatley, Jr. (admitted *pro hac vice*)
                                                   jwhatley@whatleykallas.com
24                                                 Edith M. Kallas (admitted *pro hac vice*)
                                                   ekallas@whatleykallas.com
25                                                 Henry C. Quillen (admitted *pro hac vice*)
                                                   hquillen@whatleykallas.com
26                                                 152 West 57th Street, 41st Floor
                                                   New York, NY 10019
27                                                 Tel: (212) 447-7060
                                                   Fax: (800) 922-4851
28
                                                   *Attorneys for Plaintiffs*

1

**CERTIFICATE OF SERVICE**

2        I hereby certify that on March 31, 2022, I authorized the electronic filing of the foregoing

3    with the Clerk of the Court using the CM/ECF system which will send notification of such filing

4    to the email addresses denoted on the attached Electronic Mail Notice List.

5        I certify under penalty of perjury under the laws of the United States of America that the

6    foregoing is true and correct. Executed on March 31, 2022.

7

8                                              */s/ Jerry Flanagan*
                                              Jerry Flanagan (SBN: 271272)
9                                              jerry@consumerwatchdog.org
                                              Benjamin Powell (SBN: 311624)
10                                             ben@consumerwatchdog.org
                                              Daniel L. Sternberg (SBN: 329799)
11                                             danny@consumerwatchdog.org
                                              **CONSUMER WATCHDOG**
12                                             6330 San Vicente Blvd., Suite 250
                                              Los Angeles, CA 90048
13                                             Tel: (310) 392-0522

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT
Case No.: 3:18-cv-1031-EMC