Enu Mainigi (*Pro Hac Vice*)
Craig D. Singer (*Pro Hac Vice*)
Grant A. Geyerman (*Pro Hac Vice*)
Sarah O'Connor (*Pro Hac Vice*)
Benjamin W. Graham (*Pro Hac Vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

John J. Atallah (Bar No. 294116)
FOLEY & LARDNER LLP
555 South Flower Street, Ste. 3500
Los Angeles, CA 90071
Telephone: (213) 972-4500
Facsimile: (213) 486-0065

*Attorneys for CVS Pharmacy, Inc.; Caremark, L.L.C.;*
*Caremark California Specialty Pharmacy, L.L.C.;*
*Garfield Beach CVS, L.L.C.; and CaremarkPCS Health, L.L.C.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| JOHN DOE ONE; RICHARD ROE in his capacity as executor for JOHN DOE TWO; JOHN DOE FOUR, in his personal capacity and as the authorized representative of JOHN DOE THREE; and JOHN DOE FIVE; on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CVS PHARMACY, INC.; CAREMARK, L.L.C.; CAREMARK CALIFORNIA SPECIALTY PHARMACY, L.L.C.; GARFIELD BEACH CVS, L.L.C.; CAREMARKPCS HEALTH, L.L.C.; and DOES 1–10, inclusive,<br><br>Defendants. | No. 3:18-cv-1031-EMC<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT (ECF NO. 162) BY CVS PHARMACY INC., CAREMARK, L.L.C., CAREMARK CALIFORNIA SPECIALTY PHARMACY, L.L.C., GARFIELD BEACH CVS, L.L.C., AND CAREMARKPCS HEALTH, L.L.C.**<br><br>Date: May 5, 2022<br>Time: 1:30 p.m. PT<br>Courtroom 5, 17th Floor<br>Judge: Hon. Edward M. Chen |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................ ii

INTRODUCTION ..........................................................................................................................1

I. DEFENDANTS HAVE NOT WAIVED THEIR ARGUMENTS. .....................................1

II. A SECTION 1557 CLAIM MUST BE PLAUSIBLY ALLEGED AGAINST EACH DEFENDANT INDIVIDUALLY TO SURVIVE A MOTION TO DISMISS. ............................................................................................................................3

III. THE SAC DOES NOT STATE A CLAIM AGAINST THE PBM DEFENDANTS. ....................................................................................................................7

IV. THE SAC DOES NOT STATE A CLAIM AGAINST THE PHARMACY DEFENDANTS. ....................................................................................................................8

V. DISMISSAL SHOULD BE WITH PREJUDICE ................................................................9

CONCLUSION ...........................................................................................................................10

# TABLE OF AUTHORITIES

Cases

*Barden v. City of Sacramento*,
   292 F.3d 1073 (9th Cir. 2002) .................................................................................................6

*Burks v. Lasker*,
   441 U.S. 471 (1979) ..................................................................................................................3

*Callum v. CVS Health Corp.*,
   137 F. Supp. 3d 817 (D.S.C. 2015) ..........................................................................................7

*Dole Food Co. v. Patrickson*,
   538 U.S. 468 (2003) ..................................................................................................................3

*Fain v. Crouch*,
   545 F. Supp. 3d 338 (S.D.W. Va. 2021) ...................................................................................5

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
   540 F.3d 1049 (9th Cir. 2008) .................................................................................................9

*Rumble v. Fairview Health Servs.*,
   2015 WL 1197415 (D. Minn. Mar. 16, 2015) .........................................................................5

*Sharer v. Oregon*,
   581 F.3d 1176 (9th Cir. 2009) .................................................................................................6

*T.S. by & through T.M.S. v. Heart of CarDon, LLC*,
   2021 WL 981337 (S.D. Ind. Mar. 16, 2021) ........................................................................6, 7

*United States v. Bestfoods*,
   524 U.S. 51 (1998) ....................................................................................................................3

*Vang v. State Farm Mut. Auto. Ins. Co.*,
   2021 WL 5761002 (C.D. Ill. Dec. 3, 2021) ..............................................................................4


Statutes and Rules

45 C.F.R. § 92.3 ...........................................................................................................................2, 4

42 U.S.C. § 18116 .........................................................................................................................2, 4

**INTRODUCTION**

Unable to rebut Defendants' arguments for dismissal, Plaintiffs' Opposition first asserts those arguments are waived, even though the Ninth Circuit specifically said otherwise. The Opposition then fails to address Defendants' arguments, based on the misguided assertion that all CVS-affiliated entities should be treated as one for purposes of Section 1557. The Second Amended Complaint should be dismissed with prejudice.

1.  Defendants have not waived the argument that the Second Amended Complaint does not plausibly allege that any entity both receives Federal financial assistance and is responsible for the allegedly discriminatory conduct. That is precisely the argument Defendants raised in their original motion to dismiss, that the Ninth Circuit said should be addressed on remand, and that the parties and the Court determined should be briefed. *See* Joint Status Report, ECF No. 177 at 2; Order, ECF No. 182 (accepting briefing schedule).

2.  Plaintiffs' lone argument on the merits is that Section 1557's antidiscrimination provisions apply to companies that receive no Federal financial assistance, as long as they have a parent company that receives Federal financial assistance. That is wrong; it violates hornbook principles of corporate separateness. And that legal error is enough reason to grant the motion to dismiss in its entirety, since the Opposition does not contest (i) that the two PBM Defendants do not receive Federal financial assistance or (ii) that the three Pharmacy Defendants did not create the allegedly discriminatory design of Plaintiffs' employers' healthcare benefit plans.

**I.   DEFENDANTS HAVE NOT WAIVED THEIR ARGUMENTS.**

Plaintiffs' argument that Defendants "did not preserve" the arguments in this motion could not be more wrong. This entire round of motion briefing occurred because the Ninth Circuit directed that this Court address the Federal financial assistance issue on remand. *See* Opinion, ECF No. 152 at 16 n.2. On remand, Plaintiffs specifically asked for an opportunity to amend their complaint, and the parties then agreed to a briefing schedule, to address Defendants' argument that the complaint "does not name any entity for which Plaintiffs sufficiently allege both responsibility for the allegedly discriminatory conduct and receipt of the necessary federal

1 funding." Joint Status Report, ECF No. 159 at 2.  That is precisely what Defendants have argued

2 in this motion.

3       Plaintiffs' waiver argument focuses on the question whether each of the Defendant-

4 entities is engaged in a "health program or activity."  That question is inextricably intertwined

5 with whether that entity receives "Federal financial assistance."  Under Section 1557 of the

6 ACA, the recipient of "Federal financial assistance" must be a "health program or activity."  42

7 U.S.C. § 18116(a).  As the implementing regulations explain, this requires an understanding of

8 the entity that receives the federal funding and (for some entities) which of its particular

9 operations receives that funding:

> As used in this part, "health program or activity" encompasses all of the operations of entities principally engaged in the business of providing healthcare that receive Federal financial assistance as described in paragraph (a)(1) of this section. For any entity not principally engaged in the business of providing healthcare, the requirements applicable to a "health program or activity" under this part shall apply to such entity's operations only to the extent any such operation receives Federal financial assistance as described in paragraph (a)(1) of this section.

15 45 C.F.R. § 92.3(b).

16       Defendants' original motion to dismiss framed the issue in those very terms: "The

17 amended complaint does not properly allege *a health program or activity* that receives Federal

18 financial assistance."  Mot. to Dismiss, ECF No. 87 at 12 (emphasis added).  That is the issue

19 this Court did not reach, and which the Ninth Circuit instructed that "[t]he district court should

20 address . . . on remand in the first instance."  Opinion, ECF No. 152 at 16 n.2.  And that is the

21 issue Plaintiffs attempted to amend their Complaint to address before Defendants moved to

22 dismiss their supposedly-improved allegations.  *See* Joint Status Report, ECF No. 159 at 2.  The

23 issue on this motion is properly before the Court.[1]

---

[1] Two of the five Defendants—CaremarkPCS Health, L.L.C. and Garfield Beach CVS, L.L.C.—were only named in the Second Amended Complaint and have not filed any motion under Rule 12.  For this additional reason, these two Defendants could not have waived any argument.

## II. A SECTION 1557 CLAIM MUST BE PLAUSIBLY ALLEGED AGAINST EACH DEFENDANT INDIVIDUALLY TO SURVIVE A MOTION TO DISMISS.

Plaintiffs' argument on the merits comes down to a simple proposition, which is wrong: "All Defendants are . . . subject to Section 1557 because all the operations of CVS Pharmacy, Inc., the parent company of the other defendants, constitute 'a health program or activity, any part of which is receiving Federal financial assistance' under Section 1557." Opp'n 3. In essence, Plaintiffs argue that Section 1557 nullifies well-settled distinctions among separate legal entities, so that a corporate entity that *receives no Federal financial assistance* is subject to liability under Section 1557 whenever any of its direct or indirect parent entities receives Federal financial assistance. That argument finds no support in Section 1557 or its implementing regulations, and it contradicts fundamental principles of corporate separateness.

"A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003). Thus, the "'fact that there exists a parent-subsidiary relationship between two corporations'" does not "'make the one liable for the torts of its affiliate.'" *United States v. Bestfoods*, 524 U.S. 51, 61, 3 (1998) (quoting 1 W. Fletcher, Cyclopedia of Law of Private Corporations § 33 (1990)). Nothing about Section 1557 changes these basic propositions of law. The Supreme Court has long admonished that "the entire corpus of state corporation law" will not be replaced by a "congressional enactment . . . simply because a plaintiff's cause of action is based upon a federal statute." *Burks v. Lasker*, 441 U.S. 471, 478 (1979).

Plaintiffs offer no substantive response to the principle of corporate separateness, which Defendants cited in their opening brief. *See* Mem. 7 (citing *Ahlstrom v. DHI Mortg. Co.*, 21 F.4th 631, 636 (9th Cir. 2021), for the proposition that "Courts adhere to the fundamental principle that corporations, including parent companies and their subsidiaries, are treated as distinct entities."). Yet Plaintiffs appear to argue that every direct or indirect subsidiary of CVS Pharmacy, Inc. constitutes an "operation" of CVS Pharmacy, Inc. for purposes of Section 1557. *See* Opp'n 11. That argument distorts the plain meaning. "Operations" are functions that an entity performs; entities themselves are not "operations." That is clear from the implementing

1    regulation: "As used in this part, 'health program or activity' encompasses all of the ***operations***
2    ***of entities*** principally engaged in the business of providing healthcare that receive Federal
3    financial assistance."  45 C.F.R. § 92.3(b) (emphasis added).

4        Plaintiffs suggest that Section 92.3's text is "illustrative" rather than definitional, and that
5    it "does not purport to restrict the terms 'entities' or 'entity' to apply only to the party that has
6    been subjected to suit under Section 1557."  Opp'n 17–18.  If Plaintiffs mean to suggest that the
7    entity that is sued need not be the entity that receives federal funding, that argument is
8    insupportable.  Under Section 1557, a threshold question is whether the defendant receives
9    Federal financial assistance.  As Plaintiffs themselves observe, "Section 1557 'conditions a
10   health program or activity's receipt of federal funds upon its consent to be subject to the
11   enforcement mechanisms provided for and available under the statutes listed in § 1557.'"  Opp'n
12   2 (quoting *Kadel v. N.C. State Health Plan for Teachers & State Emps.*, 12 F.4th 422, 430 (4th
13   Cir. 2021)).  If an entity does not accept Federal financial assistance, then Section 1557 does not
14   apply to that entity.

15       Defendants are unaware of any Section 1557 case in which the court ignored corporate
16   separateness and found a defendant-company could be liable under the statute despite that
17   specific company's lack of federal funding.  There is authority to the contrary:  In *Vang v. State*
18   *Farm Mut. Auto. Ins. Co.*, 2021 WL 5761002, at *12 (C.D. Ill. Dec. 3, 2021), the court held that
19   the allegation that "a subsidiary of Defendant receives federal financial assistance" was
20   insufficient to establish "Defendant receives federal assistance."  Mem. 7.  The Opposition
21   responds that the *Vang* plaintiffs "failed to allege discrimination '*occurred under*'" a health
22   program or activity.  Opp'n 11 n.8 (emphasis in original; quoting *Vang*, 2021 WL 5761002, at
23   *11).  But *Vang* was not giving any particular emphasis to the phrase "occurred under," and it is
24   unclear why that language would undermine Defendants' application of *Vang*.  Section 1557
25   provides that an individual "shall not . . . be subjected to discrimination under[] any health
26   program or activity[.]"  42 U.S.C. § 18116(a).  The regulation then explains that "health program
27   or activity" encompasses the "operations of entities . . . that receive Federal financial assistance."
28   45 C.F.R. § 92.3(b).  In other words, if a defendant does not receive Federal financial assistance,

a plaintiff cannot allege there was actionable discrimination by that defendant under a health program or activity.

None of the cases the Opposition cites supports Plaintiffs' position. *First*, Plaintiffs cite *Rumble v. Fairview Health Servs.*, 2015 WL 1197415, at *12 (D. Minn. Mar. 16, 2015), for the proposition that "[a]s long as part of an organization or entity receives federal funding or subsidies of some sort, the entire organization is subject to the anti-discrimination requirements of Section 1557." Opp'n 2. *Rumble* does not support Plaintiffs because the "organization" in *Rumble* was one company—Emergency Physicians, P.A.—not multiple related corporate entities. Emergency Physicians, P.A. operated a health program or activity and "receiv[ed] federal and state financial assistance such as credits, subsidies, or contracts of insurance." 2015 WL 1197415 at *13. Accordingly, nothing about *Rumble* suggests that Section 1557 should extend to any company other than the defendant that received Federal financial assistance.

*Second*, Plaintiffs cite *Fain v. Crouch*, 545 F. Supp. 3d 338 (S.D.W. Va. 2021), for the proposition that "'[b]y extending Section 1557's nondiscrimination protections to individuals under any health program or activity, Congress intended to prohibit discrimination by *any entity* acting within the *health system*.'" Opp'n 2 (emphasis in original; quoting *Fain*, 545 F. Supp. 3d at 342 (internal quotation marks omitted)). Again, *Fain* was about a single company that received federal funding, not affiliated entities that did not. "[T]he precise question before the Court" in *Fain* was "whether Section 1557 prohibits The Health Plan, a health insurance issuer that accepts federal financial assistance for its Medicare Advantage program, from discriminating against Plaintiffs under its HMO plan." *Id.* at 341. Because The Health Plan was principally engaged in the business of providing healthcare, the court found, it was subject to Section 1557's non-discrimination requirements for both its Medicare Advantage program (which received federal financial assistance) and its HMO plan (which did not). *Id.* at 342. Notably, the defendant in that case—The Health Plan—was a distinct company, "established in 1979 through provisions under the federal [HMO Act]" and was "a federally qualified and state-certified 501(c)(4) not-for-profit HMO." Complaint, *Fain v. Crouch*, Case No. 3:20-cv-740, ECF No. 1 para. 15 (S.D.W.V. 2020).

*Third*, Plaintiffs cite *Sharer v. Oregon*, 581 F.3d 1176 (9th Cir. 2009), for the proposition that the term "program or activity," which appeared in Section 504 of the Rehabilitation Act, is "to be broadly construed '[t]o honor Congress' intent.'"  Opp'n 2.  But *Sharer* actually shows that the relevant inquiry should focus on the legal entity named as the defendant:  "Whether a ***particular state entity*** is a program or activity receiving federal financial assistance within the meaning of section 504, though itself 'a question of federal law[,] . . . can be answered only after considering the provisions of state law that define the agency's character.'"  *Id.* at 1178 (quoting *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 n.5 (1997) (emphasis added)).  On that reasoning, the legal separateness of each defendant-corporation matters to whether it receives Federal financial assistance under Section 1557.

*Fourth*, Plaintiffs cite *Barden v. City of Sacramento*, 292 F.3d 1073 (9th Cir. 2002), for the proposition that "a 'program or activity' need not be an entity or a named defendant," such that Section 1557 allegedly reaches all aspects of all subsidiaries of the non-party holding company CVS Health Corporation.  Opp'n 3.  Neither *Barden* nor any other authority sweeps so broadly.  In *Barden*, the Ninth Circuit was deciding "whether public sidewalks in the City of Sacramento are a service, program, or activity of the City within the meaning of Title II of the Americans with Disabilities Act[.]"  292 F.3d at 1074.  The case thus has no application to Section 1557.  But even if it did, the defendant there was the City of Sacramento, not a sidewalk affiliate.  That legal entity, and no other, was allegedly responsible for the sidewalks.  In contrast, each of the Defendants here is a separate legal entity.

*Fifth*, Plaintiffs cite *T.S. by & through T.M.S. v. Heart of CarDon, LLC*, 2021 WL 981337 (S.D. Ind. Mar. 16, 2021), for the proposition that "'[a]ll operations' means 'all operations,'" suggesting that every subsidiary of CVS Pharmacy, Inc. is an "operation" of that entity.  Opp'n 11.  The case says nothing of the kind.  Rather, the court held that (i) the defendant entity, Heart of CarDon, LLC, was subject to Section 504 of the Rehabilitation Act and (ii) that "[t]his, of course, included implementation of the [plaintiff's health benefit plan], which, according to [the plaintiff], 'is designed, funded and controlled entirely by CarDon.'"  2021 WL

1   981337 at *9.  *CarDon* does not suggest that a plaintiff may sue a company that does not receive

2   Federal financial assistance.

3     *Finally*, Plaintiffs cite *Callum v. CVS Health Corp.*, 137 F. Supp. 3d 817, 852 (D.S.C.

4   2015), for the proposition that CVS Pharmacy, Inc. is a "health program or activity" within the

5   meaning of Section 1557.  Opp'n 4.  That is beside the point.  Defendants are not arguing this

6   case should be dismissed because CVS Pharmacy, Inc. is not a health program or activity, or that

7   CVS Pharmacy, Inc. is not within the reach of Section 1557.  *Callum* does not hold that CVS

8   Pharmacy, Inc.'s subsidiaries are not separate legal entities.  To the contrary, the question in that

9   case was whether "the anti-discrimination mandate of Section 1557 applies to health care

10  activities, [and] not just [to] health insurance."  *Id.* at 848.  That question is irrelevant here.

11         \*  \*  \*

12    The Court should thus reject Plaintiff's only substantive response to Defendants' motion

13  and conclude that the Second Amended Complaint must plausibly allege a Section 1557 claim

14  against each Defendant company individually to state a claim against that Defendant.

15  **III.   THE SAC DOES NOT STATE A CLAIM AGAINST THE PBM DEFENDANTS.**

16    Defendants' Memorandum argued "the Court should dismiss the Second Amended

17  Complaint as against Caremark, L.L.C. and CaremarkPCS Health, L.L.C. because "Plaintiffs

18  nowhere allege that the PBM Defendants receive Federal financial assistance, whether generally

19  or with respect to their allegedly discriminatory operations."  Mem. 6–7.  Plaintiffs never address

20  this argument other than by claiming that CVS Pharmacy, Inc.'s receipt of Federal financial

21  assistance applies to all of its subsidiaries.  Through their silence, Plaintiffs thus concede that the

22  Second Amended Complaint does not allege that the PBM Defendants themselves receive

23  Federal financial assistance.  Accordingly, if the Court agrees with Defendants that Plaintiffs

24  must allege the Federal financial assistance element against each Defendant individually, then

25  the claims against the PBM Defendants must be dismissed.

## IV. THE SAC DOES NOT STATE A CLAIM AGAINST THE PHARMACY DEFENDANTS.

Defendants' Memorandum explained that the Second Amended Complaint "does not plausibly allege that [the three Pharmacy Defendants—CVS Pharmacy, Inc., Garfield Beach CVS, L.L.C.; and California Specialty Pharmacy, L.L.C.—]violated the anti-discrimination provisions of the ACA" because "Plaintiffs' claim of discrimination hinges on the *design* of their employer-sponsored health plans," which the Pharmacy Defendants do not do.  Mem. 9.

Plaintiffs do not respond to this argument either.  Instead, the Opposition incorrectly states that Defendants "assert in conclusory fashion that CVS Pharmacy, Inc.; Garfield Beach CVS, L.L.C.; and California Specialty Pharmacy, L.L.C. are not responsible for the discriminatory conduct Plaintiffs challenge and thus are not 'entities principally engaged in the business of providing healthcare that receive Federal financial assistance.'"  Opp'n 12.  The internal quotation does not appear in the Memorandum, and the full quotation does not accurately reflect any argument that Defendants are making.

Defendants' argument is, instead, that Plaintiffs' theory of discrimination arises from the design of their employers' health-benefit plans, which they claim deprives them of their ability to fill prescriptions at community pharmacies at in-network prices and consult with their preferred pharmacists.  Pharmacies do not design benefit plans.  The SAC does not allege otherwise, nor does the Opposition challenge this proposition.  There simply is no well-pled connection between the discrimination alleged in the Complaint—a discriminatory benefit design—and the three Pharmacy Defendants.

The Opposition does not engage with this argument, much less rebut it.  Instead, it argues at length that "CVS Pharmacy, Inc. . . . provid[es] health care services."  Opp'n 13.  Maybe so, but that is irrelevant to the Pharmacy Defendants' argument for dismissal.  Similarly, the Opposition argues at length that CVS Pharmacy, Inc. receives Federal financial assistance in the form of Medicare and Medicaid payments.  *See id.* at 4 ("CVS Pharmacy, Inc. accepted funds through Medicare Part D and other federal health programs.").  Again, that is not responsive to Defendants' argument.  Defendants have argued—as they indicated they would before Plaintiffs

sought leave to amend their pleadings—that the complaint "does not name any entity for which Plaintiffs sufficiently allege both *responsibility for the allegedly discriminatory conduct* and receipt of the necessary federal funding." Joint Status Report, ECF No. 159 at 2 (emphasis added). Because the Seconded Amended Complaint does not plausibly allege that the Pharmacy Defendants are responsible for the allegedly discriminatory conduct, the claims against those entities should be dismissed.

## V.   DISMISSAL SHOULD BE WITH PREJUDICE

Plaintiffs have already amended their complaint twice, and their current pleading falls well short of plausibly alleging that any (let alone every) named Defendant received Federal financial assistance and engaged in discrimination. The Court's "discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1072 (9th Cir. 2008) (internal quotation marks omitted). Plaintiffs seek leave to submit a Third Amended Complaint, asserting that "discovery must be allowed" for them to investigate "on a defendant-by-defendant basis receipt of federal financial assistance." Opp'n 9 n.4; *see also id.* at 18–19.

The Court should deny that request because amendment would be futile. As to the Pharmacy Defendants, the discovery Plaintiffs propose would not address the pleading deficiencies in the Second Amended Complaint. Plaintiffs *do* allege that those defendant entities receive Federal financial assistance; the problem is that they *do not* plausibly allege that the Pharmacy Defendants engaged in discrimination. As to the PBM Defendants, the proposed discovery is a hopeless fishing expedition. Defendants' Memorandum explained that the types of Federal financial assistance identified in the Second Amended Complaint—i.e., Medicare Part D, Medicare Advantage, and Medicare Supplement—do not flow to PBMs. *See* Mem. 8. The Opposition does not contest or otherwise address that point. Plaintiffs are not proposing discovery to support their factual allegations; they are seeking discovery to find out whether there are facts to allege. That would turn the Federal Rules of Civil Procedure on their head.

**CONCLUSION**

For the reasons stated above and in the opening memorandum, Plaintiffs cannot state a claim under Section 1557 against any of the Defendants, and their UCL claim hinges on the Section 1557 claim. The Court should dismiss the Second Amended Complaint in its entirety and with prejudice.

Dated: April 14, 2022

Respectfully submitted,

By: */s/ Craig D. Singer*
Enu Mainigi (*Pro Hac Vice*)
Craig D. Singer (*Pro Hac Vice*)
Grant A. Geyerman (*Pro Hac Vice*)
Sarah O'Connor (*Pro Hac Vice*)
Benjamin W. Graham (*Pro Hac Vice*)
WILLIAMS & CONNOLLY LLP

John J. Atallah (Bar No. 294116)
FOLEY & LARDNER LLP

*Attorneys for CVS Pharmacy, Inc.; Caremark, L.L.C.; Caremark California Specialty Pharmacy, L.L.C.; CaremarkPCS Health, L.L.C.; and Garfield Beach CVS, L.L.C.*