UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE ONE, et al., | Case No.  18-cv-01031-EMC |
| Plaintiffs, | |
| v. | **ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS** |
| CVS PHARMACY, INC., et al., | |
| Defendants. | Docket No. 242 |

## I.     <u>INTRODUCTION</u>

This is a disability discrimination case by Plaintiff John Does 1 through 7 who are people living with HIV/AIDS, against Defendants.  The Defendants include subsidiaries of CVS Health Corporation and companies that manage prescription drug benefits on behalf of health insurers. Plaintiffs seek to challenge their employer-sponsored health plans which they use to obtain their HIV/AIDs medication.  They argue that the design of the plans discriminates against people living with HIV/AIDS and deny them meaningful access to their benefits.   Plaintiffs allege that the Defendants' involvement is integral to the design of the health plans, and that Defendants were aware of Plaintiffs' problems with the plan but were indifferent to their rights.

Does 1 through 5 filed their initial complaint alleging, *inter alia,* disability discrimination under the Affordable Care Act. This Court dismissed Plaintiffs' complaint with prejudice, and the Ninth Circuit affirmed in part and reversed in part, finding that Plaintiffs state viable causes of action under the Affordable Care Act, i.e. a disability discrimination claim and an Unfair Competition Law claim to the extent it relied on an ACA violation. The case was remanded for further proceedings.  Defendants now move to dismiss the case.  For the reasons below, the Court should **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss.

## II.     FACTS AND BACKGROUND

A.     Factual Background

    1.     The Program

Plaintiffs John Doe 1, John Doe 2[1], John Doe 6, and John Doe 7 are four individuals, proceeding anonymously, who allegedly take medicines that treat HIV/AIDS.  Third Amended Complaint ("TAC"), Docket No. 241 ¶¶ 9–12.  Defendants are five direct or indirect subsidiaries of CVS Health Corporation.  Three of them are pharmacies:  CVS Pharmacy, Inc., Garfield Beach CVS, L.L.C., and CVS Caremark California Specialty Pharmacy, L.L.C. (the "Pharmacy Defendants").  Two of them are pharmacy benefit managers, or "PBMs," which administer health plans for their employer clients: CVS Caremark, L.L.C. and CaremarkPCS Health, L.L.C. (the "PBM Defendants").  *Id.* ¶¶ 14–17.  Plaintiffs received prescription drug coverage through health plans, sponsored by their (or their spouses') current or former employers, which they allege either were or currently are administered by CVS Caremark.  See, e.g., id. ¶¶ 20, 32, 53.

Plaintiffs specifically challenge a plan requirement that they must receive their HIV/AIDS medication by mail through Caremark or by shipment to a CVS retail pharmacy for pick-up to obtain in-network pricing for "specialty medicines."  *Id.* ¶ 98.  Plaintiffs refer to this plan requirement as "The Program." Under The Program, a member must pay out-of-network prices if he or she fills their specialty prescriptions at other pharmacies—namely at retail pharmacies.  *Id.* ¶¶ 1, 97.  Plaintiffs allege they did not want mail delivery of prescriptions, and that they requested to opt-out of The Program and receive their HIV/AIDS medications at their preferred pharmacies at in-network prices rather than through the Caremark mail or pick-up at a CVS retail pharmacy.  *Id.* ¶ 3.  Plaintiffs allege that The Program denies them meaningful access to their health care plans' prescription drug benefit by harming their privacy rights and creating inconvenient and ineffective obtainment of medication. *See id.* at ¶ 215.

    a.     Privacy and liberty concerns.

---

[1] John Doe 2 passed away and is represented by the executor of his estate, Richard Roe. Defendants consented to this substitution as a procedural matter while preserving all defenses to John Doe 2's claims, including that the claims did not survive his death.  See Docket No. 178 at 2. Former plaintiffs John Does 2, 4, and 5 were dismissed by stipulation.  See Docket Nos. 203, 224.

United States District Court
Northern District of California

First, The Program raises numerous "privacy and personal liberty concerns."  *See id.* at ¶ 103.  The mail delivery option can result in "lost or stolen" medication, which threatens the members' privacy. *Id.*  For example, John Doe 1 was away from home several days a week for work, and if his medications were delivered to his home, they would be left on this doorstep.  *Id.* at ¶ 29.  Plaintiffs also allege that class members who live in apartment buildings or require medication deliveries to their workplace "have expressed alarm that neighbors and coworkers, who do not know that the recipient has HIV/AIDS, will come to suspect they are ill.  *Id.* at ¶ 103. It is well-known that people living with HIV/AIDS experience stigma, prejudice, and discrimination.  *See id.*  The Program's pick-up at a CVS retail pharmacy option also raises privacy concerns.  For example, John Doe 2 explained:

> At my retail specialty pharmacy, they have a little alcove for privacy. I can take my medications out and match it with a list I have of all my drugs. I can meet with my pharmacist and explain any changes I have felt and ask any questions I have. At CVS, I am within hearing distance of everyone waiting in line, including many people who do not have HIV/AIDS. I can hear other patients' questions and the pharmacists' answer. I am concerned with other people finding out about my HIV-positive status.

*Id.* at ¶ 34.

### b.   Inconvenient and ineffective obtainment of medication

Next, The Program's two options for members to obtain their HIV/AIDS medication both are inconvenient and ineffective ways for members to obtain their HIV/AIDS medication.  The mail delivery option can experience delivery errors or, as stated above, stolen medication.  John Doe 7 explained that he placed a refill order that was to be delivered two days later, but was delayed an additional two days due to inclement weather.  *Id.* at ¶ 84.  This led to John Doe 7 not having his daily dose of HIV medication.  *Id.*  Further, he was leaving the country on the day the medication was supposed to be delivered and would not be able to retrieve it until he returned.  He would miss at least four doses of his daily HIV/AIDS medication, and the medication would be on his doorstep for multiple days, where it could have been stolen or exposed to the summer heat.  *Id.*

The Program's pick-up option at a CVS retail location is not preferable to Plaintiffs' local retail pharmacy of choice.  Plaintiffs allege that they paid thousands of dollars out-of-pocket each

month to purchase medications at their local retail pharmacy of choice. *Id.* at ¶ 215.  Plaintiffs allege that their preferred pharmacies are "best positioned" to provide "advice and counseling" to patients through "face-to-face interactions"; detect "adverse drug interactions"; and "immediately provide new drug regimens as their disease progresses." *Id.* ¶ 99.  John Doe 2 said that he had to travel roughly 50 miles round trip to go to a CVS retail location with a private pick-up area, incurring a loss of at least $250, and requiring his husband to drive since he could not. *Id.* at ¶ 35.  John Doe 2 also frequently experienced issues with missing or inadequate amounts of medication when picking up his HIV/AIDS medication.  *Id.*

### 2.   Awareness

Plaintiffs allege that Defendants collectively were "deliberately indifferent" to a violation of Plaintiffs' rights. The TAC points to several facts as evidence of the Defendants' awareness of an alleged rights violation:

1. John Doe 2's complaint in 2016 to a state regulator,
2. Similar litigation waged against insurance companies from 2013-2017 and ensuing media coverage,
3. A pre-lawsuit settlement demand Plaintiffs' counsel made of Caremark, and
4. Evidence supposedly showing Defendants' employees were aware "that the design of the Program was suboptimal for HIV/AIDS Medications and likely discriminatory against people living with HIV."

*See id.* ¶¶ 147–56.

### 3.   The Program Opt-Out

Plaintiffs also allege that The Program's failure to enable them to opt-out, which effectively denies them reasonable access to HIV/AIDs medication, violates federal law. Additionally, Plaintiffs allege that when they attempted to opt-out by contacting CVS Caremark's customer service representatives, *id.* ¶¶ 142–45, they were told that only their employer plan sponsors (who are not Defendants), had the authority to do so. *Id.* ¶¶ 150, 162.  While it is not disputed that the employer plan sponsors have the ultimate authority to allow Plaintiffs to opt-out, Plaintiffs allege that Defendants are integral to the creation of those employer plans and thus bear responsibility therefor.

United States District Court
Northern District of California

B.     Procedural Background

Does 1 through 5 filed their initial complaint alleging, *inter alia*, disability discrimination under the Affordable Care Act. This Court dismissed their complaint, and the Ninth Circuit affirmed the dismissal except as to their ACA claim, which it revived.  The Ninth Circuit held that Plaintiffs "adequately alleged that they were denied meaningful access to their prescription drug benefit, including medically appropriate dispensing of their medications and access to necessary counseling" because of Defendants' program. *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1211 (9th Cir. 2020). The Supreme Court granted certiorari on the limited question of whether the ACA provides a disparate impact cause of action for plaintiffs alleging disability discrimination, but the parties withdrew the case after briefing but before oral argument. *CVS Pharmacy, Inc. v. Doe*, 141 S.Ct. 2882, 2883 (2021).

In the intervening time, Does 2 to 4 passed away, Doe 5 was dismissed for failure to prosecute, and Doe 1 is no longer enrolled in the challenged program. Does 3 and 4 were voluntarily dismissed from the case after their deaths, but Doe 1 and the estate of Doe 2 remain.  Defendants then sought to dismiss the case as moot, arguing that Plaintiffs no longer had standing to seek an injunction.

The Court previously granted Plaintiffs' motion to amend the complaint to add Doe 6, who is still subject to the challenged program, and to allege that Defendants were deliberately indifferent in their failure to provide meaningful access or reasonable accommodations in support of monetary damages.  Docket No. 230 (Order).  Plaintiffs filed their Third Amended Complaint "TAC" on September 11, 2023 with the additions as the Court ordered, but also with an additional Doe 7.  Docket No. 241.  Defendants now move to dismiss the TAC on all claims and the addition of Does 6 and 7.  Docket No. 242.

### III.     LEGAL STANDARD

A.     Motion to Dismiss

1.     Rule 12(b)(6) Failure to State a Claim

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A

complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6).  *See* Fed. R. Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'"  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).  The Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

### 2.   Rule 12(b)(1) Lack of Subject Matter Jurisdiction

Under Rule 12(b)(1), a party may move to dismiss for lack of subject matter jurisdiction. "[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under [Rule] 12(b)(1)."  *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).  The "irreducible constitutional minimum" of standing requires that a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins* ("*Spokeo II*"), 136 S. Ct. 1540, 1547 (2016).  These three elements are referred to as, respectively, injury-in-fact, causation, and redressability.  *Planned Parenthood of Greater Was. & N. Idaho v. U.S. Dep't of Health & Human Servs.*, 946 F.3d 1100, 1108 (9th Cir. 2020).  "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements," which at the pleadings stage means "clearly . . . alleg[ing] facts demonstrating each element."  *Spokeo II,* 136 S. Ct. at 1547 (quoting

*Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

A Rule 12(b)(1) jurisdictional attack may be factual or facial. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack," "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* The Court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the Court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

"[I]n a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1038. In resolving such an attack, unlike with a motion to dismiss under Rule 12(b)(6), the Court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* Moreover, the Court "need not presume the truthfulness of the plaintiff's allegations." *Id.*

Either way, "it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." *Warth*, 422 U.S. at 501; *see also Table Bluff Reservation (Wiyot Tribe) v. Philip Morris, Inc.*, 256 F.3d 879, 882 (9th Cir. 2001) (in assessing standing, the Court may consider "the complaint and any other particularized allegations of fact in affidavits or in amendments to the complaint").

## IV.      DISCUSSION

A.      The Affordable Care Act

Section 1557 of the Affordable Care Act ("ACA") incorporates the anti-discrimination provisions of various civil rights statutes, and prohibits discrimination on the basis of race, color, or national origin pursuant to Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d *et seq.*), on the basis of sex pursuant to Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681 *et seq.*),  on the basis of age pursuant to the ADA (42 U.S.C. § 6101 *et seq.*), and, as is

1  relevant here, on the basis of disability pursuant to Section 504 of the Rehabilitation Act (29

2  U.S.C. § 794). 42 U.S.C. § 18116.  *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1208-09 (9th Cir.

3  2020).

4       Under Section 1557, covered entities have an obligation to ensure an individual is not

5  "excluded from participation in, be denied the benefits of, or be subjected to discrimination under"

6  any health program receiving federal financial assistance "on the ground prohibited by" Section

7  504 of the Rehabilitation Act and other incorporated statutes. 42 U.S.C. § 18116(a).[2]  Under

8  Section 504, covered entities are required to give people with disabilities meaningful access to

9  benefits, and "reasonable accommodations in the grantee's program or benefit may have to be

10  made." *Alexander v. Choate,* 469 U.S. 287, 301 (1985).

11       Defendants do not contest they are subject to Section 1557.  TAC ¶ 212.  The

12  nondiscrimination policy on their website states:

13       Nondiscrimination and Accessibility Notice (ACA § 1557)
     CVS Pharmacy, Inc. complies with applicable Federal Civil rights
14   laws and does not discriminate on the basis of race, color, national
     origin, age, disability, or sex. CVS Pharmacy, Inc. does not exclude
15   people or treat them differently because of race, color, national
     origin, age, disability or sex.
16

17  TAC ¶ 212.

18       Instead, Defendants make several arguments in their motion to dismiss.  First, Plaintiffs

19  fail to allege facts sufficient to establish a claim for intentional or deliberate-indifference

20  discrimination under the ACA.  Motion at 6.  Second, Plaintiffs fail to allege facts to show that

21  The Program's limitations for specialty medications is a form of proxy discrimination against

22  people living with HIV.  Motion at 15.  Third, Doe 6 lacks standing to challenge the program on

23  the basis of HIV/AIDS disability discrimination because he is not currently enrolled in the mail-

24  order prescription program.  Motion at 16.  Fourth, Doe 7's claims should be dismissed because

25  the Court did not permit their assertion when granting leave to amend to file the TAC.  Motion at

26

27  _____
   [2] The ACA's incorporated statutes are Title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d
28  et seq.), Title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), the Age
   Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), and Section 504 of the Rehabilitation Act of
   1973 (29 U.S.C. 794).  42 U.S.C.S. § 18116.

21.  The Court first addresses the initial matter of standing, and then turns to each argument.

    1.    <u>Standing for Injunctive Relief</u>

"To establish standing to sue, a plaintiff must show: (1) an injury that is concrete and particularized and actual or imminent; (2) a causal connection between the injury and defendant's challenged action; and (3) redressability." *Updike v. Multnomah County*, 870 F.3d 939, 947 (9th Cir. 2017). Standing for injunctive relief only requires that Plaintiffs "show a real and immediate threat of repeated injury." *Updike*, 870 F.3d at 947 (internal quotations omitted). Courts must "take a broad view of constitutional standing in civil rights cases, especially where" as here "private enforcement suits are the primary method of obtaining compliance with the Act." *Doran v. 7-Eleven, Inc.,* 524 F.3d 1034, 1039 (9th Cir. 2008) (internal quotation marks omitted).

Further, federal courts "confine themselves to deciding actual cases and controversies," and a live controversy must "persist throughout all stages of the litigation" for the Court to exercise subject-matter jurisdiction under Article III of the Constitution. *Mitchell v. Washington,* 818 F.3d 436, 442 (9th Cir. 2016) (internal quotation marks omitted).  If a case becomes moot at any time while it is pending, a court must dismiss it.  *See, e.g., M.M. v. Lafayette Sch. Dist.,* 767 F.3d 842, 857 (9th Cir. 2014) (affirming dismissal where "where the question sought to be adjudicated has been mooted by developments subsequent to filing of the complaint" and there is thus "no justiciable controversy").  Where a plaintiff seeks injunctive relief, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy[.]"  *Bayer v. Neiman Marcus Grp., Inc.,* 861 F.3d 853, 864 (9th Cir. 2017) (internal quotation marks omitted).

Defendants argue that John Does 1, 2, and 6's claims for injunctive relief are moot because they are either no longer enrolled in a health care plan administered by CVS Caremark, or are not subject to The Program's mail-order restriction.  Motion at 17.  Defendants are correct as to John Does 1 and 2.  John Doe 1 is not in a CVS Caremark health plan.  Docket No. 201 ¶5,6 (Jones Decl.).  John Doe 2 is deceased, which necessarily moots his claim for injunctive relief.  *See* Docket No. 178 (Suggestion of Death); *Kennerly v. U.S.,* 721 F.2d 1252, 1260 (9th Cir. 1983) ("Because of his death, the question of injunctive relief as to him is now moot."); *Tandy v. City of Wichita*, 380 F.3d 1277, 1290 (10th Cir. 2004) (plaintiff's claims for injunctive relief resulting

United States District Court
Northern District of California

from alleged disability discrimination "are mooted by his death").  John Does 1 and 2 lack standing to obtain forward-looking injunctive relief.

The remaining John Does 6 and 7 have adequately plead claims for injunctive relief. Plaintiffs allege that John Doe 6 is subject to The Program and has a "present and ongoing" experience with CVS's failure to provide accurate and timely information concerning his rights to obtain HIV medication.  TAC ¶ 68-71.  Starting in November 2022, he sent a letter to his employer Cisco and CVS Caremark formally requesting to opt-out of The Program.  His request was denied, as well as his appeal.  TAC ¶ 69.  Then, on August 21, 2023, he received notification from Defendants that he could not obtain his medications at the in-network pharmacy of his choice.  TAC ¶ 11.  His calls to CVS customer service in response to this notification did not resolve the situation.  *Id.*; *see also* John Doe 6 Decl. ¶ 4-14, 18.  Defendants argue that Cisco modified its healthcare plan so HIV/AIDS medication was available on an open network, and thus John Doe 6 can fill his prescription at his preferred Walgreens pharmacy at in-network prices. Docket No. 215-1 (Vickman Decl.) ¶ 4-5.  But Plaintiffs allege that John Doe 6 was never given notice of this change, which allegedly occurred in 2021.  John Doe 6 Decl. ¶ 4-5, 18. Regardless, at this stage, assuming all facts are true, Plaintiffs have alleged sufficient facts to establish that John Doe 6 has standing for injunctive relief because according to the August 21, 2023 notification, he has been denied the ability to opt-out of The Program in which he continues to be a member.

John Doe 7 also adequately plead claims for injunctive relief because he is currently a member of The Program.  John Doe 7 attempted to opt-out of the program multiple times since January 2023, but was "either denied or ignored by Defendants."  TAC ¶ 12.  Therefore, these allegations are sufficient to show that both John Does 6 and 7 are currently denied meaningful access to their HIV prescription drug benefits under Defendants' Program.

### 2.    Deliberate indifference

A public entity can be liable for damages under § 504 of the Rehabilitation Act if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons.  *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806

F.3d 451, 466 (9th Cir. 2015) ("To establish a claim for damages under the Rehabilitation Act and ADA, a plaintiff must prove that the defendant intended to discriminate on the basis of his or her disability, or was deliberately indifferent to the disability."). In other words, under the Rehabilitation Act, intentional discrimination may be established by a showing of "deliberate indifference." *Duvall v. Cnty. Of Kitsap,* 260 F.3d 1124, 1139 (9th Cir. 2001)[3]; *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1153 (10th Cir. 1999) (discussing *Ferguson v. City of Phoenix,* 157 F.3d 668, 674 (9th Cir. 1998) and applying deliberate indifference standard to Rehabilitation Act).

As an initial matter, the Ninth Circuit previously held that Plaintiffs stated a claim for disability discrimination under the ACA, and specifically that under Section 504, they "adequately alleged that they were denied meaningful access to their prescription drug benefit under their employer-sponsored health plans because the Program prevents them from receiving effective treatment for HIV/AIDS." *Doe v. CVS Pharm., Inc.,* 982 F.3d 1204, 1212 (9th Cir. 2020).  As such, the Court need only assess whether Plaintiffs sufficiently allege that Defendants acted with deliberate indifference.

To show "deliberate indifference," a plaintiff must establish the defendant's "[1] knowledge that a harm to a federally protected right is substantially likely, and [2] a failure to act upon that [] likelihood."  *Duvall v. Cnty. Of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001). Defendants argue that Plaintiffs fail to allege both elements. The Court addresses each element in turn.

           a.    <u>Knowledge</u>

To establish "knowledge that a harm to a federally protected right is substantially likely," "a plaintiff must first show that the [defendant] was on notice of the need for an

---

[3] The court in *Duvall* specifically held that the "deliberate indifference" standard applies for intentional discrimination under Title II of the ADA, but cited to *Ferguson* and other cases applying *Ferguson* that apply the "deliberate indifference" standard to the Rehabilitation Act.  The court also cited *Zukle v. Regents of the University of California*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999) for the proposition that the "remedies, procedures, and rights" available under Title II of the ADA are equivalent to those available under § 504.  *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1141 (9th Cir. 2001).

United States District Court
Northern District of California

accommodation." *Csutoras v. Paradise High Sch.,* 12 F.4th 960, 969 (9th Cir. 2021). "When the plaintiff has alerted the public entity to his need for accommodation (or where the need for accommodation is obvious, or required by statute or regulation), the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test." *Duvall,* 260 F.3d at 1139. The questions of whether a need for accommodation is (1) obvious or (2) required by statute or regulation are separate bases to establish notice and are separate factual inquiries. *See A.G. v. Paradise Valley Unified Sch. Dist. No. 69,* 815 F.3d 1195, 1207-08 (9th Cir. 2016).

In *Paradise Valley,* the Ninth Circuit held that there was a genuine factual dispute as to whether the need for accommodations for a student eligible for special education services was obvious. *Id.* at *1208. The court reviewed the case of the student A.G., who experienced significant behavioral issues in school that lead to a dispute over the adequacy of the student's educational accommodations under Section 504 and the American Disabilities Act. Plaintiffs introduced the following: an email complaint from a teacher stating that existing behavioral support was insufficient to meet the student's needs, evidence that the student's parents had previously requested a full-time behavioral aide, and evidence of the student's deteriorating behavior. *Id.* at *1208. Finding that the parties' assertions on this point established a factual dispute, the Ninth Circuit reversed the district court's summary judgment in favor of the school district, including judgement on the Plaintiffs' Section 504 claim. *Id.* at *1208.

Here, the Plaintiffs contend that notice of the need for accommodation was at least as obvious as in *Paradise Valley*. They explicitly alleged Defendants were on notice of their need for an accommodation. Plaintiffs allege that they made the specific accommodation request to opt-out of The Program and obtain their HIV medications at their preferred local pharmacy. John Doe 1 emailed CVS Caremark Customer Service requesting an explanation for why his "HIV medications were halted at the [in-network] retail pharmacy" and "he believed this limitation on access to his HIV medications and the denial of his opt-out requests were unlawful." TAC ¶ 24. John Doe 1's mention of his denied request to opt-out of The Program describes a "specific reasonable" and "necessary" requested accommodations. *Memmer v. Marin County Courts,* 169

F.3d 630, 633 (9th Cir. 1999).

The remaining John Does also all requested to opt-out of the program. John Doe 2 called CVS Caremark "more than twenty times," to "expressly requested to opt out of the Program" and to address his health and privacy concerns with The Program. TAC ¶¶ 41, 45. John Doe 2 explicitly had at least one conversation with a CVS Caremark representative concerning his HIV/AIDS medications under The Program. TAC ¶ 46. John Doe 2 also submitted a letter to the CEO of CVS Health at the time explaining his concerns with The Program due to his disability, and requested reasonable accommodation in the form of opting out of The Program. TAC ¶ 48. John Doe 6 contacted his employer, Cisco, to request an accommodation in the form of an opt-out and discuss his health and privacy concerns about the Program. TAC  ¶ 57. Cisco then reached out to CVS Caremark to request an accommodation. Both requests to Cisco and to CVS Caremark were unsuccessful. *Id.* John Doe 7 made multiple attempts to opt out of The Program and contact Defendants about his health and privacy concerns under the Program. TAC ¶ 96. He mailed a letter to CVS Caremark for issues concerning the mail-order service and prescription refills. *Id.* He also faxed an opt-out request, called his health insurance company, called CVS Specialty, and mailed another opt-out request to a different CVS Caremark address listed in his health care plan documents, all to no avail. *Id.*

Plaintiffs' substantial and numerous communications establish that they alerted Defendants to their need for accommodation, and this satisfies the first element of the deliberate indifference test. Multiple communications referencing the need for accommodation provides notice to defendants. *See Patricia N. v. Lemahieu*, 141 F. Supp. 2d 1243, 1255 (D. Haw. 2001) (denying motion to dismiss where plaintiffs alleged they "repeatedly complained" of not receiving certain services necessary to gain the same benefit as nondisabled public school students); *Durham v. Kelley*, 82 F.4th 217, 226 (3d Cir. 2023) (The plaintiff "made numerous prison officials aware that he had a cane, needed a cane to walk, and was in severe pain without it. Despite this, he was continuously denied his cane and shower accommodations. This alone was sufficient to allege a deliberate indifference claim.").

Defendants argue that Plaintiffs must have complained to an actor with "the authority to

arrange an accommodation" to effect notice. *Duvall*, 260 F.3d at 1140.  However, Defendants'

mischaracterize the court's findings in *Duvall*.  There, the court merely cited the fact that a

defendant admitted they had the authority to arrange an accommodation but failed to do so.  *Id.*

The court did not, however, establish a rule that the plaintiff was required to complain to a

particular individual who had authority to arrange an accommodation.  In fact, "[t]he doctrine of

*respondeat superior* is applicable to claims based on § 504 which are brought independently of §

1983." *Bonner v. Lewis*, 857 F.2d 559, 567 (9th Cir. 1988).  Thus, "notice to claims

representatives would be imputed to decisionmakers."  Docket No. 230 at 10 (Order Granting

Motion to Amend Complaint and Denying Motion to Dismiss) (citing *Bonner,* 857 F.2d at 567).

As such, Plaintiffs' emails requesting accommodations to CVS Caremark Customer Service

sufficiently "alerted the public entity to [Plaintiffs'] need for accommodation" to establish

Defendants' knowledge. *Duvall,* 260 F.3d at 1139.

Defendants argue that it was "impossible for Defendants to 'know' that The Program's

mail-order requirement was 'substantially likely' to violate Plaintiffs' civil rights" because "no

statute, regulation, or court opinion required Defendants to provide Plaintiffs' requested opt-out."

Motion at 7.  In asserting that they did not act knowingly or in reckless disregard of the law,

Defendants analogize liability here to the requirements for a Section 1983 qualified immunity

defense.  *See id; see also Ballentine v. Tucker,* 28 F.4th 54, 61 (9th Cir. 2022) ("To overcome a

qualified immunity defense, plaintiffs must show that [defendants] (1) 'violated a federal statutory

or constitutional right' and (2) 'the unlawfulness of their conduct was clearly established at the

time.'").  But Defendants are incorrect.  Qualified immunity is a concept particular to Section

1983.  Defendants point to no case which has imported qualified immunity into the ADA.  The

deliberate indifference standard under the ACA pertains to the defendant's knowledge of the likely

harm to the plaintiff, not of specific clearly established law.  Qualified immunity is particularly

inapposite where the duty to provide a reasonable accommodation under the ACA or Section 504

is well established, and the need is as a factual matter obvious.  *See Duvall v. County of Kitsap,*

260 F.3d 1124, 1140 (9th Cir. 2001) (finding that the defendant was on notice given plaintiff's

multiple requests to accommodate his hearing impairment, well as a request to the County ADA

coordinator about the inadequacy of his accommodations).

*A.V. v. Douglas Cnty. Sch. Dist. RE-1,* 586 F. Supp. 3d 1053 (D. Colo. 2022) which involved a similar deliberate indifference discrimination claim under the American Disabilities Act (ADA) is instructive.  There, the plaintiff, a student, alleged that the defendants, school resource officers, were deliberately indifference to his rights when they failed to provide him accommodations.  *Id.* at 1066.  The student alleged that the School Resource Officers knew he had emotional disabilities, a history of self-harm, and even witnessed him bang his head against plexiglass.  *Id.*  There, the defendants attempted to import a "clearly established law" analysis into the deliberate indifference standard under the ADA. *Id.* at 1066 n.5.  The court rejected the argument;  defendants neither cited any law supporting their proposition, nor was the court aware of any such law.  *Id.*

The various out-of-circuit cases that Defendants' cite are inapposite, because they do not discuss whether plaintiffs' need for accommodation was obvious—the key issue here.  *See, e.g., E.S. v. Regence BlueShield,* 2018 U.S. Dist. LEXIS 163287 at *7 (W. D. Wash. 2018) (holding that plaintiffs' request to offer coverage for all doctor's appointments or all durable medical devices regardless of the health condition, injury, or illness, is not a "reasonable modification" under the ACA.); *In re Express Scripts/Anthem ERISA Litig.*, 285 F. Supp. 3d 655, 688 (S.D.N.Y. 2018) (discussing whether plaintiffs sufficiently alleged a disparate impact claim); *SEPTA v. Gilead Scis., Inc.*, 102 F. Supp. 3d 688, 699-700 (E.D. Pa. 2015) (determining whether the plaintiffs have stated a claim under Section 504, specifically whether they are "qualified individuals with disabilities who have been denied their benefits of a program or activity which receives federal funds on the basis of their disabilities.").

That Defendants were on notice of the need to accommodate patients in need of HIV/AIDS medication is additionally supported by federal regulations, which warned that mail-order programs are potentially discriminatory.  The regulations state that healthcare providers "may not, directly or through contractual or other arrangements utilize criteria or methods of administration" that either (i) "have the effect of subjecting [people with disabilities] to discrimination;" or (ii) "have the purpose or effect of defeating or substantially impairing accomplishment of the

objectives of the recipient's program or activity with respect to" people with disabilities. 45 C.F.R. § 84.4(b)(4)(i)–(ii).  Covered healthcare providers shall not "[p]rovide benefits or services in a manner that limits or has the effect of limiting the participation of" people with disabilities.  *Id.* at § 84.52(a)(4).  Moreover, 45 C.F.R. § 156.122(e) specifically requires a "health plan [to] allow enrollees to access prescription drug benefits at in-network retail pharmacies" (with certain exceptions that do not apply to HIV/AIDS medications). According to the U.S. Department of Health and Human Services (HHS), "making drugs available only by mail-order could discourage enrollment by, and thus discriminate against . . . individuals who have conditions that they wish to keep confidential."  Patient Protection and Affordable Care Act; HHS Notice of Benefit and Payment Parameters for 2016, 80 Fed. Reg. 39, 10820–22 (Feb. 27, 2015).

Defendants also argue that because Plaintiffs made requests to CVS Caremark and the PBM Defendants listed on their health plans, there is no claim as to the Pharmacy Defendants.  Motion at 10.  But Plaintiffs allege that "the various CVS Caremark defendants act as agents of one another and operate as a single entity for purposes of administering pharmacy benefits and providing prescription drugs to health plans and health plan members."  TAC ¶ 17. This is sufficient to state a claim against the Pharmacy Defendants.  Further, this Court previously found that Section 1557 of the ACA governed "All four Defendant entities," which includes the Pharmacy Defendants, explaining that Plaintiffs plausibly alleged in the Second Amended Complaint (SAC) that "the Defendant CVS entities function as a cohesive, integrated enterprise in the provision of healthcare under The Program."  Docket No. 194 at 23.  The alleged facts in the operative TAC remain identical to those in the SAC that the Court relied on in its prior denial of Defendants' motion to dismiss.[4]

_____

[4] This Court cited the following allegations in the SAC that are identical in the TAC:

The Pharmacy Defendants and the PBM Defendants are both "directly responsible for the discriminatory conduct at issue in the Complaint." SAC ¶ 131 (TAC ¶ 135). CSP, one of the Pharmacy Defendants, is responsible for filling Plaintiffs' prescriptions and shipping out medications. *Id.* ¶ 15 (TAC ¶ 14). Garfield Beach CVS, L.L.C. operates CVS retail pharmacies in California. *Id.* ¶ 17 (TAC ¶ 16). Caremark, L.L.C., a PBM Defendant, administers the prescription drug benefits under Plaintiffs' plans. *Id.* ¶¶ 15, 16 (TAC ¶¶ 15, 17). Caremark, L.L.C. "owns and exercises control over CSP." *Id.* ¶ 15 (TAC ¶ 14). "[A]s a prescription drug benefit administrator," one of Caremark, L.L.C.'s roles is to "establish and contractually control which, if

16

Defendants' knowledge of a likely violation of federally protected rights in the absence of reasonable accommodation is further supported by Defendants' internal data, which indicated that they knew The Program negatively affected people with HIV's equal access right to prescription drug benefits.  TAC ¶¶ 154-163.  Internal studies and survey data showed their mail-order program would lead to limited access to benefits, *id.* at ¶¶ 159-161, specifically "that the design of The Program was suboptimal for HIV/AIDS Medications and likely discriminatory against people living with HIV."  *Id.* at *¶ 156; see also id.* at ¶¶ 157 (CVS internal study concluded "that consumers should be provided a blended approach as mail order only programs had a negative effect on the rate of individuals taking these medications every day and exactly as prescribed"); *id.* at ¶ 161 (CVS patient data from 2017 "identified many of the same access issues Plaintiffs have encountered as endemic to The Program—such as missed dosages of HIV/AIDS Medications because of delivery delays; orders cancelled without notifying members; and other shipping issues resulting in members not receiving their HIV/AIDS Medications.").  And Plaintiffs allege that Defendants' new HIV medication carve-out for The Program in 2017, *see id.* at ¶ 158, which shows high-level corporate knowledge about the access problems.

Finally, Plaintiffs point to prior legal cases specifically against CVS that would have put

---

any, non-CVS pharmacies are 'in network,' thereby determining where Class Members may purchase their prescription drugs with full insurance coverage." *Id.* ¶ 69 (TAC ¶ 97). Caremark, L.L.C. established the "Specialty Pharmacy Distribution Drug List" that imposed the relevant restrictions on Plaintiffs' HIV/AIDS medications. *Id.* ¶¶ 16, 95 (TAC ¶¶ 15, 124).

The SAC alleges that Defendants collectively worked together to control and execute The Program. The Program's restrictions with regard to the HIV/AIDS medications are described as "acts and decisions exclusively in the control and discretion of" Defendants. *Id.* ¶ 80 (TAC ¶ 108). Defendants "conspired" to secure "agreements as to each Plaintiff and Class Member's health plan requiring Class Members to use the wholly-owned [CSP] under the Program." *Id.* ¶ 20 (TAC ¶ 19). "[B]y forcing enrollees to only obtain such medications through their sister co-conspirator and wholly-owned subsidiary CSP," Defendants keep "hundreds of thousands, if not millions, of dollars in prescription fill fees, possible rebates, and other monies to themselves." *Id.* ¶ 79 (TAC ¶ 107). Defendants are collectively alleged to have "control over the Program," "control over whether community pharmacies are designated as "out-of-network," "control over cost-sharing issues and control over CVS pharmacies." *Id.* ¶ 155(b) (TAC ¶ 215(b)). Defendants are collectively alleged to offer "financial inducements" to health plan sponsors—Plaintiffs' employers—to enroll Plaintiffs in benefit plans subject to The Program. *Id.* ¶ 2 (TAC ¶ 2)s.

Docket No. 194 at 5-6.

Defendants on notice of their violation of the law, such as *Doe v. Coventry Health Care, Inc.,* No. 15-CIV-62685 (S.D. Fla. May 5, 2016), a case consisting of a similar claim that a CVS-subsidiary's mail-order requirement denied Plaintiffs meaningful access to HIV/AIDS medications. Six other similar cases filed against other insurers including Blue Cross, United Healthcare, Cigna, Aetna, and Coventry Health are listed in the TAC. TAC at ¶ 151. Plaintiffs also point to numerous news articles from 2013 to 2015 which reported on how mail-order programs for HIV medication discriminated against people, as well as significant national and local media coverage against other mail-order programs which were characterized as discriminatory. *Id.* at ¶ 152 (*e.g.* David Lazarus, *Anthum's mail-order policy may have crossed a legal line,* Los Angeles Times (Jan. 10, 2013), https://tinyurl.com/4mfke7td; Jeff Overlay, *HIV Patient Says Anthem Mail-Order Drug Plan Discriminatory,* Law 360 (Jan. 14, 2013), https://tinyurl.com/2wpjws4h). As this Court previously explained, "widely publicized litigation alleging that mandatory, mail-order-only programs (like The Program here) violated the federal rights of people living with HIV… these articles are probative of Defendants' knowledge." Docket No. 230 (Order Granting Plaintiffs' Motion to Amend Complaint and Denying Defendants' Motion to Dismiss Without Prejudice) at 11. Also, the pre-lawsuit negotiations between Plaintiffs' counsel and Defendants' counsel and high-level members of Defendants' entities in this case, TAC ¶ 154, "could state a plausible claim of Defendants' knowledge." Docket No. 230 at 12.

Defendants' cited cases rejecting claims based on traditional disparate impact analysis[5] are

---

[5] In *Doe v. BlueCross BlueShield of Tennessee, Inc.,* 2018 WL 3625012, at *10 (W.D. Tenn. July 30, 2018), the court dismissed plaintiffs' disparate treatment claim, finding that plaintiffs could not allege that they were treated differently on the basis of their HIV/AIDS status merely because their health plan required them to fill their HIV/AIDS prescriptions via mail or in-network pharmacies. The Sixth Circuit then affirmed on even broader grounds, holding that "[b]ecause the specialty medications program does not distinguish based on disability, much less 'solely' so, it does not convey any discriminatory intent." *Doe v. BlueCross BlueShield of Tennessee, Inc.,* 926 F.3d 235, 241 (6th Cir. 2019). Other courts have similarly held that health insurers did not discriminate against members on the basis of disability when they treated "specialty medications" differently from other medications. *See E.S. by & through R.S. v. Regence BlueShield,* 2018 WL 4566053, at *3 (W.D. Wash. Sept. 24, 2018) (denying disparate impact claim because medical health plan that excludes coverage for hearing exams and hearing loss treatment applies equally to all insured individuals, whether they are disabled or not); *In re Express Scripts/Anthem ERISA Litig.,* 285 F. Supp. 3d 655, 686-88 (S.D.N.Y. 2018); *Se. Pennsylvania Transp. Auth. v. Gilead*

United States District Court
Northern District of California

1    inapposite, particularly in view of the Ninth Circuit's decision in this case which held that "[t]he

2    fact that the benefit is facially neutral does not dispose of a disparate impact claim based on lack

3    of meaningful access." *Doe v. CVS*, 982 F.3d at 1212. The key here, as the Ninth Circuit found,

4    is the lack of Plaintiffs' meaningful access to medication.

5        For all the reasons stated above, Plaintiffs have sufficiently alleged that Defendants were

6    on notice of the need to provide reasonable accommodations for The Program to provide

7    meaningful access to prescription HIV medication as required by the ACA and Section 504 of the

8    Rehabilitation Act. As alleged, Defendants had knowledge that there was a substantial likelihood

9    The Program discriminated against people with HIV, and that a harm to a federally protected right

10   was substantially likely.

11                        b.    Failure to Act

12       For the second element of failure-to-act, a public entity has a well-settled duty upon

13   receiving a request for accommodation:

> [A public entity] is required to undertake a fact-specific
> investigation to determine what constitutes a reasonable
> accommodation, and we have provided the criteria by which to
> evaluate whether that investigation is adequate. "Mere[] speculation
> that a suggested accommodation is not feasible falls short of the
> reasonable accommodation requirement; the Acts create a duty to
> gather sufficient information from the [disabled individual] and
> qualified experts as needed to determine what accommodations are
> necessary."

19   *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001) (citation omitted). "[A] failure to act

20   must be a result of conduct that is more than negligent, and involves an element of deliberateness."

21   *Id.* at 1140. Deliberate indifference does not occur where a duty to act may simply have been

22   overlooked, or a complaint may reasonably have been deemed to result from events taking their

23   normal course. *Id.* at 1139-40.

24       Defendants argue that they have no contractual authority to offer members an opt-out of

25   The Program. It is undisputed that Defendants' employees advised Plaintiffs that only the

---

*Scis., Inc.*, 102 F. Supp. 3d 688, 700 (E.D. Pa. 2015) (denying disparate impact claim because
plaintiff fails to allege that his HIV medication prices were higher than for other non-HIV
medications).

United States District Court
Northern District of California

employer health plans, not CVS Caremark, had authority to allow Defendants to opt-out.  *See* TAC ¶ 150 ("According to [CVS Health's Director of Pharmacy Regulatory Affairs Karen] DiStefano, however, it was the employer's decision—not CVS's—whether the accommodation request to opt out of the Program would be granted.").

However, Plaintiffs sufficiently allege that Defendants implemented The Program by "utiliz[ing] its discretion" under its contracts with employers and "offer[ing] financial inducements to plan sponsors."  TAC ¶ 2.  "As such, CVS effectively controls and directs the pharmacy benefits of such plans.  Furthermore...CVS Caremark has an ongoing ability to alter plan terms and the prescription drug benefits provided thereunder to Class Members."  ¶ 2.  CVS also reserves the right to alter pharmacy benefits at any time.  Sternberg Decl. ¶ 409.  These facts sufficiently allege that the Defendants have control over The Program.

Furthermore, the facts allege that Defendants did have the authority to coordinate with employers an opt-out of The Program.  In 2017, Defendants offered a plan to employers that exempted HIV/AIDS specialty drugs from mail-order requirement in response to "client and marketplace feedback…" TAC ¶ 158.  This plan design (hereinafter the "HIV/AIDS medication carve-out") "'enable[d] clients to offer their members/employees better access to their HIV/AIDS Medications."  *Id.*

Defendants state that the HIV/AIDS medication carve-out undermines the claim that they failed to act.  However, Defendants made the carve-out available to third-party employers, but not directly to Plaintiffs.  Defendants created "benefit plans" or "benefit options" for prescription drugs that employer clients could choose from, including a HIV/AIDS medication carve-out option for The Program.  But no such carve-out was available directly to members with HIV/AIDS.  This is not sufficient action.  *See Button v. Board of Regents of University and Community College System of Nevada*, 289 F. App'x 964, 968 (9th Cir. 2008) ("It is not enough that the Board took some action—in *Duvall* the [defendant] court made some effort to accommodate, but we held that a jury could find this effort both insufficient and deliberate").  Moreover, Plaintiffs also allege that CVS, in fact, provided "financial inducements" to employers to *encourage* them to select The Program and forego the HIV/AIDS medication carve-out.  TAC ¶

United States District Court
Northern District of California

1

2.

2      Defendants argue that there is no allegation they treated Plaintiffs differently by offering

3   other non-HIV/AIDS patients a right to opt out of The Program. While such differential treatment

4   might underscore a defendant's deliberate indifference to those not offered an option, *see Mark H.*

5   *v. Hamamoto*, 620 F.3d 1090, 1099 (9th Cir. 2010) (holding that an entity's provision of autism

6   specific services to other students was evidence that the entity was deliberately indifferent in

7   denying the plaintiffs access to such services), the lack of unequal treatment would not in any way

8   negate the fact that Defendants failed to provide the Plaintiffs at issue a reasonable

9   accommodation. Therefore, Plaintiffs sufficiently allege facts to show that Defendants' failure to

10  afford a reasonable accommodation to patients needing HIV/AIDS medication violated federal

11  law and that their failure was intentional or done with deliberate indifference.

12  B.      Proxy discrimination

13      Plaintiffs also assert, as an independent legal theory, proxy discrimination.  Proxy

14  discrimination "arises when the defendant enacts a law or policy that treats individuals differently

15  on the basis of seemingly neutral criteria that are so closely associated with the disfavored group

16  that discrimination on the basis of such criteria is, constructively, facial discrimination against the

17  disfavored group."  *Pac. Shores Properties, LLC v. City of Newport Beach,* 730 F.3d 1142, 1160

18  n.23 (9th Cir. 2013).  "For example, discriminating against individuals with gray hair is a proxy

19  for age discrimination because the 'fit' between age and gray hair is sufficiently close."  *Id*.

20  (internal quotation marks omitted).

21      Here, The Program's encompassing of over 400 specialty medications, most of which are

22  not HIV/AIDS drugs and include drugs to treat cancer, psoriasis, osteoporosis, and asthma, among

23  others, is not "so closely associated" with people living with HIV such that it is facial

24  discrimination against people living with HIV.  Plaintiffs acknowledged "that HIV/AIDs is not the

25  only condition [treated by drugs on the specialty list] that is stigmatized.  *Doe One,* 348 F. Supp.

26  3d at 984.  Here, the alleged discrimination is different from the discrimination against individuals

27  with gray hair in *Pac. Shores Properties* that had a "sufficiently close" "fit" with discrimination

28  against older individuals.  730 F.3d at 1160 n.23.

United States District Court
Northern District of California

*Fuog v. CVS Pharmacy, Inc.,* 2022 WL 1473707 (D.R.I. 2022), cited by Plaintiffs, is inapposite. There, the court held the plaintiff stated a claim under Section 1557 on a proxy discrimination theory because CVS had a policy that specifically placed restrictions and limitations on large opioid prescriptions. *Id.* at *13-14, 21. The plaintiff's adequate allegations of a "sufficiently close" fit between the policy and her disability was supported by "reference to academic studies showing a reasonably strong correlation between disability and larger opioid prescriptions." *Id.* at *14. In contrast, here, Defendants place restrictions and limitations on over 400 specialty medications within The Program, covering a wide range of medications which treat many conditions other than HIV. Thus, no "sufficient fit exists to draw the discriminatory inference." *Id.* at *5.

The fact that The Program includes over 400 specialty medications does not, however, negate the possibility that it discriminates in other ways against plaintiffs who need HIV medication. *See Pac. Shores Props., Ltd. Liab. Co. v. City of Newport Beach*, 730 F.3d 1142, 1160 (9th Cir. 2013) ("Discriminatory laws, policies, or actions will often have negative effects (whether intended or not) on individuals who do not belong to the disfavored group. This does not, however, change the fact that such laws, policies, or actions are discriminatory when they are undertaken for the purpose of harming protected individuals."). As noted above, the denial of meaningful access of HIV/AIDS medication to people with HIV/AIDS by not affording a reasonable accommodation is a form of discrimination. The Ninth Circuit so found even when considering The Program's governance over numerous specialty medications for non-HIV/AIDS patients:

> Does allege the structure and implementation of the Program discriminates against them on the basis of their disability by preventing HIV/AIDS patients from obtaining the same quality of pharmaceutical care that non-HIV/AIDS patients may obtain in filling non-specialty prescriptions, thereby denying them meaningful access to their prescription drug benefit. Those allegations are sufficient to state an ACA disability discrimination claim.

*Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1211 (9th Cir. 2020). But this form of discrimination is not the same as proxy discrimination. Plaintiffs fail to allege disability discrimination on the theory of proxy discrimination because there is not a sufficiently tight "fit" to establish the

United States District Court
Northern District of California

1    medications covered by The Program are a proxy for discrimination on the basis of HIV/AIDS.

2    C.    Equitable restitution under UCL

3         Because California's Unfair Competition Law "is equitable in nature," *Korea Supply Co. v.*

4    *Lockheed Martin Corp.*, 29 Cal. 4th 1134, 131 Cal. Rptr. 2d 29, 63 P.3d 937, 943 (Cal. 2003),

5    remedies are "generally limited to injunctive relief and restitution." *Id.* (quoting *Cel-Tech*

6    *Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 83 Cal. Rptr. 2d 548, 973 P.2d 527, 539

7    (Cal. 1999)).  Specifically as to equitable restitution, it is intended "to restore to the plaintiff

8    particular funds . . . in the defendant's possession."  *Honolulu Joint Apprenticeship & Training*

9    *Comm. of United Ass'n Loc. Union No. 675 v. Foster,* 332 F.3d 1234, 1239 (9th Cir. 2003)

10   (internal quotation marks omitted).  "Under California law, there are two forms of disgorgement:

11   'restitutionary disgorgement, which focuses on the plaintiff's loss, and nonrestitutionary

12   disgorgement, which focuses on the defendant's unjust enrichment.'"  *Chowning v. Kohl's Dep't*

13   *Stores, Inc.*, 735 F. App'x 924, 925–26 (9th Cir. 2018) (quoting *Meister v. Mensinger*, 230 Cal.

14   App. 4th 381 (2014)).  Nonrestitutionary disgorgement is unavailable in UCL actions.  *Id.*

15        Here, Plaintiffs do not allege that they paid any money to Defendants "to purchase their

16   medications at an in-network community pharmacy."  The alleged higher out-of-pocket prices that

17   Plaintiffs paid are only in the possession of in-network community pharmacies, not Defendants

18   themselves.  Plaintiffs do not contest this point.  The Court dismisses Plaintiffs' claim for

19   equitable restitution under the UCL because the Defendants do not possess the allegedly lost

20   funds.

21   D.    John Doe 7

22        Defendants argue that John Doe 7's claims should be dismissed because the Court's Order

23   granting leave to amend the SAC did not mention a John Doe 7.  Docket No. 230 at 12.

24        Unless undue prejudice to the opposing party will result, the court should ordinarily permit

25   a party to amend its complaint.  *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973).

26   Here, Defendants have not shown any prejudice by Plaintiff's addition of Doe 7.  *See* Motion at

27   21.  The purpose of the Court's order granting leave to add John Doe 6 was to permit Plaintiffs to

28   add a Plaintiff with standing to seek injunctive relief.  The addition of John Doe 7, in addition to

23

John Doe 6, to add a Plaintiff with standing to seek injunctive relief is consistent with the Court's order and does not unfairly prejudice the Defendants.

## V.    <u>CONCLUSION</u>

The Court **DENIES** Defendants' motion to dismiss as to the claims for intentional disability discrimination under the ACA, injunctive relief, and John Doe 7.  The Court **GRANTs** Defendants' motion to dismiss as to the claims for proxy discrimination under the ACA, and equitable restitution under the UCL.

This Order disposes of Docket No. 242.

**IT IS SO ORDERED**.

Dated: April 18, 2024

_____
EDWARD M. CHEN
United States District Judge