**WHATLEY KALLAS, LLP**
Joe R. Whatley, Jr. (admitted *pro hac vice*)
jwhatley@whatleykallas.com
Edith M. Kallas (admitted *pro hac vice*)
ekallas@whatleykallas.com
Henry C. Quillen (admitted *pro hac vice*)
hquillen@whatleykallas.com
152 West 57th Street, 41st Floor
New York, NY 10019
Tel: (212) 447-7060
Fax: (800) 922-4851

Alan M. Mansfield (Of Counsel, SBN: 125998)
amansfield@whatleykallas.com
16870 W. Bernardo Dr., Suite 400
San Diego, CA 92127
Tel: (858) 674-6641
Fax: (855) 274-1888

C. Nicholas Dorman (admitted *pro hac vice*)
ndorman@whatleykallas.com
111 North Orange Ave., Suite 800
Orlando, FL 32801
Tel: (321) 325-6624
Fax: (800) 922-4851

**CONSUMER WATCHDOG**
Jerry Flanagan (SBN: 271272)
jerry@consumerwatchdog.org
Benjamin Powell (SBN: 311624)
ben@consumerwatchdog.org
Ryan Mellino (SBN 342497)
ryan@consumerwatchdog.org
6330 San Vicente Blvd., Suite 250
Los Angeles, CA 90048
Tel: (310) 392-0522
Fax: (310) 392-8874

**Attorneys for Plaintiffs**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

JOHN DOE ONE, RICHARD ROE, in his capacity as executor for JOHN DOE TWO, JOHN DOE SIX, and JOHN DOE SEVEN, on behalf of themselves and all others similarly situated and for the benefit of the general public,

          Plaintiffs,

          v.

CVS PHARMACY, INC.; CAREMARK, L.L.C.; CAREMARK CALIFORNIA SPECIALTY PHARMACY, L.L.C.; GARFIELD BEACH CVS, L.L.C.; CAREMARKPCS HEALTH, L.L.C.; and DOES 1–10, inclusive,

          Defendants.

Case No. 3:18-CV-1031-EMC

**CLASS ACTION**

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**

Action Filed: February 16, 2018
Hearing Date: March 13, 2025
Time: 1:30 p.m.
Judge: Hon. Edward M. Chen
Courtroom 5, 17th Floor

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

NOTICE OF MOTION .......................................................................................................... 1

ISSUES TO BE DECIDED ..................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 2

    I.        Introduction .................................................................................................. 2

    II.      Procedural Posture ....................................................................................... 4

    III.     Proposed Class Definition ............................................................................ 4

    IV.    Factual Basis for Class Certification ............................................................ 5

            A.     CVS's Pharmaceutical Care Services Are a Health Program or Activity Subject to Section 1557 ................................................. 5

            B.     Defendants Designed and Implemented the Program, Which Provides a Lesser Pharmacy Benefit Compared to Benefits Provided to Other Enrollees ............................................................................... 7

            C.     The Program's Restrictions Deny Individuals Prescribed HIV/AIDS Medications Meaningful Access to Pharmaceutical Care Services ........... 8

            D.     Defendants Were Aware of the Threat the Program Posed to Individuals Requiring HIV/AIDS Medications ......................................... 11

            E.     Defendants Offer No Accommodations Whatsoever to Individuals Requiring HIV/AIDS Medications ......................................... 12

    V.      General Class Action Requirements .................................................... 14

    VI.    Rule 23(a)'s Requirements for Class Certification Are Satisfied ....................... 15

            A.     The Class Is Sufficiently Numerous ....................................... 15

            B.     Commonality Is Satisfied Here Because the Litigation Will Be Driven by Common Answers to Class-Wide Questions ....................... 16

            C.     Plaintiffs' Claims Are Typical of the Claims of the Members of the Proposed Class ....................................................... 17

            D.     Plaintiffs and Plaintiffs' Counsel are Adequate ....................... 19

    VII.   Certification of the Proposed Class Is Proper under Rule 23(b)(1) ................... 20

    VIII.  Certification of the Proposed Class Is Proper under Rule 23(b)(2) ................... 22

    IX.    Certification of the Proposed Class Is Proper under Rule 23(c)(4) ................... 23

    X.      Conclusion ................................................................................ 25

i

1

## TABLE OF AUTHORITIES

2

**CASES**

3

*Alaska Ctr. for the Env't v. Browner*,
    20 F.3d 981 (9th Cir. 1994)...................................................................23

4

*Alexander v. Choate*,
    469 U.S. 287 (1985) ..........................................................................3

5

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997) ................................................................21, 22

6

*Armstrong v. Davis*,
    275 F.3d 849 (9th Cir. 2001).................................................................16

7

*Baby Neal v. Casey*,
    43 F.3d 48 (3d Cir. 1994)..................................................................18

8

*Berry v. Schulman*,
    807 F.3d 600 (4th Cir. 2015)................................................................22

9

*California Coal. for Women Prisoners v. United States*,
    No. 4:23-CV-4155-YGR, 2024 WL 1290766 (N.D. Cal. Mar. 15, 2024)...................19

10

*Castillo v. Bank of Am., NA*,
    980 F.3d 723 (9th Cir. 2020)................................................................17

11

*Chamberlan v. Ford Motor Co.*,
    223 F.R.D. 524 (N.D. Cal. 2004).............................................................18

12

*CVS Pharmacy, Inc. v. Doe One*,
    142 S. Ct. 480 (2021) ........................................................................4

13

*D.C. by & through Garter v. Cnty. of San Diego*,
    No. 15CV1868-MMA (NLS), 2018 WL 692252 (S.D. Cal. Feb. 1, 2018),
    *aff'd*, 783 F. App'x 766 (9th Cir. 2019)....................................................24

14

*D.T. by & through K.T. v. NECA/IBEW Fam. Med. Care Plan*,
    No. C17-00004 RAJ, 2019 WL 1354091 (W.D. Wash. Mar. 26, 2019) ...................21

15

*Davis v. Lab'y Corp. of Am. Holdings*,
    No. CV 20-0893 FMO (KSX), 2022 WL 22855520
    (C.D. Cal. June 13, 2022)....................................................................15

16

*Des Roches v. Cal. Physicians' Serv.*,
    320 F.R.D. 486 (N.D. Cal. 2017).............................................................21

17

*Doe One v. CVS Pharmacy, Inc.*,
    348 F. Supp. 3d 967 (N.D. Cal. 2018) ......................................................4

18

*Doe One v. CVS Pharmacy, Inc.*,
    No. 18-CV-01031-EMC, 2024 WL 1707229 (N.D. Cal. Apr. 18, 2024) ...............3, 4, 11

19

*Doe v. CVS Pharmacy, Inc.*,
    982 F.3d 1204 (9th Cir. 2020)..............................................................2, 3, 4

20

*Duvall v. Cnty. Of Kitsap*,
    260 F.3d 1124 (9th Cir. 2001)...............................................................11

21

*Elkins v. Dreyfus*,
    No. 10-cv-01366-MJP, 2011 WL 3438666 (W.D. Wash. Aug. 5, 2011) ...................23

22

*Escalante v. Cal. Physicians' Serv.*,
    309 F.R.D. 612 (C.D. Cal. 2015) ...........................................................21

23

24

25

26

27

28

*Fain v. Crouch*,
    342 F.R.D. 109 (S.D. W. Va. 2022) ...................................................................... 15, 22

*Flack v. Wis. Dep't of Health Servs.*,
    331 F.R.D. 361 (W.D. Wis. 2019) ................................................................................ 15

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982) ......................................................................................................... 14

*Greater Los Angeles Council on Deafness, Inc. v. Zolin*,
    812 F.2d 1103 (9th Cir. 1987) ...................................................................................... 22

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ................................................................................ 16, 19

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ........................................................................................ 17

*Huynh v. Harasz*,
    No. 14-CV-02367-LHK, 2015 WL 7015567 (N.D. Cal. Nov. 12, 2015) ................ 17

*In re Myford Touch Consumer Litig.*,
    No. 13-CV-03072-EMC, 2016 WL 7734558
    (N.D. Cal. Sept. 14, 2016) (Chen, J.) ................................................................... 18, 19

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    148 F.3d 283 (3rd Cir. 1998) ........................................................................................ 22

*In re Tri-State Crematory Litig.*,
    215 F.R.D. 660 (N.D. Ga. 2003) .................................................................................. 25

*James v. Uber Techs. Inc.*,
    338 F.R.D. 123 (N.D. Cal. 2021) (Chen, J.) ........................................................... 5, 17

*Kamakahi v. Am. Soc'y for Reproductive Medicine*,
    305 F.R.D. 164 (N.D. Cal. 2015) ................................................................................. 24

*Kanawi v. Bechtel Corp.*,
    254 F.R.D. 102 (N.D. Cal. 2008) ................................................................................. 21

*Lyon v. U.S. Immigr. & Customs Enf't*,
    300 F.R.D. 628 (N.D. Cal. 2014) (Chen, J.), *modified*, 308 F.R.D. 203
    (N.D. Cal. 2015) (Chen, J.) ........................................................................................... 15

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ........................................................................................ 16

*Med. Soc'y of N.Y. v. UnitedHealth Grp. Inc.*,
    332 F.R.D. 138 (S.D.N.Y. 2019) .................................................................................. 21

*Meidl v. Aetna, Inc.*,
    No. 15-CV-1319 (JCH), 2017 WL 1831916 (D. Conn. May 4, 2017) .................... 21

*Mendoza v. Casa de Cambio Delgado, Inc.*,
    No. 07CV2579(HB), 2008 WL 3399067 (S.D.N.Y. Aug. 12, 2008) ....................... 25

*Nguyen v. Baxter Healthcare Corp.*,
    275 F.R.D. 596 (C.D. Cal. 2011) ................................................................................. 19

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
    31 F.4th 651 (9th Cir. 2022) ......................................................................................... 16

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) ................................................................................ *passim*

*Rahman v. Mott's LLP*,
    693 F. App'x 578 (9th Cir. 2017) ................................................................................. 24

*Sandoval v. Cty. of Sonoma*,
    No. 11-CV-05817-TEH, 2015 WL 1926269 (N.D. Cal. Apr. 27, 2015) ......................... 4

*Skinner v. Best Buy Co.*,
    No. 2:06-CV-03749-FMC-EX, 2008 WL 11337319 (C.D. Cal. May 19,
    2008) ..................................................................................................................... 18

*Slaven v. BP Am., Inc.*,
    190 F.R.D. 649 (C.D. Cal. 2000) ................................................................................ 24

*Sloan v. Gen. Motors LLC*,
    No. 16-CV-07244-EMC, 2020 WL 1955643 (N.D. Cal. Apr. 23, 2020)
    (Chen, J.) ............................................................................................................... 15

*Stearns v. Ticketmaster Corp.*,
    655 F.3d 1013 (9th Cir. 2011)..................................................................................... 18

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*,
    308 F.R.D. 630 (N.D. Cal. 2015) (Chen, J.) ............................................................... 24

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ............................................................................... 14, 16, 17, 22

*Walters v. Reno*,
    145 F.3d 1032 (9th Cir. 1998) .................................................................................... 15

*Williams v. Boeing Co.*,
    225 F.R.D. 626 (W.D. Wash. 2005) ............................................................................. 3

*Wit v. United Behav. Health*,
    317 F.R.D. 106 (N.D. Cal. 2016), *aff'd in part, rev'd in part on other*
    *grounds and remanded*, 79 F.4th 1068 (9th Cir. 2023) ............................................... 21

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010).................................................................................... 18

*Z.D. ex rel. J.D. v. Grp. Health Co-op.*,
    No. C11-1119RSL, 2012 WL 1977962 (W.D. Wash. June 1, 2012) ..................... 22, 23

**STATUTES**

29 U.S.C. § 794 ........................................................................................................... 2, 4, 5

42 U.S.C. § 18116 .......................................................................................................... *passim*

**OTHER AUTHORITIES**

7A Charles Alan Wright & Arthur R. Miller,
    Federal Practice and Procedure § 1763 (4th ed. 2022) ................................................ 16

www.CVS.com, "CVS Pharmacy stores by state," https://www.cvs.com/store-
    locator/cvs-pharmacy-locations ................................................................................... 8

Jennifer Kates & Lindsey Dawson,
    *Insurance Coverage Changes for People with HIV Under the ACA*,
    Kaiser Family Foundation (Feb. 14, 2017) ..................................................................... 8

Manual for Complex Litigation § 21.24 (4th ed) ............................................................... 24

William B. Rubenstein,
    2 Newberg on Class Actions 4:90 (5th ed. 2012) ........................................................ 24

Wright & Miller,
    7AA Fed. Prac. & Proc. Civ. § 1776 (3d ed.) ............................................................... 25

**RULES**

Fed. R. Civ. P. 23(a)(1) .................................................................................................. 15

iv

Fed. R. Civ. P. 23(a)(2) ........................................................................................ 16

Fed. R. Civ. P. 23(a)(3) .................................................................................... 17, 18

Fed. R. Civ. P. 23(a)(4) .................................................................................... 19, 20

Fed. R. Civ. P. 23(b)(1) .............................................................................. 3, 14, 20, 21

Fed. R. Civ. P. 23(b)(2) .............................................................................. 3, 14, 15, 22

Fed. R. Civ. P. 23(c)(4) .................................................................................... *passim*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>NOTICE OF MOTION</u>**

PLEASE TAKE NOTICE that on March 13, 2025, at 1:30 p.m., or as soon thereafter as the matter may be heard, in the United States District Court, Northern District of California, San Francisco Division, Courtroom 5, before the Honorable Edward M. Chen, Plaintiffs will move pursuant to Federal Rule of Civil Procedure 23 for an Order certifying the class herein described. This Motion is made with good cause and satisfies all requirements of Federal Rule of Civil Procedure Rule 23 and existing case law.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the supporting Declarations of Benjamin R. Powell and Alan M. Mansfield, the pleadings on file in this action, and upon such other matters presented to the Court at the time of the hearing on this Motion.

**<u>ISSUES TO BE DECIDED</u>**

Whether Plaintiffs satisfy all of the factors for certifying the proposed class pursuant to Federal Rule of Civil Procedure Rule 23(b)(1), (b)(2), and (c)(4).

DATED: November 1, 2024

**WHATLEY KALLAS LLP**

*/s/ Henry C. Quillen*
Henry C. Quillen (admitted *pro hac vice*)
hquillen@whatleykallas.com
Joe R. Whatley, Jr. (admitted *pro hac vice*)
jwhatley@whatleykallas.com
Edith M. Kallas (admitted *pro hac vice*)
ekallas@whatleykallas.com
152 West 57th Street, 41st Floor
New York, NY 10019
Tel: (212) 447-7060 / Fax: (800) 922-4851

Alan M. Mansfield (SBN: 125998)
amansfield@whatleykallas.com
16870 W. Bernardo Dr., Suite 400
San Diego, CA 92127
Tel: (858) 674-6641 /Fax: (855) 274-1888

C. Nicholas Dorman (admitted *pro hac vice*)
ndorman@whatleykallas.com
111 North Orange Ave., Suite 800
Orlando, FL 32801
Tel: (321) 325-6624 / Fax: (800) 922-4851

*Attorneys for Plaintiffs*

1

## MEMORANDUM OF POINTS & AUTHORITIES

### I.    Introduction

This is a disability discrimination class action brought by Plaintiffs John Doe 1, John Doe 2, through his Executor Richard Roe, John Doe 6, and John Doe 7, who are (or in the case of John Doe 2, were) people prescribed HIV/AIDS Medications.[1] The Defendants are five subsidiaries[2] of CVS Health Corporation that provide a range of prescription drug benefits and services ("pharmaceutical care services"). Prior to the plan changes at issue in this action, Plaintiffs could fill their prescriptions at any network pharmacy, where they were able to consult knowledgeable pharmacists who were familiar with their medical histories and could, *inter alia*, make adjustments to their drug regimens to avoid dangerous drug interactions or remedy potential side effects. However, Defendants designed and implemented a prescription drug benefit program ("the Program") under which Defendants now deliver such medications only by mail, or by drop shipments to CVS-branded retail pharmacies for pickup. As a result, in-person pharmacy benefits and services are unavailable for people obtaining medications used to treat and prevent HIV and AIDS, even though such services remain available to individuals whose medications are not subject to the Program. Additionally, the Program undermines timely access to life-saving medications due to shipment delays and raises serious privacy concerns.

Plaintiffs challenge the Program under the Affordable Care Act's ("ACA") non-discrimination provision, codified at 42 U.S.C. § 18116 (also known as "Section 1557"). "Section 1557 of the ACA incorporates the anti-discrimination provisions of various civil rights statutes, and prohibits discrimination . . . on the basis of disability pursuant to Section 504 of the Rehabilitation Act (29 U.S.C. § 794)." *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1208–09 (9th Cir. 2020) ("*CVS Pharmacy, Inc.*"). The relevant inquiry under Section 504 of the Rehabilitation Act, and thus under Section 1557, is "whether the plan provided meaningful access to the benefit." *Id.* at 1211. If not, "reasonable accommodations in the grantee's program or benefit may have to be made." *Doe One*

---

[1] Unless otherwise indicated, all defined terms have the same meaning as those terms are used in the Third Amended Complaint ("TAC") filed with this Court on September 11, 2023.

[2] CVS Pharmacy, Inc.; Caremark, L.L.C.; Caremark California Specialty Pharmacy, L.L.C.; CaremarkPCS Health, L.L.C.; Garfield Beach CVS, L.L.C. (collectively, "CVS" or "Defendants").

*v. CVS Pharmacy, Inc.*, No. 18-CV-01031-EMC, 2024 WL 1707229, at *4 (N.D. Cal. Apr. 18, 2024) ("*Doe One*") (*quoting Alexander v. Choate,* 469 U.S. 287, 301 (1985)). The Ninth Circuit previously ruled that Plaintiffs "have adequately alleged that they were denied meaningful access to their prescription drug benefit, including medically appropriate dispensing of their medications and access to necessary counseling." *CVS Pharmacy, Inc.*, 982 F.3d at 1211. Yet, Defendants continue to offer no exceptions or accommodations of any kind to individuals taking HIV/AIDS Medications that are subject to the Program.

Class certification in this case is proper. The resolution of the key legal question—whether Defendants are required to make reasonable accommodations available to individuals prescribed HIV/AIDS Medications—will determine the rights of all enrollees in plans with pharmacy benefits administered by Defendants and who are subject to the Program. Class actions are specifically designed to address, in one proceeding, this type of systematic violation of the law. Here, Defendants uniformly administer the Program that affects tens of thousands of similarly situated enrollees requiring HIV/AIDS Medications. Those harmed are entitled to seek remedies under Section 1557, including injunctive and declaratory relief, as well as damages. A class action is by far the most efficient process to resolve these issues.

Specifically, Plaintiffs here seek certification of a proposed class under Federal Rule of Civil Procedure 23 ("Rule 23") (b)(1), (b)(2), and (c)(4). The Court should certify a class of past and current participants and beneficiaries who obtained HIV/AIDS Medications in health plans for which Defendants administered or administer the Program. Once certified, the class can obtain class-wide declaratory relief that the Program violates the ACA, and an injunction prohibiting Defendants from refusing to provide for reasonable accommodations in the future. Certification of an issue class on the question of Defendants' liability for deliberate indifference to their violation of class members' rights will also permit class members to pursue claims for damages in individual proceedings without having to individually prove the liability for deliberate indifference, which is common to all members of the class. This presents the "ideal case" for certification of a class to address systemic civil rights violations, as "broad class-wide injunctive relief is necessary to redress group-wide injury." *Williams v. Boeing Co.*, 225 F.R.D. 626, 631 (W.D. Wash. 2005); *Parsons v.*

3

*Ryan*, 754 F.3d 657, 686 (9th Cir. 2014) ("the primary role of [Rule 23(b)(2)] has always been the certification of civil rights class actions").

## II.        Procedural Posture

This Court dismissed Plaintiffs' First Amended Complaint with prejudice. *Doe One v. CVS Pharmacy, Inc.*, 348 F. Supp. 3d 967 (N.D. Cal. 2018). The Ninth Circuit affirmed in part and reversed in part, finding that Plaintiffs stated viable causes of action under the ACA, and under California's Unfair Competition Law to the extent that claim relied on an ACA violation. *CVS Pharmacy, Inc.*, 982 F.3d at 1212, 1214. Defendants appealed and the Supreme Court granted certiorari; however, Defendants withdrew the case after briefing but before oral argument. *CVS Pharmacy, Inc. v. Doe, One*, 142 S. Ct. 480 (2021). Defendants subsequently filed three additional motions in this Court challenging the pleadings, all of which were unsuccessful—one regarding the adequacy of allegations regarding Defendants' receipt of federal financial assistance, and two primarily regarding allegations of Defendants' "deliberate indifference" for failing to adequately respond to Plaintiffs' requests for accommodations. Docket Nos. 183, 208, 242. As to the latest challenge to the TAC, the Court granted in part and denied in part Defendants' Motion to Dismiss, finding that Plaintiffs had stated claims for "intentional disability discrimination under the ACA" sufficient to support financial damages, and that John Doe Six and John Doe Seven have standing to seek an injunction. *Doe One*, 2024 WL 1707229, at *6, *13.[3]

## III.       Proposed Class Definition

Plaintiffs move for certification of the following class:

> All persons currently or previously enrolled in or covered by a health plan since January 1, 2015, in which the prescription drug benefit is or was administered by CVS and who: (i) obtain or obtained HIV/AIDS Medications; and (ii) have been required to participate in the Program with no right to seek reasonable accommodations or notice of their rights, but not including individual claims for personal injury or bodily harm.[4]

---

[3] As noted in this Court's Order, a defendant "can be liable for damages under § 504 of the Rehabilitation Act [and therefore, the ACA] if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons. . . . In other words, . . . intentional discrimination may be established by a showing of 'deliberate indifference.'" *Doe One*, 2024 WL 1707229, at *6 (citations omitted).

[4] This proposed class definition is narrowed from the definition in the TAC. The Court may consider the proposal without requiring amendment of Plaintiffs' complaint. *See Sandoval v. Cnty. of Sonoma*, No. 11-CV-05817-TEH, 2015 WL 1926269, at *2 (N.D. Cal. Apr. 27, 2015).

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION                    CASE NO. 3:18-CV-1031-EMC

"Membership in this class is objectively ascertainable from [Defendants'] business records." *See James v. Uber Techs. Inc.*, 338 F.R.D. 123, 130 (N.D. Cal. 2021) (Chen, J.). Defendants do not dispute that they maintain business records with respect to each of their health plan clients, nor is there any dispute that those records will reveal whether a putative class member was a member of a plan that was subject to the Program during the class period. Transcript of 30(b)(6) Deposition ("Transcript"), Sept. 17, 2024, at 85:6–89:22. (A true and correct copy of the Transcript is attached as Exhibit 2 to the concurrently filed Declaration of Benjamin R. Powell.) The ascertainability requirement is satisfied.

## IV.     Factual Basis for Class Certification

### A.     CVS's Pharmaceutical Care Services Are a Health Program or Activity Subject to Section 1557

Each of the Defendants participate in the provision of the "health program or activity" at issue: Plaintiffs' pharmaceutical care services.[5]

Defendants CVS Pharmacy, Inc., Garfield Beach CVS, L.L.C., and Caremark California Specialty Pharmacy, L.L.C. ("CSP") are pharmacies (collectively, the "Pharmacy Defendants"), and Caremark, L.L.C. and Caremark PCS Health, L.L.C., are pharmacy benefit managers, or PBMs (collectively, the "PBM Defendants"). Transcript 136:11–138:15; *see also* Defs.' Motion to Dismiss TAC, Oct. 24, 2023, 3:10–14, Docket No. 242. Activities that typically fall to the PBM Defendants include plan design offerings and administration, formulary management, retail pharmacy network management services, mail order pharmacy, and specialty pharmacy. Transcript, 130:10–131:18, 136:13–20, 139:16–140:21, 141:2–13.[6] The PBM Defendants also contract with health plans sponsored by employers, insurers, and government agencies to administer the prescription benefit offered under the client's health plan. Transcript, 28:19–29:7. Caremark, L.L.C. and CaremarkPCS Health, L.L.C., both PBM Defendants, developed the "Specialty Pharmacy Distribution Drug List" formulary that causes HIV/AIDS Medications to be subject to Program. Transcript, 152:4–8. Caremark, L.L.C. established the nation-wide network of pharmacies where

---

[5] Section 1557 provides that "an individual shall not, on the ground prohibited under [Section 504 of the Rehabilitation Act], be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance." 42 U.S.C. § 18116(a).

[6] *See also* Powell Decl. ¶ 12.

5

consumers obtain their medications under the terms of their healthcare plans, which includes approximately 9,000 CVS-branded retail pharmacies and approximately 59,000 non-CVS branded network pharmacies. Transcript, 64:10–65:1, 98:11–22, 140:8–21.[7]

CVS pharmacies, on the other hand, sell prescription drugs and a wide assortment of health and wellness products and general merchandise, and provide health care services and medical diagnostic testing, among other things. Transcript, 142:8–144:3, 147:10–14.[8] CVS Pharmacy, Inc. is responsible for dispensing Plaintiffs' mail-order prescriptions at retail, and providing support to putative class members related to their HIV/AIDS Medications. Transcript, 142:8–144:3, 147:10–14. CSP was owned and controlled by PBM Defendant Caremark, L.L.C, and operated a member call center for the Program until 2021. Transcript, 129:12–19. Garfield Beach CVS, L.L.C., another Pharmacy Defendant, operates CVS retail pharmacies in California, including CVS pharmacies where drop-shipment deliveries of HIV/AIDS Medications for members subject to the Program are received. Transcript, 138:11–15.

Defendant CVS Pharmacy, Inc., is a direct subsidiary of CVS Health Corporation. Transcript, 127:9–12.[9] CVS Pharmacy, Inc., is, in turn, the direct or indirect parent company of all of the other Pharmacy Defendants and the PBM Defendants.[10] According to CVS Health Corporation's 2023 10-K filing with the Securities and Exchange Commission, Defendants receive a "significant portion" of their revenue from the federal government.[11] CVS Pharmacy, Inc. explicitly acknowledged on its website that it is subject to Section 1557:

**Nondiscrimination and Accessibility Notice (ACA § 1557)**

CVS Pharmacy, Inc. complies with applicable Federal civil rights laws and does not discriminate on the basis of race, color, national origin, age, disability, or sex. CVS Pharmacy, Inc. does not exclude people or treat them differently because of race, color, national origin, age, disability, or sex.

Powell Decl. ¶ 15. Defendants' "CVS Specialty" health program, which includes all Defendants and coordinates mail-order delivery of HIV/AIDS Medications and provides other pharmaceutical

---

[7] *See also* Powell Decl. ¶ 13.
[8] *See also* Powell Decl. ¶ 12.
[9] *See also* Powell Decl. ¶ 14
[10] *Id.*
[11] Powell Decl. ¶ 12.

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION                    CASE NO. 3:18-CV-1031-EMC

benefits for individuals subject to the Program (Transcript, 130:10–134:8), likewise acknowledges that it is subject to Section 1557. Powell Decl. ¶ 16.

### B. Defendants Designed and Implemented the Program, Which Provides a Lesser Pharmacy Benefit Compared to Benefits Provided to Other Enrollees

Plaintiffs are or were enrolled in health plans for which CVS administers or administered prescription drug benefits covering HIV/AIDS Medications. Doe One Decl. ¶ 2; Roe Decl. ¶ 2; Doe Six Decl. ¶ 5; Doe Seven Decl. ¶ 4. CVS designed and implemented the Program applying to HIV/AIDS Medications beginning in 2013. Transcript, 31:9–20. The features of the Program are uniform for plans that employ it (i.e., all plans that adopt it have similar features). Transcript, 23:6–17, 66:11–17. CVS continues to administer the Program and has no plans to stop offering it as the default option to its employer and health plan clients. Transcript, 73:17–74:5.

Before CVS adopted the Program, Plaintiffs could access the same prescription-drug benefit as other enrollees. Transcript, 23:4–17, 31:13–33:6. Plaintiffs could obtain HIV/AIDS Medications from any network pharmacy, including non-CVS-branded pharmacies, and obtain the full range of pharmaceutical care services offered by CVS to other enrollees. Doe One Decl. ¶ 4; Roe Decl. ¶ 4; Doe Six Decl. ¶ 8; Doe Seven Decl. ¶ 6.

Under the Program, however, Plaintiffs must obtain their HIV/AIDS Medications only through the mail or by drop-shipment to a CVS-branded pharmacy, without the ability to consult with a knowledgeable pharmacist about their HIV/AIDS Medication. Doe One Decl. ¶ 7; Roe Decl. ¶¶ 8, 13; Doe Six Decl. ¶¶ 10, 17; Doe Seven Decl. ¶¶ 8, 15. In comparison, medications outside the Program may be obtained at any of the 68,000 pharmacies in CVS's pharmacy network, including non-CVS branded pharmacies, with in-person access to a pharmacist and other in-person pharmacy benefits. Transcript, 97:8–22. Therefore, under the Program, putative class members not only lose access to knowledgeable pharmacists, they also lose access to approximately 87% of the network pharmacies available to other enrollees not subject to the Program (1 − 9,000/68,000 = .87). Moreover, some states only have a handful of CVS-branded retail pharmacies available for putative class members subject to the Program. Transcript, 67:11–68:1.[12]

---

[12] *See also* www.CVS.com, "CVS Pharmacy stores by state," https://www.cvs.com/store-locator/cvs-pharmacy-locations (last visited Oct. 22, 2024).

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION                    CASE NO. 3:18-CV-1031-EMC

1
2
3
4
5
6

Moreover, the pharmacists at CVS-branded pharmacies where drop-shipments are received lack access to Plaintiffs' medical histories and the full range of their medications. Doe One Decl. ¶¶ 11–12; Roe Decl. ¶¶ 10, 12–14; Doe Six Decl. ¶ 19; Doe Seven Decl. ¶ 16. As a result, those pharmacists cannot provide information about potentially dangerous drug interactions, which are unfortunately common with HIV/AIDS Medications. Summary Opinions of Michelle J. Sherman ("Sherman Decl.") ¶ 30.

7
8

### C.    The Program's Restrictions Deny Individuals Prescribed HIV/AIDS Medications Meaningful Access to Pharmaceutical Care Services

9
10

HIV-positive individuals have historically faced discrimination throughout the healthcare system, and Section 1557 is one of "[s]everal key provisions of the ACA" that "removed these barriers."[13] However, under the Program, Plaintiffs have experienced:

11
12
13

- Inability to continue using network pharmacies where they have developed longstanding relationships with their pharmacists, who know their medical histories. Doe One Decl. ¶¶ 2, 5, 15; Roe Decl. ¶¶ 2, 8, 12; Doe Six Decl. ¶¶ 1, 18.

14
15
16
17
18
19

- Loss of face-to-face interactions with a knowledgeable pharmacist necessary to, *inter alia*, detect potentially harmful adverse drug interactions that are unfortunately common with HIV/AIDS Medications, manage issues of adherence, side effects, dosing complications, and implement immediate changes in drug regimens in the event they become resistant to their current medication. Doe One Decl. ¶¶ 5, 7, 10–12, 15; Roe Decl. ¶¶ 6, 8–10, 12–14; Doe Six Decl. ¶¶ 10, 17–18; Doe Seven Decl. ¶¶ 8, 15–17; Sherman Decl. ¶ 30.

20
21
22

- Ineffective phone support staff lacking specialized training regarding HIV/AIDS Medications. Doe One Decl. ¶ 15; Roe Decl. ¶¶ 9, 13, 15, 17–20; Doe Six Decl. ¶ 12; Doe Seven Decl. ¶¶ 9–10, 14, 18–19, 21–22, 28; Sherman Decl. ¶ 55.

23
24
25
26

- Delays or interruptions in receiving HIV/AIDS Medications, including concerns over missed doses, which could dangerously undermine the strict adherence necessary to prevent serious health consequences. Doe Six Decl. ¶¶ 12, 20–22; Doe Seven Decl. ¶¶ 10–14, 18–20, 24–25, 32; Sherman Decl. ¶ 37.

27
28

---

[13] Jennifer Kates & Lindsey Dawson, *Insurance Coverage Changes for People with HIV Under the ACA*, Kaiser Family Foundation (Feb. 14, 2017), https://tinyurl.com/3vw4kj7b.

8

- Delivery problems, including HIV/AIDS Medications being left outside baking in the sun, that undermine the medication's efficacy and contribute to the risk of the medication being stolen. Doe One Decl. ¶ 9; Doe Seven Decl. ¶¶ 10–14, 18, 32; Sherman Decl. ¶¶ 59, 62.

- Personal liberty issues relating to risk of lost or stolen shipments left at their door or in their mailbox. Alternatively, the recipient must be present when the package is delivered, thus forcing the patient to obtain needed medications on the uncertain schedule of the delivery person, which raises further privacy and personal liberty concerns. Doe One Decl. ¶ 9; Doe Six Decl. ¶ 13; Doe Seven Decl. ¶¶ 18–20, 24–26, 32.

- Serious privacy concerns for people living with HIV who are required to receive regular, conspicuous deliveries at their workplace or in their neighborhoods, or interact with personnel at CVS-branded pharmacies that are insensitive to their medical and privacy needs. Doe One Decl. ¶ 14; Roe Decl. ¶¶ 7–8, 21–22, 26–28; Doe Six Decl. ¶¶ 9, 14.

- Additional time spent coordinating with multiple pharmacies (for specialty and non-specialty drugs), increasing the risk of adverse drug interactions. Doe One Decl. ¶ 12; Sherman Decl. ¶¶ 41–51.

- Loss of financial assistance from programs like government programs and co-pay assistance cards. Doe One Decl. ¶¶ 10, 15; Doe Seven Decl. ¶ 22.

- Increased stress as a result of dealing with the totality of challenges under the Program, which undermines the human immune system and is particularly detrimental to people with chronic illnesses. Doe One Decl. ¶ 16; Roe Decl. ¶ 24; Doe Six Decl. ¶¶ 12, 22–23; Doe Seven Decl. ¶¶ 21, 23, 29; Sherman Decl. ¶¶ 54-57.

"The declarations of John Doe One, Richard Roe, John Doe Six, and John Doe Seven raise clinically significant issues resulting from the Program . . . Defendants' actions are clearly undermining the health and well-being of people living with HIV/AIDS . . . ." Sherman Decl. ¶ 63. These threats to Plaintiffs' health and privacy "undermine the efficacy of prescription drug benefits under Plaintiffs' health plans and lead to both a loss of access to those benefits, including dispensing of their medications at their established community pharmacies where they can also receive critical counseling, and to poor health outcomes in general for those suffering from HIV." *Id.* at ¶ 64.

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION                    CASE NO. 3:18-CV-1031-EMC

Specifically, the Program causes a loss of meaningful access to the prescription drug services offered by CVS because:

- Given the stigma surrounding HIV/AIDS, which can dramatically impede access to care, there is a heightened degree of importance for people prescribed HIV/AIDS Medications to be able to access network pharmacies where they have developed longstanding relationships with their pharmacists, who know their medical histories. *Id.* at ¶¶ 13, 15–17, 19, 26, 30, 47. "Defendants' mail-order Program continues and amplifies the negative health outcomes associated with HIV stigma." *Id.* at ¶ 17.

- The health of HIV/AIDS patients is dramatically compromised by cutting off access to knowledgeable pharmacists who play a critical role in ensuring stable access to medications to treat HIV/AIDS and providing necessary counseling for people prescribed HIV/AIDS Medications, including managing side-effects and potentially dangerous drug interactions issues that are unfortunately common with HIV/AIDS Medications, as well providing quick transitions to new medications should the virus develop resistance to current treatments. *Id.* at ¶¶ 24–25, 27, 30, 35, 47–48, 50, 63.

- Delivery problems and delays due to the mail-delivery may cause interruptions in access to HIV/AIDS Medications that risk reductions in adherence to HIV/AIDS Medications, which can result in serious and harmful health outcomes for individuals living with HIV/AIDS. *Id.* at ¶¶ 31, 33–34, 37, 63. For example, the increased risk to patient health under the Program is reflected in Doe Seven's declaration, which describes the difficulty he has experienced in obtaining his prescriptions before leaving the country for work as an airline attendant, which has resulted in missed dosages. *Id.* at ¶¶ 38–39; Doe Seven Decl. ¶¶ 11, 32.

- Storage at high temperatures during the delivery of HIV/AIDS Medications can quickly degrade the potency and stability of many HIV/AIDS Medications, negatively affecting the patient's health and clinical outcomes. Sherman Decl. ¶¶ 58–63.

- Privacy breaches and fear of HIV-status disclosure can have serious consequences, including creating barriers to prevention, testing, treatment, and support for people living with or at risk for HIV/AIDS. *Id.* at ¶¶ 15–17, 19–20, 22–23, 63.

10

- Increased complexity as a result of having to navigate multiple pharmacies for specialty and non-specialty medications increases the risk of harmful drug interactions, among other problems, and also reduces adherence to antiretroviral therapy for people prescribed HIV/AIDS Medications, resulting in negative health outcomes. *Id*. at ¶ 41–51, 63.

- Clinically significant stress like that experienced by Plaintiffs as a result of the Program undermines the human immune system and is particularly detrimental to people with chronic illness. *Id*. at ¶¶ 52–57, 63.

### D.    Defendants Were Aware of the Threat the Program Posed to Individuals Requiring HIV/AIDS Medications

Defendants were well aware that the Program posed a substantial risk of harm to individuals obtaining HIV/AIDS Medications.[14] For example, around the time the Program was adopted, Defendants prepared an internal PowerPoint concerning litigation (brought by Plaintiffs' counsel) over the health impacts of other health care companies' HIV mail-order programs and resulting media coverage, which identified the need for CVS to raise "Cross-organizational Senior Leader Awareness for Long-term and Short-term Strateg[ies]." Transcript, 116:7–119:9.[15] Later, in response to an inquiry from a plan sponsor client about a news article regarding a lawsuit against Aetna, Inc. (now a subsidiary of CVS) over that company's mail order program for HIV medications, Defendants replied: "Definitely lots in the news lately on HIV coverage and Exchange plans. Our Legal team and Senior leaders are following closely." Transcript, 172:3–173:3.[16] Yet another internal PowerPoint reported that "[s]pecialty satisfaction scores are lagging for members who fill HIV medications at CVS Specialty," and then went on to summarize many of the same member health concerns raised in this lawsuit: poor "knowledge of HIV therapies among [r]etail pharmacy staff," shipping delays, delivery errors, and concomitant stress and frustration among members. Transcript, 210:9–225:17.[17] Defendants were also aware that plan sponsors involved in certain industries, including the "airline industry, entertainment, [and] retail" may have particular

---

[14] "To show 'deliberate indifference,' a plaintiff must establish the defendant's '[1] knowledge that a harm to a federally protected right is substantially likely, and [2] a failure to act upon that [] likelihood.'" *Doe One*, 2024 WL 1707229, at *6 (*quoting Duvall v. Cnty. Of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001)).

[15] *See also* Powell Decl. ¶ 17.

[16] *See also* Powell Decl. ¶ 18.

[17] *See also* Powell Decl. ¶ 19.

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION                    CASE NO. 3:18-CV-1031-EMC

concerns over the Program due to delivery problems when members are traveling for work. Transcript, 203:14–207:4.[18] In fact, John Doe Seven, a flight attendant, has experienced these precise problems, resulting in missed doses and increased health risk. Doe Seven Decl. ¶¶ 11, 32; *see also* Sherman Decl. ¶ 38. Moreover, Defendants admit that the Program was designed to limit member choice and increase revenue by up to $69 million dollars by preventing "leakage" of HIV/AIDS Medications, the euphemism Defendants used to describe their loss of revenue prior to the Program when a member could purchase HIV/AIDS Medications from non-CVS pharmacies. Transcript, 88:9–93:20.[19]

### E.    Defendants Offer No Accommodations Whatsoever to Individuals Requiring HIV/AIDS Medications

Before suing, Plaintiffs sought accommodations under the Program that would restore access to the same pharmaceutical care services available to other enrollees who do not require medications subject to the Program. John Doe One called and emailed CVS Customer Service requesting an explanation for why his HIV medications were halted at the in-network retail pharmacy, and stated he believed this limitation on access to his HIV/AIDS Medications and the denial of his opt-out requests were unlawful. Doe One Decl. ¶¶ 5–6. John Doe One then submitted accommodations requests and subsequent appeals in the manner directed by his plan documents Doe One Decl. ¶ 13. John Doe Two contacted Defendants multiple times about his concerns with the Program and submitted written accommodation requests in the manner set forth in his plan documents. Roe Decl. ¶¶ 2, 15–16, 20, 23, 25. John Doe Two's husband, Richard Roe, also made accommodation requests to the employer plan sponsor, and John Doe Two submitted a letter to the then-CEO of CVS explaining his concerns with the Program due to his disability and requested a reasonable accommodation in the form of opting out of the Program. *Id.* at ¶¶ 21–22. John Doe Six contacted his former employer, Cisco Systems, Inc., to request an accommodation in the form of an opt-out due to his health and privacy concerns about the Program. Doe Six Decl. ¶¶ 9, 11. Cisco then reached out to CVS to request an accommodation on his behalf; that request, and a later request John Doe Six made directly to CVS, were denied. *Id.* at ¶¶ 11, 24. John Doe Seven likewise made

---

[18] *See also* Powell Decl. ¶ 20.
[19] *See also* Powell Decl. ¶ 21.

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION                    CASE NO. 3:18-CV-1031-EMC

multiple attempts to opt out of the Program and contacted Defendants about his health and privacy concerns under the Program. Doe Seven Decl. ¶¶ 2, 30. He mailed a letter to CVS for issues concerning the mail-order service and prescription refills. *Id.* at ¶ 30. He also faxed an opt-out request, called his health insurance company, called CVS Specialty, and mailed another opt-out request to a different CVS address listed in his health care plan documents. *Id.*

All of Plaintiffs' accommodation requests were denied or ignored. Doe One Decl. ¶ 13; Roe Decl. ¶ 23; Doe Six Decl. ¶ 24; Doe Seven Decl. ¶ 30. In fact, Defendants readily acknowledge that only its employer and health plan clients can request exceptions to the Program, and that no such right or procedure exists to allow individuals to obtain accommodations. Transcript, 353:11–356:10.

In the wake of growing media attention, and in the midst of pre-lawsuit settlement negotiations between Plaintiffs' counsel and Defendants,[20] CVS launched the "HIV Open" prescription drug benefit design, which allows *plan sponsors* to choose a benefit design that carves out HIV medications from the Program. Transcript, 94:10–96:22, 103:13–104:8, 112:21–116:3.[21] In other words, instead of establishing a procedure for providing reasonable accommodations to the end users—the members living with HIV who are denied meaningful access to the pharmaceutical care services CVS provides and who are therefore entitled to accommodation—the corporate decision by CVS was to instead provide a new plan option to employers and health plans. As this Court previously ruled, "this is not sufficient action" to satisfy Defendants' responsibility to provide accommodations to Plaintiffs and putative class members. *Doe One*, 2024 WL 1707229, at *11. Moreover, though the purported purpose of the HIV Open plan design was to help plan sponsors deflect member "noise" over health concerns related to the Program (Transcript, 123:16–125:7), CVS discouraged use of the plan by putative class members by failing to provide any notice of the change (Transcript, 107:13–110:18). As a result, people like John Doe Six continued to obtain his medications under the Program for years after his employer selected the HIV Open plan design. Doe Six Decl. ¶¶ 24–25, 39. CVS ostensibly did not provide such notice because when members purchase medications from a non-CVS pharmacy, CVS loses money. Transcript, 249:13–252:2;

---

[20] Powell Decl. ¶ 22.
[21] Powell Decl. ¶ 23.

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION                CASE NO. 3:18-CV-1031-EMC

1    Powell Decl. ¶ 24 ("Loss of revenue[:] . . . Account teams and Specialty Customer Care put in

2    override for members to fill outside of CVS Specialty.").

3    **V.    General Class Action Requirements**

4          Rule 23(a) requires that plaintiffs demonstrate numerosity, commonality, typicality, and

5    adequacy of representation to maintain a class action. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338,

6    349 (2011). In addition to these elements, a plaintiff must also establish that one or more of the

7    requirements of Rule 23(b) are met. *Id.* at 345. In conducting this analysis, the Court may look

8    beyond the pleadings "'before coming to rest on the certification question.'" *Id.* at 350 (*quoting

9    Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)).

10         Plaintiffs here seek certification of a proposed class under Rule 23(b)(1), (b)(2), and (c)(4).

11   Certification is appropriate under Rule 23(b)(1)(B) where "prosecuting separate actions by . . .

12   separate class members would create a risk of . . . adjudications with respect to individual class

13   members that, as a practical matter, would be dispositive of the interests of the other members not

14   parties to the individual adjudications or would substantially impair or impede their ability to

15   protect their interests."

16         If successful, this action would ultimately result in the Court finding that the Program

17   constitutes unlawful discrimination on the basis of disability under Section 1557. This

18   determination would be broadly applicable to the coverage of tens of thousands of absent class

19   members who are prescribed HIV/AIDS Medications subject to the Program. Defendants would

20   necessarily be obligated to change their practices when administering pharmacy benefits for

21   HIV/AIDS Medications to conform with this finding. As such, the Court's adjudication of the

22   central claim in this matter "would be dispositive of the interests of the other members not parties

23   to the individual adjudications." Rule 23(b)(1)(B).

24         Certification under Rule 23(b)(2) is additionally proper here since injunctive and

25   declaratory relief is sought. As noted *supra*, the Ninth Circuit has explained that "the primary role

26   of [Rule 23(b)(2)] has always been the certification of civil rights class actions." *Parsons*, 754 F.3d

27   at 686. Moreover, "Rule 23(b)(2) only requires that the defendant act or refuse to act on grounds

28

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION          CASE NO. 3:18-CV-1031-EMC

1    that apply 'generally to the class.'" *Lyon v. U.S. Immigr. & Customs Enf't*, 300 F.R.D. 628, 635

2    (N.D. Cal. 2014) (Chen, J.), *modified*, 308 F.R.D. 203 (N.D. Cal. 2015) (Chen, J.).

3         Here, Plaintiffs and the putative class seek a declaration that Defendants violated their

4    rights under the ACA's non-discrimination provision when they administered and enforced the

5    Program, and an injunction against the continued operation of the Program without mechanisms for

6    allowing individuals to seek reasonable accommodations. TAC ¶ 205. Certification under Rule

7    23(b)(2) was intended for precisely these circumstances. *See Walters v. Reno*, 145 F.3d 1032, 1047

8    (9th Cir. 1998) ("It is sufficient [for Rule 23(b)(2) certification] if class members complain of a

9    pattern or practice that is generally applicable to the class as a whole"). Similar classes have been

10   certified under Rule 23(b)(2) for discrimination claims under Section 1557 in, for example, *Davis*

11   *v. Lab'y Corp. of Am. Holdings*, No. CV 20-0893 FMO (KSX), 2022 WL 22855520, at *6–7 (C.D.

12   Cal. June 13, 2022); *Fain v. Crouch*, 342 F.R.D. 109, 116 (S.D. W. Va. 2022); and *Flack v. Wis.*

13   *Dep't of Health Servs.,* 331 F.R.D. 361, 375 (W.D. Wis. 2019).

14        Certification of an issue class under Rule 23(c)(4) for the issues of Defendants' liability for

15   deliberate indifference is also proper here because it would materially advance the claims of all

16   members of the proposed class and, thus, the litigation as a whole. Certification of such an issue

17   class would allow all absent class members to initiate individual proceedings for damages if

18   Plaintiffs and the class prevail in a trial on those issues. *See also* n.3 *supra*.

19   **VI.    Rule 23(a)'s Requirements for Class Certification Are Satisfied**

20        **A.    The Class Is Sufficiently Numerous**

21        Numerosity is satisfied where "the class is so numerous that joinder of all members is

22   impracticable." Rule 23(a)(1). While no absolute numerical threshold for numerosity exists,

23   "'courts have routinely found the numerosity requirement satisfied when the class comprises 40 or

24   more members.'" *Sloan v. Gen. Motors LLC*, No. 16-CV-07244-EMC, 2020 WL 1955643, at *40

25   (N.D. Cal. Apr. 23, 2020) (Chen, J.) (citation omitted). Defendants here concede the proposed class

26   consists of tens of thousands of members. Transcript, 85:5–11. Thus, numerosity is satisfied.

27

28

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION                    CASE NO. 3:18-CV-1031-EMC

**B.    Commonality Is Satisfied Here Because the Litigation Will Be Driven by Common Answers to Class-Wide Questions**

Rule 23(a)(2) requires a plaintiff to show that a question of law or fact is common to each member of the proposed class. Shared legal issues establish commonality:

> Indeed, Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Commonality imposes only a "limited burden" upon the plaintiff, given that it "only requires a single significant question of law or fact." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012), *overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022).

> The Supreme Court has recently emphasized that commonality requires that the class members' claims "depend upon a common contention" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." The plaintiff must demonstrate "the capacity of class wide proceedings to generate common answers" to common questions of law or fact that are "apt to drive the resolution of the litigation."

*Id.* at 588–89 (*quoting Wal-Mart Stores, Inc.*, 564 U.S. at 350). As recognized in a leading legal treatise: "class suits for injunctive or declaratory relief by their very nature often present common questions satisfying Rule 23(a)(2)." 7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1763 (4th ed. 2022).

In a civil rights action, "commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001). Plaintiff and the proposed class members seek a determination of a single core legal question: does the Program violate the ACA's non-discrimination requirements?

In addition to this overriding common question, the following questions, *inter alia*, will be common to all class members in this litigation:

(1)    whether Defendants are "covered entities" under Section 1557;

(2)    whether Defendants' pharmaceutical care services constitute a "health program or activity" subject to Section 1557;

(3)    whether Defendants receive federal financial assistance;

16

(4)    whether Defendants' administration of the Program failed to make reasonable accommodations available to individuals prescribed HIV/AIDS Medications;

(5)    whether Defendants acted with deliberate indifference to a likely violation of class members' rights;

(6)    whether Defendants must comply with the requirements of Section 1557 regardless of the terms of the contracts entered into with their employer and health plan clients.

Those questions will "generate common answers apt to drive the resolution of the litigation," and the injunctive and declaratory relief sought will resolve the class claims "in one stroke." *Wal-Mart Stores, Inc.*, 564 U.S. at 350. Commonality is easily satisfied here. *See, e.g.*, *Huynh v. Harasz*, No. 14-CV-02367-LHK, 2015 WL 7015567, at *7 (N.D. Cal. Nov. 12, 2015) (commonality satisfied where "Plaintiffs contend that all class members suffered a common injury: denial of their reasonable accommodation requests…because of a classwide policy adopted and implemented by [Defendants that…] Plaintiffs further assert, violates federal and state law").

**C.    Plaintiffs' Claims Are Typical of the Claims of the Members of the Proposed Class**

Rule 23(a)(3) requires a showing that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." The test of typicality is whether (1) other members of the class have the same or similar injury, (2) the action is based on conduct that is not unique to the named plaintiff, and (3) other class members have been injured by the same course of conduct. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Under the Rule's permissive standards, this test is satisfied and representative claims are "typical" if they are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *James*, 338 F.R.D. at 132 (Chen, J.) (*quoting Castillo v. Bank of Am., NA*, 980 F.3d 723, 730 (9th Cir. 2020)).

Typicality concerns "the nature of the claim or defense of the class representative, and not . . . the specific facts from which it arose or the relief sought." *Hanon,* 976 F.2d at 508 (citation and quotation omitted). Thus, "[t]ypicality can be satisfied despite different factual circumstances

surrounding the manifestation of the" injury asserted. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). There is "'no authority for the argument that typicality is defeated because the remedies may be different for class members.'" *Id.* (citation omitted). "Indeed, even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." *Baby Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994). As a result, "[w]here an action challenges a policy or practice, the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice." *Id.* at 58; *Skinner v. Best Buy Co.*, No. 2:06-CV-03749-FMC-EX, 2008 WL 11337319, at *5 (C.D. Cal. May 19, 2008) (same); *see also Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 526 (N.D. Cal. 2004) ("'[C]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims'") (*quoting In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 311 (3rd Cir. 1998))).

This Court's decision in *In re Myford Touch Consumer Litig.*, No. 13-CV-03072-EMC, 2016 WL 7734558 (N.D. Cal. Sept. 14, 2016) (Chen, J.) is instructive. The defendant argued the named plaintiffs were not "typical" of the proposed class "because Named Plaintiffs did not experience precisely the same problems as every other class member." *Id.* at *10. Noting that "Rule 23(a)(3) does not require all representative claims perfectly match," this Court found the "typicality requirement is 'satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Id.* (*quoting Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011)). As further support, this Court cited *Parsons*, 754 F.3d at 686, which:

> held "[i]t does not matter that the named plaintiffs may have in the past suffered varying injuries or that they may currently have different health care needs." What mattered was that each class member was likely to need health care at some point, and that they faced "a substantial risk of serious harm resulting from exposure to the defendants' policies and practices governing health care."

*Id.*

This Court rejected the defendant's typicality arguments because, "[a]s in *Parsons*, the differences that may exist between Named Plaintiffs' experience and the class claims are not

clearly material to their basic legal claims against [defendant] for purposes of determining typicality." *Id.* This Court concluded that the "Class members have allegedly been injured by 'the same course of conduct': though the injury might vary somewhat, all Plaintiffs were harmed … in a sufficiently comparable way as to satisfy typicality." *Id.* (citation omitted).

Here, Plaintiffs' claims are "reasonably co-extensive" with those of the proposed class. § IV.B–D, *supra*. Like all class members, Plaintiffs are or were participants or beneficiaries in a health plan for which pharmacy benefits are or were administered by Defendants. § IV.B, *supra*. Plaintiffs and all proposed class members seek to enforce Defendants' compliance with Section 1557, including their right to reasonable accommodations of their disabilities thereunder. § III, *supra*. Because Plaintiffs and class members are all subject to "'a substantial risk of serious harm resulting from exposure to the'" Program and the same material restrictions on their access to the pharmaceutical care services provided by CVS, Plaintiffs are well-situated to seek the relief sought by the proposed class and, therefore, satisfy typicality. *Myford Touch*, 2016 WL 7734558, at *10 (*quoting Parsons*, 754 F.3d at 686); s*ee also*, *e.g.*, *California Coal. for Women Prisoners v. United States*, No. 4:23-CV-4155-YGR, 2024 WL 1290766, at *10 (N.D. Cal. Mar. 15, 2024) (typicality satisfied where plaintiff and class members were subject to "the same policies and practices"); *Nguyen v. Baxter Healthcare Corp.*, 275 F.R.D. 596, 602 (C.D. Cal. 2011) (same).

Plaintiffs and members of the class have all suffered the same type of legal injury—denial of meaningful access to pharmaceutical care services in contravention of Section 1557. While the injuries suffered by Plaintiffs and members of the class may have manifested in different ways, Plaintiffs' claims are not based on any conduct that is unique to the Plaintiffs. Plaintiffs and all class members have been injured by the same course of conduct—the Program and Defendants' uniform refusal to provide reasonable accommodations. Typicality is established.

### D.    Plaintiffs and Plaintiffs' Counsel are Adequate

Rule 23(a) also requires that the representative class members "fairly and adequately protect the interests of the class." Rule 23(a)(4). The adequacy analysis has two components: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION                    CASE NO. 3:18-CV-1031-EMC

class?" *Hanlon*, 150 F.3d at 1020.

Plaintiffs will fairly and adequately represent the class, are committed to the vigorous prosecution of this suit, and view their interests as coextensive with those of absent class members. Doe One Decl. ¶ 17; Roe Decl. ¶ 30; Doe Six Decl. ¶ 41; Doe Seven Decl. ¶ 33. Their claims and interests do not conflict with any interests of the proposed class. *See generally* Doe One Decl.; Roe Decl.; Doe Six Decl.; Doe Seven Decl. Plaintiffs and members of the proposed class all have a common interest in enforcing the ACA's non-discrimination requirements.

Plaintiffs actively sought out counsel in this case. Doe One Decl. ¶ 17; Roe Decl. ¶ 30; Doe Six Decl. ¶ 41; Doe Seven Decl. ¶ 33. Each Plaintiff has communicated and engaged with counsel on an ongoing basis and will continue to do so until the case is resolved. *Id.* Each is familiar with the facts alleged in the complaint and understands the nature of the claims. *Id.* Plaintiffs have reviewed and gathered documents in order to respond to discovery. *Id.* Each Plaintiff understands their role and responsibilities as class representatives of others who were similarly discriminated against and each Plaintiff intends to appear at trial if called. *Id.*

Plaintiffs' counsel will likewise adequately represent the class. Proposed class counsel are experienced in complex litigation generally, and in health care and insurance class actions specifically, and have been found to be adequate counsel in complex class action litigation. Mansfield Decl. ¶¶ 6-9, Ex. 1; Powell Decl. ¶¶ 6-9, Ex. 1. Plaintiffs' counsel have resolved several other similar putative class actions alleging that mail-order pharmacy programs unlawfully discriminated against members with HIV/AIDS. Mansfield Decl. ¶¶ 7-8; Powell Decl. ¶ 8. Plaintiffs' counsel have no conflicts that will compromise counsels' loyalty to the unnamed Class members. Mansfield Decl. ¶ 10; Powell Decl. ¶ 10. Plaintiffs' counsel have endeavored to conduct this litigation to the highest professional standards, and will continue to do so following the decision of this Court to certify the case as a class action. Mansfield Decl. ¶¶ 4-5; Powell Decl. ¶¶ 4-5. Rule 23(a)(4) is satisfied.

## VII.    Certification of the Proposed Class Is Proper under Rule 23(b)(1)

Rule 23(b)(1) authorizes class actions where section (a) conditions are met, and:

(1)    prosecuting separate actions by or against individual members of the class would create a risk of:

20

(A)    inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B)    adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Subsection (A) of Rule 23(b)(1) considers possible prejudice to the defendants. *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111 (N.D. Cal. 2008). Class certification under Rule 23(b)(1)(A) "takes in cases where the party is obliged by law to treat the members of the class alike." *Amchem Prods. v. Windsor*, 521 U.S. 591, 614 (1997) (citation and quotation omitted). Subsection (B) looks to possible prejudice to putative class members. *Kanawi*, 254 F.R.D. at 111.

Here, individual actions by members of the putative class regarding administration of pharmaceutical care services provided by CVS under their health plans "would create a risk of inconsistent and varying adjudications, resulting in incompatible standards of conduct for Defendants." *Id.* (citation omitted). Given that risk, as in *Kanawi*, "Plaintiffs have successfully satisfied the requirements of Rule 23(b)(1)(A)." *Id.*

Moreover, "[c]ertification under Rule 23(b)(1) is particularly appropriate in cases involving [plan administrators] who must apply uniform standards to a large number of beneficiaries." *Wit v. United Behav. Health*, 317 F.R.D. 106, 132–33 (N.D. Cal. 2016), *aff'd in part, rev'd in part on other grounds and remanded*, 79 F.4th 1068 (9th Cir. 2023); *see also Meidl v. Aetna, Inc.*, No. 15-CV-1319 (JCH), 2017 WL 1831916, at *20 (D. Conn. May 4, 2017) (certifying under 23(b)(1) class challenging the actions of a plan administrator that categorically excluded coverage of certain treatments in the various health plans it administered); *Des Roches v. Cal. Physicians' Serv.,* 320 F.R.D. 486, 506 (N.D. Cal. 2017) (same); *Escalante v. Cal. Physicians' Serv.,* 309 F.R.D. 612, 620 (C.D. Cal. 2015) (same).

Certification under Rule 23(b)(1) is particularly appropriate here, where the obligation that Defendants owe the class—"about which courts could disagree and require incompatible standards of conduct—comes not from plan terms but from [a] statute and regulations." *Med. Soc'y of N.Y. v. UnitedHealth Grp. Inc.,* 332 F.R.D. 138, 153-54 (S.D.N.Y. 2019) (certifying a class across various plans administered by the same third party administrator); *D.T. by & through K.T. v. NECA/IBEW*

21

*Fam. Med. Care Plan*, No. C17-00004 RAJ, 2019 WL 1354091, at *9 (W.D. Wash. Mar. 26, 2019) (citation omitted) (Rule 23(b)(1) class certified because "[t]he issue confronting every proposed class member is whether Defendants may deny coverage" based on a categorical exclusion).

Since Defendants' administration of pharmaceutical care services is governed by the same legal standards for all similarly situated plan enrollees under Section 1557, Defendants must act in a similar fashion towards all class members. Accordingly, the resolution of Plaintiffs' claims is dispositive of other similarly situated class members' claims—"the quintessential (b)(1)(B) scenario." *Z.D. ex rel. J.D. v. Grp. Health Co-op.*, No. C11-1119RSL, 2012 WL 1977962, at *7 (W.D. Wash. June 1, 2012).[22] Certification under Rule 23(b)(1) is appropriate.

## VIII.    Certification of the Proposed Class Is Proper under Rule 23(b)(2)

Certification is appropriate under Rule 23(b)(2) where a defendant has "acted on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Stated differently, certification is appropriate where injunctive or declaratory relief can be provided to all class members without engaging in a case-by-case analysis of each one's individual circumstances. *Wal-Mart Stores, Inc.*, 564 U.S. at 360 (citations omitted) ("The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted . . . that the conduct . . . can be enjoined or declared unlawful only as to all of the class members or as to none of them'"). "Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of class actions under Rule 23(b)(2). *Amchem*, 521 U.S. at 614.

Under these principles, "certification here is warranted, as the [Program] affects all proposed class members, and the declaratory and injunctive relief sought would benefit all class members." *Fain*, 342 F.R.D. at 116. Certification of the proposed class would fulfill the primary purpose underlying Rule 23(b)(2)—to "'foster institutional reform by facilitating suits that challenge widespread rights violations.'" *Parsons*, 754 F.3d at 686 (citations omitted). "A declaratory judgment finding that the [Program] is unlawful and an injunction enjoining Defendants from enforcing the [Program] would be appropriate to the class as a whole" and "would provide

---

[22] *Z.D.* additionally found certification under Rule 23(b)(1)(A) proper. 2012 WL 1977962, at *7.

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION                CASE NO. 3:18-CV-1031-EMC

'meaningful, valuable' and 'indivisible' relief to each class member." *Fain*, 342 F.R.D. at 116 (*quoting Berry v. Schulman*, 807 F.3d 600, 609 (4th Cir. 2015)).

When it comes to civil rights statutes, declaratory relief is critical as it "may even forestall future litigation." *Greater Los Angeles Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1113 (9th Cir. 1987). CVS's primary argument throughout this litigation has been that other entities—namely, its plan sponsor clients—control the health plans adopting the Program, and that CVS is simply complying with its contractual duties to implement and administer a prescription drug benefit and thus cannot be liable for any violations of Section 1557. *See, e.g.,* Transcript 343:16–349:1. A clear, unequivocal declaration by the Court that CVS cannot hide behind its own contracts when it comes to complying with Section 1557 is essential to ensuring that CVS follows the law.

In addition to declaratory relief, Plaintiffs seek, *inter alia*, injunctive relief to provide individuals receiving HIV/AIDS Medications from Defendants the right to seek reasonable accommodations.[23] A class seeking this form of relief fits perfectly under Rule 23(b)(2). *See Z.D. ex rel. J.D.*, 2012 WL 1977962, at *7.

Moreover, John Doe Six's experience with CVS's failure to provide accurate and timely notice that his employer adopted the HIV Open benefit design in 2021 epitomizes the need for the Court to order injunctive relief in the form of corrective notice regarding the status of the Program. Doe Six Decl. ¶¶ 25–40. Incredibly, even though John Doe Six sought accommodations under the Program a year *after* his employer had elected to (unbeknownst to John Doe Six) remove HIV/AIDS Medications from the Program, his requests were *denied* by CVS with no notice that he in could at that time in fact access medications from any network pharmacy. Doe Six Decl. ¶¶ 24–25. Corrective notice is necessary for all class members enrolled in HIV Open plans as CVS admits that, as a matter of practice, it does not provide any notice of such benefit changes to any class members. Transcript, 107:13–110:18. The Court has broad discretion to require class-wide notice as appropriate, including as part of fashioning equitable relief. *Alaska Ctr. for the Env't v. Browner*, 20 F.3d 981, 986 (9th Cir. 1994) ("The district court has broad latitude in fashioning equitable relief when necessary to remedy an established wrong"); *Elkins v. Dreyfus*, No. 10-cv-01366-MJP, 2011

---

[23] Most other major health insurance companies in the United States now allow members to opt out of mandatory, mail-order-only delivery of HIV/AIDS medications. Powell Decl. ¶ 8.

WL 3438666, at *12 (W.D. Wash. Aug. 5, 2011) (class-wide notice ordered as part of permanent injunctive relief).

**IX.      Certification of the Proposed Class Is Proper under Rule 23(c)(4)**

Rule 23(c)(4) provides that "an action may be brought or maintained as a class action with respect to particular issues." Certification of particular issues under Rule 23(c)(4) "may enable a court to achieve the economies of class action treatment for a portion of a case, the rest of which may either not qualify under Rule 23(a) or may be unmanageable as a class action." David F. Herr, *Annotated Manual for Complex Litigation* § 21.24 (4th ed., May 2023 Update). Accordingly, issue certification pursuant to Rule 23(c)(4) is appropriate where it "'materially advances the disposition of the litigation as a whole.'" *Rahman v. Mott's LLP*, 693 F. App'x 578, 579 (9th Cir. 2017) (*quoting* William B. Rubenstein, 2 Newberg on Class Actions 4:90 (5th ed. 2012)). While issue classes may be certified without a showing that common issues predominate, here, because issues regarding Defendants' liability will be the only certified issues, common issues will necessarily predominate. *D.C. by & through Garter v. Cnty. of San Diego*, No. 15CV1868-MMA (NLS), 2018 WL 692252, at *2 (S.D. Cal. Feb. 1, 2018), *aff'd*, 783 F. App'x 766 (9th Cir. 2019) (collecting cases).

The Court may, and should, certify a class with regard to Defendants' liability for deliberate indifference to their violation of class members' rights pursuant to Rule 23(c)(4). *See, e.g., Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 308 F.R.D. 630, 632 (N.D. Cal. 2015) (Chen, J.) (describing the "typical Rule 23(c)(4) case where there is certification of liability, leaving only damages to be litigated on an individual bases"). Following such a finding, class members may pursue claims for damages in individual proceedings without having to individually prove CVS's liability for deliberate indifference that is common to all members of the class, thus materially advancing the claims of all class members. *See, e.g.*, *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 658 (C.D. Cal. 2000) ("The Court finds that class treatment is superior for questions of liability. . . . If Plaintiffs prevail on the liability portion of their case, the Court will determine the appropriate method of adjudicating causation and damages issues at that juncture."). Resolution of these issues

24

on a class-wide basis will be far more efficient than individual trials and will prevent inconsistent results.

For example, in *Kamakahi v. Am. Soc'y for Reproductive Medicine*, 305 F.R.D. 164, 193-94 (N.D. Cal. 2015), the Court found Rule 23(c)(4) certification appropriate regarding whether the Defendants' conduct violated the antitrust laws where plaintiffs could not demonstrate that damages and injury could be shown using common proof. The Court acknowledged that a determination as to liability "alone would not resolve Plaintiffs' claims, but resolving that issue through a single adjudication would be far more efficient than duplicative litigation by class members who may number in the thousands" and would prevent inconsistent results. *Id.* at 187; *see also In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 696–97 (N.D. Ga. 2003) (certifying issues related to duty and breach of duty). "'If necessary, the Court can appoint a . . . special master to preside over individual damages proceedings or alternatively, decertify the class after the [liability] trial and instruct class members on how to prove damages individually.'" *Kamakahi*, 305 F.R.D. at 194 (*quoting Mendoza v. Casa de Cambio Delgado, Inc.*, No. 07CV2579(HB), 2008 WL 3399067, at *7 (S.D.N.Y. Aug. 12, 2008)).

## X.    Conclusion

As the Ninth Circuit has recognized: "'[T]he class suit is a uniquely appropriate procedure in civil-rights cases,'" such as this case brought by Plaintiffs on behalf of themselves and similarly situated others against Defendants for unlawful disability discrimination. *Parsons*, 754 F.3d at 686 (*quoting* Wright & Miller, 7AA Fed. Prac. & Proc. Civ. § 1776 (3d ed.).) The Court should certify the proposed class defined in Section III, above; Plaintiffs should be appointed as class representatives; and Whatley Kallas LLP and attorneys for Consumer Watchdog should be appointed as co-lead class counsel.

DATED: November 1, 2024                            **WHATLEY KALLAS LLP**

*/s/ Henry C. Quillen*
Henry C. Quillen (admitted *pro hac vice*)
hquillen@whatleykallas.com
Joe R. Whatley, Jr. (admitted *pro hac vice*)
jwhatley@whatleykallas.com
Edith M. Kallas (admitted *pro hac vice*)

1

2

ekallas@whatleykallas.com
152 West 57th Street, 41st Floor
New York, NY 10019
Tel: (212) 447-7060 / Fax: (800) 922-4851

3

4

5

Alan M. Mansfield (SBN: 125998)
amansfield@whatleykallas.com
16870 W. Bernardo Dr., Suite 400
San Diego, CA 92127
Tel: (858) 674-6641 / Fax: (855) 274-1888

6

7

8

C. Nicholas Dorman (admitted *pro hac vice*)
ndorman@whatleykallas.com
111 North Orange Ave., Suite 800
Orlando, FL 32801
Tel: (321) 325-6624 / Fax: (800) 922-4851

9

**CONSUMER WATCHDOG**

10

11

12

13

14

*/s/ Jerry Flanagan*
Jerry Flanagan (SBN: 271272)
jerry@consumerwatchdog.org
Benjamin Powell (SBN: 311624)
ben@consumerwatchdog.org
Ryan Mellino (SBN 342497)
ryan@consumerwatchdog.org
6330 San Vicente Blvd., Suite 250
Los Angeles, CA 90048
Tel: (310) 392-0522

15

16

*Attorneys for Plaintiffs*

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION          CASE NO. 3:18-CV-1031-EMC